## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RED LAKE BAND OF CHIPPEWA INDIANS, <br> a federally recognized Indian tribe, <br> Highway #1 East <br> Red Lake Tribal Office Building <br> Red Lake, MN 56671 <br><br>       Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA <br> Department of the Interior <br> 1849 C Street, NW <br> Washington, DC 20240 <br><br> and <br><br> DIRK KEMPTHORNE, in his official capacity <br> as Secretary, <br> United States Department of the Interior <br> 1849 C Street, NW <br> Washington, DC 20240 <br><br>       Defendants. | Civil Action No. _____ <br><br> CASE NUMBER   1:06CV01826 <br><br> JUDGE: Colleen Kollar-Kotelly <br><br> DECK TYPE: Contract <br><br> DATE STAMP: 10/24/2006 |

## COMPLAINT FOR MONEY DAMAGES, SPECIFIC PERFORMANCE, AND EQUITABLE RELIEF

Plaintiff Red Lake Band of Chippewa Indians (the "Tribe"), by and through undersigned counsel, brings this Complaint for Money Damages, Specific Performance, and Equitable Relief against Defendant UNITED STATES OF AMERICA and Defendant DIRK KEMPTHORNE, in his official capacity as Secretary (the "Secretary") of the United States Department of the Interior (the "Department") (collectively, the "Defendants"). In support thereof, the Tribe states as follows:

# I. PARTIES

1.      The Tribe is a federally recognized Indian tribal government, organized and governed pursuant to a constitution approved by the Secretary, with an elected Tribal Council serving as the governing body of the Tribe and with its headquarters located at Highway #1 East, Red Lake Tribal Office Building, Red Lake, MN 56671.

2.      Mr. Dirk Kempthorne is the Secretary of the Department and has overall responsibility for administering the Department as well as overseeing its constituent agencies, including the Bureau of Indian Affairs (BIA), and managing certain Indian affairs and appropriations, with the principal offices of the Department located at 1849 C Street, NW, Washington, D.C. 20240.

## II. JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution, laws, or treaties of the United States, and pursuant to 25 U.S.C. §§ 450m-1(a) and 458ff(c) in that this is a civil action or claim against the Secretary.

4.      Venue in the District of Columbia is proper under 28 U.S.C. § 1391(b) and (e) because the Defendants in this matter are officers and agencies of the United States and a substantial part of the events giving rise to the claims asserted herein occurred in this district.

## III. FACTS

5.      The Office of Self-Governance (the "OSG") is the office within the Department responsible for administering the Secretary's tribal self-governance program as it relates to BIA programs.

6.    Mr. Ken Reinfeld is the Acting Director of the OSG within the Department, and has overall responsibility, under the direction of and as delegated by the Secretary, for carrying out the functions and duties of the OSG, including those related to negotiating, implementing, and serving as contracting officer for Compacts of Self-Governance and Funding Agreements entered into pursuant to 25 U.S.C. § 458aa *et seq.*, and is the contracting officer in this case, pursuant to 41 U.S.C. § 601(3).[1]

### A. Juvenile Detention Program Funding

7.    The Department has assumed the responsibility to request funds for staffing and operations of juvenile detention facilities on Indian reservations, including those facilities constructed with Department of Justice grant funds, as set forth in the April 22, 1998 letter to tribal leaders from Kevin Gover, Assistant Secretary – Indian Affairs, which is incorporated herein and attached hereto as Exhibit A, and as set forth in the April 25, 2000 memorandum from the Office of Facilities Management and Construction, which is incorporated herein and attached hereto as Exhibit B.

8.    The Department approved the construction plans for the Tribe's new juvenile detention facility (the "Facility") in May of 2002. Paragraph 2, Affidavit of David Conner, dated October 24, 2006, which is incorporated herein and attached hereto as Exhibit C.

9.    The Tribe completed the construction of the Facility in January of 2005, utilizing a combination of grant funds obtained from the United States Department of Justice and from the treasury of the Tribe. Paragraph 3, Exhibit C.

---

[1] The Contract Dispute Act, 41 U.S.C. § 601 *et seq.*, is made applicable to tribal self-determination contracts pursuant to 25 U.S.C. § 450m-1(d).

10.    The Department, through its BIA Office of Facility Management and Construction ("OFMC"), issued a Certificate of Occupancy to the Tribe for the Facility on September 12, 2005.  Paragraph 4, Exhibit C.

11.    The Tribe and the United States, pursuant to Title IV of P.L. 93-638, as amended, (codified at 25 U.S.C. § 458aa *et seq*.), entered into a "Multi-Year Funding Agreement for 2005-2010 Between the Red Lake Band of Chippewa Indians and the United States of America" (the "Agreement"), executed on behalf of the Tribe by its Chairman, Floyd Jourdain, Jr., on October 20, 2004, and executed on behalf of the United States of America by its OSG Director, William Sinclair, on November 15, 2004, said Agreement incorporated herein and attached hereto as Exhibit D.  Paragraph 5, Exhibit C.

12.    By its terms, the Agreement became effective in 2005 and has a termination date of December 31, 2010.

13.    In the Agreement, the Tribe and the Department provided for the assumption of responsibilities by the Tribe of various programs, functions, services, and activities specified in the Agreement.  Paragraph 6, Exhibit C.

14.    Among other things, the Agreement provides for funding for new program operations associated with the Facility.   This funding was a key term of the Agreement. Paragraph 7, Exhibit C.

15.    Attached to and incorporated in the Agreement was the Self Governance 2005 Multi-Year Funding Agreement – Reprogramming Request and Footnotes, pages 1-7 (the "2005 Request for Reprogramming"), which contained specific funding provisions and which states in relevant part (in footnote 25):

4

The BIA agrees to assist the Tribe in obtaining $1,218,482 for operations funding for the Tribes [sic] juvenile correction facility in CY 2005, and to request this amount in the next Presidents [sic] budget.

16.     The "next President's budget" referenced in footnote 25 was a reference to the Fiscal Year (the "FY") 2006 budget.

17.     With regard to the Department's BIA law enforcement programs, including funding for the operation of juvenile detention services, programs, and facilities, a lump sum of $180,239,000 was requested in the President's budget for FY 2005, and $180,063,000 was appropriated.

18.     With regard to the Department's BIA law enforcement programs, including funding for the operation of juvenile detention services, programs, and facilities, a lump sum of $189,887,000 was requested in the President's budget for FY 2006, and $193,377,000 was appropriated.

19.     The requesting and appropriation of funds for law enforcement and juvenile detention related services, programs, and facilities, is as a matter of practice annually recurring conduct on the part of the Department upon which Indian detention programs rely throughout the country.

20.     The OFMC provided in FY 2005 facilities maintenance funding for the Facility through the Department's BIA Branch of Facilities Management & Construction. Paragraph 8, Exhibit C.

21.     Despite its agreement to do so, the Department and BIA failed to obtain, or to assist the Tribe in obtaining, $1,218,482 in program operations funding for the Facility in CY 2005. Paragraph 9, Exhibit C.

22.     The Tribe did not receive $1,218,482 in program operations funding for the Facility in CY 2005. Paragraph 10, Exhibit C.

23.     Despite its agreement to do so, the Department and BIA failed to submit a FY 2006 Presidential budget request for program operations funding for the Facility. Paragraph 11, Exhibit C.

24.     Consequently, the Tribe did not receive $1,218,482 in program operations funding for the Facility in FY 2006. Paragraph 12, Exhibit C.

25.     The Tribe attempted without success, by correspondence and discussions with various BIA officials, to have the Department fulfill its contractual obligations under the Agreement with respect to program operations funding for the Facility for CY 2005 and FY 2006. Paragraph 13, Exhibit C.

26.     On February 17, 2006, counsel for the Tribe, on behalf of and as authorized by the Tribe, submitted to the OSG a certified claim and demand for an immediate cure and appropriate relief for the Department's breaches under the Agreement (the "Claim"), pursuant to and in accordance with the Contract Disputes Act, 41 U.S.C. § 601 *et seq.* and the implementing regulations thereto (collectively, the "CDA"), as made applicable to self-determination contracts, including the Agreement, pursuant to 25 U.S.C. §§ 450m-1(d) and 458ff(c). This Claim is incorporated herein and attached hereto as Exhibit E.

27.     The Claim demanded that the Department award the Tribe $2,436,964 in damages for CY 2005 and CY 2006, plus statutory interest accrued thereon from the period commencing 30 days after the start of the relevant calendar year, plus all costs, expenses, and fees, including attorneys' fees, incurred as a result of the BIA's breaches pursuant to the Agreement and the necessity of pursuing the Claim, as well as appropriate declaratory and injunctive relief.

28.     Pursuant to 41 U.S.C. § 605(c)(2) of the CDA, within sixty days of receipt of a certified claim exceeding $100,000, the contracting officer must either issue a decision or notify the contractor as to when a decision will be issued.

29.     Neither the Secretary, nor the OSG Director, nor any other officer of the Department or OSG issued a decision on the Claim or notified the Tribe of when a decision would be issued by the statutory deadline of April 18, 2006. Paragraph 15, Exhibit C.

30.     Pursuant to 41 U.S.C. § 609(a)(3), this action is timely filed.

31.     The Director of the BIA, W. Patrick Ragsdale, sent the Tribe a letter dated June 15, 2006, incorporated herein and attached hereto as Exhibit F, stating in response to the Claim that the BIA could not agree to the Tribe's request for Facility funding because doing so would require decreasing allocations for other law enforcement operations nationwide.

32.     Defendant Reinfeld, Acting Director of the OSG, sent a letter to the Tribe dated October 13, 2006, incorporated herein and attached hereto as Exhibit G, stating that, with regard to the Tribe's Draft 2007 reprogramming request which is the equivalent of a proposed amendment to the Agreement, Mr. Christopher Chaney, Director of the BIA Office of Justice Services (OJS), has indicated that the OJS will only accept language stating that "OJS will assist the Tribe in locating alternate funding sources for the [F]acility" in CY 2007.

33.     Suit on this claim is timely filed in that, pursuant to 41 U.S.C. § 605(c)(5), failure of a contracting officer to issue a claim decision within the statutory time period is deemed a decision to deny the claim, allowing an appeal or suit on the claim.

### B. End-of-Year Funding

34.     On October 18, 2006, the Tribe was informed by BIA Midwest Regional Office officials that the BIA Midwest Regional Office received and distributed to eight (8) of the thirty-

7

five (35) Indian tribes and tribal organizations within the BIA Midwest Region approximately

$200,000 in FY 2006 year-end funds in late September 2006. Paragraph 16, Exhibit C.

35.    The approximately $200,000 in FY 2006 year-end funds were distributed through

the BIA Office of Trust Responsibilities, Division of Natural Resources, to be used for wildlife

and parks and noxious weed eradication purposes. Paragraph 17, Exhibit C.

36.    Section 17 of the Agreement states:

**Additional Funds** - If the Midwest Region Office of the BIA receives notice of
the availability of any additional funding in any fiscal year for any purpose,
including any unspent funds, that the Tribe is eligible to apply for or receive, then
it must notify the Tribe as soon as possible about such funds so that the Tribe may
access or apply for those funds. The Midwest Region Office commits to keeping
the Tribe informed of the existence of funding immediately upon learning of its
existence. (emphasis in original)

37.    The Tribe was not informed about the availability of any FY 2006 year-end funds

until weeks after the funds were distributed and the federal fiscal year 2006 had closed.

Paragraph 18, Exhibit C.

38.    Article IV, Section 4 of the Compact of Self-Governance Between the Red Lake

Band of Chippewa Indians and the United States of America (the "Compact"), dated January 14,

1997, which is incorporated herein and attached hereto as Exhibit H, states: "The Tribe shall be

eligible for new programs, activities, services and functions on the same basis as other tribes and

the Secretary or his authorized representative shall advise the Tribe of the funding available for

such programs."

39.    On October 18, 2006, the Tribe was informed by the BIA Midwest Regional

Office officials that BIA Central Office officials made a decision to distribute the year-end funds

only to tribes with Title I, P.L. 93-638 contracts, excluding tribes with Title IV, P.L. 93-638

agreements like the Agreement. Paragraph 19, Exhibit C.

8

### C. Pay Cost Funding and Report

40.    Footnote 15 of the 2006 Request for Reprogramming, incorporated herein and attached hereto as Exhibit I, reads in part, "...The BIA will make every effort to treat Red Lake Tribal employees the same as all other Tribal and Federal employees for purposes of pay cost adjustments in FY 2006..." Paragraph 14, Exhibit C.

41.    The President's BIA budget request to Congress for FY 2006 states in relevant part, "Fixed cost [sic] are fully funded at $31.1 million." BIA, U.S. Dep't of the Interior, *The United States Department of the Interior Budget Justifications and Performance Information Fiscal Year 2006* at BIA-SUM-16 (2006).

42.    House Report 109-080, Department of Interior, Environment, and Related Agencies Appropriation Bill, 2006, states at page 7:

"The Committee commends the Administration for funding the full amount for anticipated pay cost and fixed cost increases for most bureaus and programs. The Committee has been concerned that the base operational capability of the programs funded in this bill has been declining due to unmet pay and fixed costs."

43.    In FY 2006 the Department provided the Tribe with $97,262 for pay cost increases. Paragraph 20, Exhibit C.

44.    The Tribe, upon information and belief, estimates that it should have received $262,500 in pay cost increases from the Department for FY 2006. Paragraph 21, Exhibit C.

45.    The Tribe did not receive fully funded pay costs in FY 2006. Paragraph 22, Exhibit C.

46.    Footnote 15 to the 2006 Request for Reprogramming reads in relevant part:

Further, the BIA and OSG agree to provide to the Tribe by April 1, 2006, a detailed Pay Cost analysis for the years 2003-2006, showing what the Tribe was eligible to receive each year based upon Pay Cost data the Tribe provided, the actual amount received, and the shortfall or unfunded amount. This analysis will include Law Enforcement. The analysis will separately show the total amounts received each year for Self Governance tribes, contracting tribes, and BIA

9

programs, as well as the total amounts the BIA was eligible to receive for these programs based upon data it compiled. The above information has been requested by the Tribe to verify whether Red Lake, other Self Governance tribes, contracting tribes, and BIA programs were treated the same way with regard to the distribution of Pay Costs for the years 2003-2006.

47.     The Department failed to provide the detailed Pay Cost analysis to the Tribe by April 1, 2006 and has yet to provide it to the Tribe.  Paragraph 23, Exhibit C.

## COUNT I

### CDA CLAIM, 25 U.S.C. § 450m-1, 458ff(c); 41 U.S.C. § 605

48.     Plaintiff reasserts and incorporates by reference the allegations contained in paragraphs 1-47 as though fully set forth herein.

49.     The Defendants were obliged by the Agreement to assist the Tribe in obtaining $1,218,482 in operations funding for the Facility in CY 2005 but failed to do so and thereby breached the Agreement.

50.     The Defendants were obliged by the Agreement to request $1,218,482 in the FY 2006 President's budget for the Facility but failed to do so and thereby breached the Agreement.

51.     Plaintiff is entitled to an award of money damages in the amount of $1,218,482 for CY 2005 and an additional $1,218,482 for FY 2006, for a total damages award of $2,436,964.  Plaintiff is also entitled to interest on this award pursuant to 41 U.S.C. § 611, as well as costs and reasonable fees and expenses, including attorneys fees, pursuant to 28 U.S.C. § 2412.

52.     WHEREFORE, the Tribe requests that the Court enter judgment in its favor against Defendants in the amount of $2,436,964 or such other amount as the Tribe proves at trial, together with interest, costs, and fees, including attorneys fees.  In the alternative, the Tribe requests specific or substitute performance of these breached obligations.

10

## COUNT II

### DAMAGES FOR END-OF-YEAR FUNDS NOT ALLOCATED

53.    Plaintiff reasserts and incorporates by reference the allegations contained in paragraphs 1-52 as though fully set forth herein.

54.    The Defendants were obliged by the Agreement to notify the Tribe as soon as possible of any additional funding in any fiscal year for any purpose, including unspent funds, that the Tribe is eligible to apply for or receive so that the Tribe may access or apply for those funds, and agreed in the Compact that the Tribe is eligible on the same basis as are other tribes for such funds.

55.    Plaintiff was entitled to receive a share of the $200,000 in fish and wildlife funds that were allocated to other Indian tribes in the Midwest Regional Office at the end of FY 2006 in the last week of September, 2006.

56.    Plaintiff is entitled to an award of money damages of $50,000 together with interest, costs, and fees, including attorneys fees.

57.    WHEREFORE, the Tribe requests that the Court enter judgment in its favor against Defendants in the amount of $50,000 together with interest, costs, and fees, including attorneys fees.

## COUNT III

### SPECIFIC PERFORMANCE TO PRODUCE PAY COST REPORT

58.    Plaintiff reasserts and incorporates by reference the allegations contained in paragraphs 1-57 as though fully set forth herein.

59.    The BIA and OSG contractually agreed in the CY 2006 Funding Agreement to provide the Tribe with a detailed Pay Cost analysis for the years 2003-2006 by April 1, 2006.

11

60.    The BIA and OSG have failed to provide the Tribe with a detailed Pay Cost analysis for the years 2003-2006.

61.    Plaintiff is entitled to an order directing the Secretary to provide the Tribe a detailed Pay Cost analysis for the years 2003-2006.

62.    WHEREFORE, the Tribe requests that the Court order the Secretary to provide the Tribe forthwith a detailed Pay Cost analysis for the years 2003-2006.

## COUNT IV

## DAMAGES FOR PAY COSTS CLAIM

63.    Plaintiff reasserts and incorporates by reference the allegations contained in paragraphs 1-62 as though fully set forth herein.

64.    The BIA contractually agreed in the Agreement to make every effort to treat the Tribe's employees the same as all other Tribal and Federal employees for purposes of pay cost adjustments in FY 2006.

65.    Plaintiff is entitled to an award of money damages against the BIA in the amount of $165,238, the difference between the amount of $97,262 it received for pay costs and the estimated amount the Tribe should have received of $262,500 in FY 2006 together with interest, costs, and fees, including attorneys fees.

66.    WHEREFORE, the Tribe requests that the Court enter judgment in its favor against the BIA and OSG awarding money damages in the amount of $165,238 together with interest, costs, and fees, including attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, the Tribe respectfully requests that the Court:

a.  Grant the Tribe the relief requested in this Complaint;

b.  Grant the Tribe its reasonable attorneys fees incurred in preparing and bringing this action pursuant to the Indian Self-Determination and Education and Assistance Act of 1975, as amended, and the Equal Access to Justice Act; and

c.  Grant the Tribe such other and further relief as the Court deems just and equitable.

Dated this 24th day of October, 2006.

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____

Philip Baker-Shenk (D.C. Bar No. 386662)
Suite 100 -- 2099 Pennsylvania Ave., N.W.
Washington, D.C.  20006
Tel: (202) 955-3000
Fax: (202) 955-5564

# 4099600_v10

13

12/08/2005 10:38 2185793591 RED LAKE AGENCY Page 1 of 1
Case 1:06-cv-01826-CKK Document 15-2 Filed 10/24/2006 Page 1 of 1

Exhibit A

# United States Department of the Interior

### OFFICE OF THE SECRETARY
Washington, D.C. 20240

APR 2 2 1998

Dear Tribal Leader:

This letter is to provide you with information on the status of the future of the Bureau of Indian Affairs (BIA) detention facility construction and rehabilitation/renovation program.

In FY 1999, the BIA did not request any funds for law enforcement construction and it is highly unlikely that the Congress will appropriate any funds in the next fiscal year for this type of construction. However, the Department of Justice (DOJ), under the Presidential Initiative on Law Enforcement in Indian Country, has included $52 million for prison construction grants and prison (detention) construction modernization and repair in its FY 1999 budget request. This funding is to be used for detention facilities in Indian Country should the Congress appropriate these funds within DOJ's FY 1999 budget request.

We are not yet aware of the method the DOJ will use to distribute these funds although the DOJ has indicated it will establish an eligibility/priority list. We have urged them to consider the BIA's existing priority lists because a great deal of time, energy and funds have already been invested to identify, plan and design some of the facilities. In this regard, the BIA has provided the DOJ with its construction priority list, which presently lists 17 projects for construction. The BIA has received funding for the first five projects. The rehabilitation/renovation list has 34 projects for renovation/repair. We will continue to encourage the DOJ to give consideration to the projects identified on the existing BIA priority lists.

The BIA will continue to be responsible for requesting funds for staffing and physical facility operations and maintenance requirements for new facilities, including those facilities constructed through the DOJ grants funds, as well as existing BIA-owned detention facilities within our budget request. Additionally, in FY 2000, the BIA plans to request funds for law enforcement construction within its budget request to the Congress. While no specific level of funding has been determined yet for FY 2000, the request will concentrate on the remaining unfunded projects listed on the BIA's existing priority lists.

Any questions on this matter may be directed to Mr. Theodore R. Quasula, Director, Office of Law Enforcement Services, BIA, at (505)248-7937 or Mr. Tom LeClaire, Director, Office of Tribal Justice, DOJ, at (202)514-8812, or Mr. Stephen Amos, Deputy Director, Corrections Program Office, DOJ, at (202)616-5970.

Sincerely,

Assistant Secretary - Indian Affairs

Attachment(s)

cc:    All Area Directors
       Director, Facilities Management Construction Center



# United States Department of the Interior

**BUREAU OF INDIAN AFFAIRS**
Facilities Management & Construction Center
Albuquerque Plaza Office Tower
201 Third Street, NW
P.O. Box 1248
Albuquerque, New Mexico 87103

IN REPLY REFER TO:

105-40

APR 25 2000

Memorandum

To:        Director, Southwest Region
           Director, Rocky Mountain Region
           Director, Eastern Region
           Director, Northwest Region
           Director, Alaska Region
           Director, Midwest Region
           Director, Western Region
           Director, Office of Law Enforcement Services
           Chief, Division of Safety and Risk Management

From:      Director, Office of Facilities Management & Construction

Subject:   Detention Facilities Funded by Department of Justice

Attached for your information and use is a copy of the April 7, 2000 letter to the Office of Facilities Management and Construction (OFMC) from the Corrections Program Office, Department of Justice (DOJ). It transmits construction project information for facilities in Indian Country that the Department of Justice (DOJ) is funding.

Please share this information with your facilities and law enforcement staff. They should note the following:

1. The BIA-OFMC will be responsible for requesting facilities Operation & Maintenance funds for these facilities in accordance with Assistant Secretary Gover's April 22, 1998 letter to Tribal leaders. This request for O&M funds will be made in the FY 2002 budget request.

2. The Office of Law Enforcement Services will be responsible for requesting funds for staffing and program operations in these facilities.

3. Our March 13, 2000 letter to the Department of Justice indicated that DOJ funded facilities must comply with the BIA's adopted codes and standards and must be inspected by a representative of the BIA's Division of Safety and Risk Management in order to qualify for the O&M funding. The applicable codes and standards were provided to DOJ.

2

Please contact Dennis Rodriguez or John King at (505) 346-6511 relative to detention facilities O&M matters and Bob Montoya or Norman Suazo at (505) 346-6518 relative to planning, design and construction matters.

*R.W. Colling*

3 Attachments: 1. April 7, 2000 DOJ Letter
2. April 22, 1998 Gover Letter
3. March 13, 2000 OFMC Letter

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RED LAKE BAND OF CHIPPEWA INDIANS,<br>a federally recognized Indian tribe,<br>Highway #1 East<br>Red Lake Tribal Office Building<br>Red Lake, MN 56671<br><br>     Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>United States Department of the Interior,<br>1849 C Street, NW<br>Washington, DC 20240<br><br>and<br><br>DIRK KEMPTHORNE,<br>in his official capacity as<br>Secretary of the United States<br>Department of the Interior,<br>1849 C Street, NW<br>Washington, DC 20240<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. _____ |

## <u>AFFIDAVIT OF DAVID CONNER</u>

I, David Conner, make an oath and state as follows:

1. I am the Department of Natural Resources Administrative Officer for the Red Lake Band

   of Chippewa Indians (the "Tribe"). I have been employed in this or similar positions for

   the Tribe for 20 years.

2. Upon information and belief, the U.S. Department of the Interior (the "Department") approved the construction plans for the Tribe's new juvenile detention facility (the "Facility") in May of 2002.

3. Upon information and belief, the Tribe completed the construction of the Facility in January of 2005, utilizing a combination of grant funds obtained from the United States Department of Justice and from the Tribal Treasury of the Tribe.

4. Upon information and belief, the Department, through its Bureau of Indian Affairs (BIA) Office of Facility Management and Construction ("OFMC"), issued a Certificate of Occupancy to the Tribe for the Facility on September 12, 2005.

5. The Tribe and the United States, pursuant to Title IV of P.L. 93-638, as amended (codified at 25 U.S.C. § 458aa et seq.), entered into a "Multi-Year Funding Agreement for 2005-2010 Between the Red Lake Band of Chippewa Indians and the United States of America" (the "Agreement"), executed on behalf of the Tribe by its Chairman, Floyd Jourdain, Jr., on October 20, 2004, and executed on behalf of the United States of America by its Office of Self-Governance (OSG) Director, William Sinclair, on November 15, 2004.

6. In the Agreement, the Tribe and the Department provided for the assumption of responsibilities by the Tribe of various programs, functions, services, and activities specified in the Agreement.

7. Among other things, the Agreement provides for funding for new program operations associated with the Facility. This funding was a key term of the Agreement.

8. The OFMC provided in FY 2005 facilities maintenance funding for the Facility through the Department's BIA Branch of Facilities Management & Construction.

2

9. Despite its agreement to do so, the Department and BIA failed to obtain, or to assist the Tribe in obtaining, $1,218,482 in program operations funding for the Facility in CY 2005.

10. The Tribe did not receive $1,218,482 in program operations funding for the Facility in CY 2005.

11. Despite its agreement to do so, the Department and BIA failed to submit a FY 2006 Presidential budget request for program operations funding for the Facility.

12. Consequently, the Tribe did not receive $1,218,482 in program operations funding for the Facility in FY 2006.

13. The Tribe attempted without success, by correspondence and discussions with various BIA officials, to have the Department fulfill its contractual obligations under the Agreement with respect to program operations funding for the Facility for CY 2005 and FY 2006.

14. The 2006 Request for Reprogramming and Footnotes, Pages 1-7, was incorporated into the Multi-Year Funding Agreement for 2005-2010 Between the Red Lake Band of Chippewa Indians and the United States of America as executed on behalf of the Red Lake Band of Chippewa Indians by its Chairman Floyd Jourdain, Jr., on January 19, 2006, and as executed on behalf of the United States of America by its Acting Director, Office of Self Governance, Ken Reinfeld, on January 23, 2006.

15. Upon information and belief, neither the Secretary, nor the OSG Director, nor any other officer of the Department or OSG issued a decision on the Tribe's certified claim and demand for an immediate cure and appropriate relief for the Department's breaches under the Agreement, as such claim and demand were submitted on February 17, 2006, by

3

counsel for the Tribe on behalf of and as authorized by the Tribe to the OSG, or notified the Tribe of when a decision would be issued by the statutory deadline of April 18, 2006.

16. On October 18, 2006, the Tribe was informed by BIA Midwest Regional Office officials that the BIA Midwest Regional Office received and distributed to eight (8) of the thirty-five (35) Indian tribes and tribal organizations within the BIA Midwest Region approximately $200,000 in FY 2006 year-end funds in late September 2006.

17. Upon information and belief, the approximately $200,000 in FY 2006 year-end funds were distributed through the BIA Office of Trust Responsibilities, Division of Natural Resources, to be used for wildlife and parks and noxious weed eradication purposes.

18. The Tribe was not informed about the availability of any FY 2006 year-end funds until weeks after the funds were distributed and the federal fiscal year 2006 had closed.

19. On October 18, 2006, the Tribe was informed by the BIA Midwest Regional Office officials that BIA Central Office officials made a decision to distribute the year-end funds only to tribes with Title I, P.L. 93-638 contracts, excluding tribes with Title IV, P.L. 93-638 agreements like the Agreement.

20. In FY 2006 the Department provided the Tribe with $97,262 for pay cost increases.

21. The Tribe, upon information and belief, estimates that it should have received $262,500 in pay cost increases from the Department for FY 2006.

22. Upon information and belief, the Tribe did not receive fully funded pay costs in FY 2006.

23. The Department failed to provide the detailed Pay Cost analysis to the Tribe by April 1, 2006, as specified in Footnote 15 to the 2006 Request for Reprogramming, and has yet to provide it to the Tribe.

4

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 24th day of October, 2006:

David Conner



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240



November 15, 2004

Floyd Jourdain, Jr., Chairman
Red Lake Band of Chippewa Indians
P.O. Box 550
Red Lake, Minnesota 56671

Dear Chairman King:

Enclose is an signed original of the Red Lake Band of Chippewa Indians Self-Governance Multi-Year Funding Agreement for Calendar Year 2005.  It is also being sent to the appropriate committees of the Congress and to the other tribes served by the agency in which you are located.  The Agreement will go into effect 90 days following the date signed unless otherwise noted.

Sincerely,

William A. Sinclair, Director
Office of Self-Governance and
Self-Determination

Enclosure

## MULTI-YEAR FUNDING AGREEMENT FOR 2005-2010
## BETWEEN THE RED LAKE BAND OF CHIPPEWA INDIANS
## AND
## THE UNITED STATES OF AMERICA

### Section 1

**Negotiated agreement** - Pursuant to Title IV of P.L. 93-638, as amended, the Red Lake Band of Chippewa Indians (herein referred to as the "Tribe"), and the United States of America, through the Secretary of Interior (herein referred to as the "Secretary"), have negotiated the following Agreement for the assumption of responsibilities by the Tribe for the various programs, functions, services, and activities as specified in this document. This Agreement, which includes programs which are funded by or flow through the Bureau of Indian Affairs (herein referred to as the "BIA") for the benefit of the Tribe, includes all of the matters stated herein in addition to the following listed documents which are hereby incorporated herein by reference:

1. Self Governance 2005 Multi-Year Funding Agreement - Reprogramming Request and Footnotes, Pages 1-7.

2. Red Lake Tribal Council Resolution Number 202-99, Pages 1-2.

### Section 2

**Tribal Programs and Budget** - The Tribe reserves discretion to allocate such amounts of total funding to and between programs, functions, services, and activities enumerated in the attached REPROGRAMMING REQUEST as it sees fit and necessary so long as these funds are used consistent with Federal appropriations law. The Tribe assumes all operational responsibility for all programs, functions, services, and activities as reflected in the REPROGRAMMING REQUEST which are non-residual and not retained by the BIA. The Tribe has broad authority to consolidate and redesign the programs and to reallocate funding between programs without further approval from the Secretary unless otherwise indicated in this Agreement.

### Section 3

**Non-Base Budget Programs** - The programs, functions, services, and activities identified as Non-Recurring, Other Recurring - Competitive, Wildland Fire Management, and Construction will be separately determined and made a part of this Agreement. They include, but are not limited to:

Wetlands/Waterfowl Management
Fish Hatchery Maintenance
Noxious Weed Eradication
Forest Development
Forest Inventories/Plans
Water Management and Development
Environmental Management

1

All Indian Rights Protection Categories
Unresolved Hunting & Fishing Rights
Mineral Assessments
All Real Estate Services Categories

Other Non-Recurring funds not identified in this section may be separately negotiated and included in this Agreement as provided for in Section 9.

## Section 4

**Programs, Functions, Services, and Activities Retained By the BIA** - Any program, function, service, or activity not listed as transferred to the Tribe shall be assumed to be a retained function of the Secretary. In addition, the services related to any inherently federal functions will be available to self-governance tribes on the same basis as other tribes. In cases where there are shared responsibilities between the Tribe and the BIA, the respective roles of the parties will be specified in the endnotes to this Agreement or footnotes to the REPROGRAMMING REQUEST.

## Section 5

**Amount of Funds** - Subject only to Congressional action and the terms of this Agreement, the Secretary shall make available to the Tribe the total amount of funds negotiated as they are identified in the attached REPROGRAMMING REQUEST for Calender Year 2005.

## Section 6

**Rights to Other Direct Funding Reserved** - The Tribe also reserves its right to receive such additional amounts as may be made available for distribution to Tribes for pay costs, retirement cost adjustments, and inflationary cost adjustments, insofar as these funds have not been made available and distributed according to the attached REPROGRAMMING REQUEST.

## Section 7

**Contract Support** - The Tribe is eligible for contract support funding on the same basis as tribes which contract with the BIA under Title I of P.L. 93-638, as amended. The Tribe's contract support funding shall be added to this Agreement at the point when there is clear guidance from the BIA concerning the amount available. The Red Lake Band of Chippewa Indians reserves all of its legal rights to full Contract Support Cost funding, as mandated under the Indian Self-Determination and Education Assistance Act, as amended.

## Section 8

**Payment** - The Tribe chooses to receive all funding possible on an annual lump sum basis at the commencement of the Tribe's Calendar Year. Other funds will be transferred to the Tribe as soon as possible after the amounts due are known and deliverable.

2

## Section 9

**Amendment or Modification of this Agreement** - Except as otherwise provided in this Agreement, the Compact between the Tribe and the Secretary, or by law, any modifications to this Agreement shall be in the form of a written amendment signed by the Tribe and the Secretary. It is recognized that there may be errors in calculation or other mistakes which may need to be renegotiated. Both parties agree to take corrective action when such errors are identified.

## Section 10

**No Reduction in Programs, Services, Functions or Activities to Other Tribes** - Pursuant to Section 406 (a) of P.L. 93-638, as amended, nothing in this Agreement shall be construed to limit or reduce in any way the services, contracts, or funds that any other Indian tribe or tribal organization is eligible to receive under Federal law.

## Section 11

**Subject to Availability of Funds** - All amounts identified in this Agreement are subject to Congressional action on appropriations and will be adjusted accordingly. Notification to the Tribe of such adjustments will occur as soon as practicable following the action.

## Section 12

**Establishment of Self-Governance Base Budget** - The Tribe has elected to establish a self-governance base budget for its ninth year of operations under self-governance. This includes the actual amounts of funding in the TPA Tribe, TPA Agency, TPA Area (Area field operations), Other Recurring Programs, and Area Office Operations line items, which are base transferred from BIA budget accounts to the Self-Governance budget accounts. Where appropriate, the Secretary agrees to request these amounts for the Tribe in the President's Budget at the earliest opportunity. Non-recurring funds and any other one-time funding are not eligible to be included as part of the Tribe's base.

## Section 13

**Title I Provisions** - Pursuant to Section 19 of P.L. 104-109, the Tribe has the right and option to incorporate any or all of the provisions of Title I of P.L. 93-638, as amended, into this Annual Funding Agreement. In exercising of the Tribe's rights and options under Section 19 of P.L. 104-109, the provisions identified below are incorporated into this Annual Funding Agreement and have the same force and effect as if included in Title IV of P.L. 93-638, as amended. In addition to the provisions identified below, the Tribe reserves the right to unilaterally amend this Section of the Annual Funding Agreement from time to time, at the option of the Tribe, to incorporate additional provisions of Title I of P.L. 93-638, as amended. The Tribe also reserves the right to unilaterally amend this Section of the Annual Funding Agreement from time to time, at the option of the Tribe, to remove such provisions identified in this Section to the extent such provisions are not independently applicable pursuant to Title IV of P.L. 93-638, as amended.

Section 102(a) and (b).  Declination Procedures.

| | |
|---|---|
| Section 102(c). | Secretary's responsibility to provide liability insurance for the Tribe. |
| Section 102(e). | Hearing burden of proof allocation, and rank of decision-making Department official. |
| Section 103. | Grants to Indian tribal organizations. All of section 103(c) not otherwise limited by Congressional Action or earmarking. |
| Section 105(k). | Tribe deemed an executive agency when carrying out contract, grant, or agreement. |

Section 106(a), (b), (c), (d), (e), (f), (i), (j), (l), (m).  Funding and indirect cost, etc.

## Section 14

**Conflict Between Provisions of this Agreement and the Compact** - To the extent that provisions in this Agreement conflict with the Compact between the Tribe and the Secretary, this Agreement shall apply.

## Section 15

**Attributable Savings** - Any savings attributable to the operation of this Agreement will be used to provide additional services during the Calendar Year or may be expended in a manner to be determined by the Tribe in succeeding Calendar Years. The Tribe and the Secretary agree to take every reasonable effort to identify such savings over the term of this Agreement.

## Section 16

**Other Available Funds** - Any funds provided in the preceding Calendar Year under a contract or agreement pursuant to P. L. 93-638, as amended, shall remain available until expended.

## Section 17

**Additional Funds** - If the Midwest Region Office of the BIA receives notice of the availability of any additional funding in any fiscal year for any purpose, including any unspent funds, that the Tribe is eligible to apply for or receive, then it must notify the Tribe as soon as possible about such funds so that the Tribe may access or apply for those funds. The Midwest Region Office commits to keeping the Tribe informed of the existence of funding immediately upon learning of its existence.

## Section 18

**Agency Status** - The BIA shall not abolish or dismantle the Red Lake Agency from the BIA's organizational chart, nor with regard to Agency facilities, without the express written consent of the Tribe. The BIA shall retain ownership of all Agency facilities and buildings, until such time as those facilities and buildings are brought up to appropriate standards and codes. Until a mutually agreed upon transfer of Agency facilities and buildings from the BIA to the Tribe occurs, the Tribe, in accordance with P. L. 93-638, will operate and maintain those facilities and buildings using the FACCOM process. All other BIA property, equipment, and supplies currently utilized at the Red Lake Agency will be expeditiously transferred to the Tribe.

4

## Section 19

**P.L. 102-477** - The Tribe elects to include its share of funds under the Indian Employment Training and Related Services Demonstration Project into this Agreement. To the extent this Agreement includes funds pursuant to P.L. 102-477, the Tribe agrees that such funds will be administered in accordance with the Tribe's approved plan, all statutory requirements, and applicable federal regulations that have been published in the Federal Register. With respect to programs operated under the P.L. 102-477 Plan, only those federal regulations which are in conflict with the provisions in P.L. 102-477 and those for which waivers have been specifically requested and formally approved in writing will be considered waived. All P.L. 102-477 Plan modifications should be submitted to the Division of Workforce Development, Office of Self Governance & Self Determination. They will be distributed to each federal agency whose programs are affected by the modifications and reviewed through the usual P.L. 102-477 inter-departmental review process. Advance funding for programs funded through this agreement that are derived from non-BIA agencies as a result of their inclusion in the Tribe's P.L. 102-477 plan are to be transferred to the Tribe based on the funding year inherent in those funds and as soon as those funds are available for transfer.

## Section 20

**Automated Information Technology Systems** - Prior to being granted access to DOI automated information technology systems, Tribal employees must successfully complete BIA trust automated technology systems training, the costs of which will be met by the BIA. Further, prior to being granted access to DOI automated information technology systems, the Tribe agrees its employees and employees of its contractors must be favorably screened by the BIA Personnel and Physical Security Office pursuant to OMB Circular No. A-130. The Tribe agrees to comply if background investigation and adjudication becomes necessary. Costs will be incurred by the BIA.

The Tribe agrees that records made or received by the Tribe which evidence the organization, functions, policies, decisions, procedures, operations or other activities undertaken in the performance of Federal Indian trust functions will be preserved and maintained in accordance with applicable Federal law. The Tribe and the Department of the Interior agree to work cooperatively in records creation, maintenance and disposition, and training activities, and to address trust records issues and activities in accordance with Executive Order # 13175 (Consultation and Coordination with Indian Tribal Governments) and the BIA Government-to-Government policy.

## Section 21

**Effective Date** - The effective date of this Agreement will be 90 days following the submission of this signed Agreement to the Congress. The planned effective date is January 1, 2005. This Agreement shall remain in effect until December 31, 2010. Terms of the Agreement and funding amounts will remain in effect unless changed by Congressional action, the promulgation of Federal regulations or an amendment to the multi-year funding agreement (MFA). The amount of funding received by the Tribe may be increased if additional funds become available. In subsequent years, modifications to the MFA and Reprogramming Request will be negotiated by October 1st. This Agreement will remain in effect in the event that the effective date of its successor Agreement is not on or before the expiration date of the Agreement.

## Section 22

**Reporting** - The Tribe agrees to provide applicable data and information to the BIA Midwest Regional Office pursuant to the Government Performance and Results Act of 1993 (P.L. 103-62). Before providing such information, the Tribe and BIA will consult to determine applicable data and information needed to meet the requirements of P.L. 103-62 and how such information will be assembled and reported.

## Section 23

**Motor Vehicle Operation Policy** - The Tribe certifies it will self-administer a motor vehicle operation policy that promotes the safe operation of motor vehicles while performing duties to implement the terms of this Agreement. The Tribe's policy is either comparable or superior to the March 19, 2004 Motor Vehicle Operation Policy for the Bureau of Indian Affairs issued by the Assistant Secretary.

THE RED LAKE BAND OF CHIPPEWA INDIANS

BY: _____  DATE: 10-20-04
Floyd Jourdain, Jr., Chairman

THE UNITED STATES OF AMERICA

BY: _____  DATE: 11/15/04
Director, Office of Self Governance & Self Determination

6

Office of Self Governance
Self Governance 2005 Annual Funding Agreement - Reprogramming Request

October 18
Page: 1

Tribe:                RED LAKE BAND OF CHIPPEWA INDIANS
Tribal OSG Compact Code: OSGT409
Tribal BIA Org. Code:    F52409
BIA Regional Office:     MIDWEST REGION
BIA Field Office:        RED LAKE AGENCY

| LINE # | PROGRAM TITLE | COST CODE | (Info) TRIBAL SHARE | A OSG CUM. BASE | B OSG SHORTFALL BASE | C OSG SHORTFALL REQUEST | D BIA REPROGRAM REQUEST | E=A+B+C+D TOTAL AFA | FN |
|---|---|---|---|---|---|---|---|---|---|
| 5 | Other Aid to Tribal Government - TPA/AGENCY | 39220 | 0 | 56,900 | 0 | 0 | 0 | 56,900 | |
| 6 | Other Aid to Tribal Government - TPA/AREA | 39220 | 0 | 364 | 2,097 | 0 | 0 | 2,461 | |
| 10 | Self-Governance Compacts - TPA/TRIBAL | 39240 | 0 | -104,130 | 0 | 0 | 0 | -104,130 | |
| 12 | Contract Support (Ongoing) - TPA/AREA | 39270 | 0 | 0 | 0 | 0 | 1,455,899 | 1,455,899 | 1 |
| 15 | Tribal Courts - TPA/AGENCY | 39280 | 0 | 246,900 | 0 | 0 | 17,000 | 263,900 | 2 |
| 19 | Social Services - TPA/AGENCY | 39310 | 0 | 220,200 | 0 | 0 | 0 | 220,200 | 3 |
| 20 | Social Services - TPA/AREA | 39310 | 0 | 2,333 | 5,000 | 0 | 0 | 7,333 | |
| 21 | Indian Child Welfare Act - TPA/TRIBAL | 39320 | 0 | 65,860 | 0 | 0 | 0 | 65,860 | |
| 24 | Welfare Assistance Grants - TPA/TRIBAL | 39330 | 0 | 0 | 0 | 0 | 1,061,958 | 1,061,958 | 4 |
| 25 | Housing Improvement Program - TPA/TRIBAL | 39370 | 0 | 50,100 | 0 | 0 | 123,020 | 173,120 | 5 |
| 28 | Scholarships - TPA/AGENCY | 39110 | 0 | 254,100 | 0 | 0 | 0 | 254,100 | 6 |
| 33 | Johnson-O'Malley Educational Assis - TPA/TRIBAL | 39140 | 0 | 136,400 | 0 | 0 | 0 | 136,400 | |
| 38 | Law Enforcement - TPA/AGENCY | 39420 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 39 | Law Enforcement - TPA/AREA | 39420 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 41 | Community Fire Protection - TPA/AGENCY | 39430 | 0 | 42,500 | 0 | 0 | 0 | 42,500 | 7 |
| 45 | Job Placement and Training - TPA/AGENCY | 39535 | 0 | 469,900 | 0 | 0 | 0 | 469,900 | 8 |
| 48 | Economic Development - TPA/AGENCY | 39510 | 0 | 84,100 | 0 | 0 | 0 | 84,100 | |
| 49 | Economic Development - TPA/AREA | 39510 | 0 | 0 | 2,323 | 0 | 0 | 2,323 | |
| 50 | Road Maintenance - TPA/TRIBAL | 39550 | 0 | 427,307 | 0 | 0 | 96,723 | 524,030 | 9 |
| 60 | Forestry - TPA/AGENCY | 39630 | 0 | 645,700 | 0 | 0 | 0 | 645,700 | 10 |
| 61 | Forestry - TPA/AREA | 39630 | 0 | 67,000 | 0 | 0 | 150,000 | 217,000 | 10 |
| 63 | Water Resources - TPA/AGENCY | 39640 | 0 | 88,900 | 0 | 0 | 0 | 88,900 | 11 |
| 66 | Wildlife and Parks - TPA/AGENCY | 39650 | 0 | 256,600 | 0 | 0 | 0 | 256,600 | 12 |
| 72 | Trust Services, General - TPA/AGENCY | 39710 | 0 | 400 | 0 | 0 | 0 | 400 | |
| 73 | Trust Services, General - TPA/AREA | 39710 | 0 | 0 | 10,583 | 0 | 0 | 10,583 | |
| 75 | Other Rights Protection - TPA/AGENCY | 39720 | 0 | 1,100 | 0 | 0 | 0 | 1,100 | |
| 78 | Real Estate Services - TPA/AGENCY | 39770 | 0 | 43,600 | 0 | 0 | 0 | 43,600 | 13 |
| 79 | Real Estate Services - TPA/AREA | 39770 | 0 | 4,906 | 20,000 | 0 | 0 | 24,906 | |
| 86 | Environmental Quality Services - TPA/AREA | 39740 | 0 | 0 | 7,993 | 0 | 0 | 7,993 | |
| 94 | Executive Direction - TPA/AGENCY | 39810 | 0 | 93,300 | 0 | 0 | 0 | 93,300 | |
| 97 | Administrative Services - TPA/AGENCY | 39820 | 0 | 182,100 | 0 | 0 | 0 | 182,100 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 102 | TPA General Increase - TPA/TRIBAL | 39901 | 0 | 227,030 | 0 | 0 | 0 | 227,030 | 14 |
| 103 | 638 Pay Costs - TPA/TRIBAL | 39902 | 0 | 630,902 | 0 | 0 | 0 | 630,902 | 15 |
| 106 | Area and Agency Technical Support - NON TPA | 30800 | 0 | 7,810 | 0 | 0 | 0 | 7,810 | |
| 114 | Fish Hatchery Operations - NON TPA | 31950 | 0 | 46,000 | 0 | 0 | 0 | 46,000 | 16 |
| 115 | Fish Hatchery Maintenance - NON TPA | 31960 | 0 | 0 | 0 | 0 | 8,000 | 8,000 | 17 |
| 116 | Tribal Management and Development - NON TPA | 31970 | 0 | 174,000 | 0 | 0 | 70,000 | 244,000 | 18 |
| 120 | Noxious Weed Eradication - NON TPA | 33720 | 0 | 0 | 0 | 0 | 20,000 | 20,000 | 19 |
| 121 | Forestry - NON TPA | 33900 | 0 | 0 | 0 | 0 | 495,000 | 495,000 | 20 |
| 122 | Water Mgmt. Planning & Pre-Develop - NON TPA | 34020 | 0 | 0 | 0 | 0 | 80,000 | 80,000 | 21 |
| 130 | Real Estate Services - NON TPA | 34300 | 0 | 0 | 0 | 0 | 23,946 | 23,946 | 22 |
| 131 | Environmental Management - NON TPA | 34730 | 0 | 0 | 0 | 0 | 500,000 | 500,000 | 23 |
| 132 | Central Office Operations - NON TPA | 35000 | 0 | 0 | 0 | 0 | 0 | 0 | 24 |
| 152 | Housing Development - NON TPA | 36530 | 0 | 0 | 48,500 | 0 | 0 | 48,500 | |
| 154 | Economic Development - NON TPA | 36710 | 0 | 0 | 1,279 | 0 | 0 | 1,279 | |
| 155 | Natural Resources, General - NON TPA | 36810 | 0 | 0 | 14,604 | 0 | 0 | 14,604 | |
| 157 | Forestry - NON TPA | 36830 | 0 | 0 | 6,622 | 0 | 0 | 6,622 | |
| 158 | Forest Marketing Assistance - NON TPA | 36831 | 0 | 18,532 | 320 | 0 | 0 | 18,852 | |
| 164 | All Other Indian Rights Protection - NON TPA | 36920 | 0 | 2,359 | 2,421 | 0 | 0 | 4,780 | |
| 170 | Administrative Services - NON TPA | 36200 | 0 | 0 | 83,923 | 0 | 0 | 83,923 | |
| 174 | Information Resources Technology - NON TPA | 36240 | 0 | 9,806 | 30,169 | 0 | 0 | 39,975 | |
| 177 | Law Enforcement - NON TPA | 37700 | 0 | 0 | 5,283 | 0 | 4,576,753 | 4,582,036 | 25 |
| 183 | Facilities Admin. (Operations) - NON TPA | 37400 | 0 | 263,018 | 0 | 0 | 444,860 | 707,878 | 26 |
| 188 | Facilities Improvement & Repair (N - NON TPA | 11700 | 0 | 0 | 0 | 0 | 2,846,250 | 2,846,250 | 27 |
| 198 | Preparedness - NON TPA | 92120 | 0 | 0 | 0 | 0 | 480,465 | 480,465 | 28 |
| 199 | Preparedness Program Mgmt (Indirec - NON TPA | 92121 | 0 | 0 | 0 | 0 | 45,500 | 45,500 | 29 |
| 200 | Child Care Block Grants - HHS - NON TPA | 95200 | 0 | 0 | 0 | 0 | 204,033 | 204,033 | 30 |
| 201 | Child Care Development Fund - HHS - NON TPA | 95300 | 0 | 0 | 0 | 0 | 241,799 | 241,799 | 31 |
| 203 | Native Employment Works (NEW) - HH - NON TPA | 95520 | 0 | 0 | 0 | 0 | 134,691 | 134,691 | 32 |
| 204 | Supplemental Youth Services-LABOR - NON TPA | 95130 | 0 | 0 | 0 | 0 | 60,296 | 60,296 | 33 |
| 205 | Comprehensive Services(Adult)-LABO - NON TPA | 95140 | 0 | 0 | 0 | 0 | 205,688 | 205,688 | 34 |
| | TOTAL | | 0 | 4,715,897 | 241,117 | 0 | 13,341,881 | 18,298,895 | |

AUTHORIZED FINANCIAL OFFICERS:

_Terrance L Vidal_
Bureau of Indian Affairs - Regional Office

_See Signature on Next Page_
Tribe

_Ken Reinfeld_
Office of Self Governance

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 102 | TPA General Increase - TPA/TRIBAL | 39901 | 0 | 227,030 | 0 | 0 | 0 | 227,030 | 14 |
| 103 | 638 Pay Costs - TPA/TRIBAL | 39902 | 0 | 630,902 | 0 | 0 | 0 | 630,902 | 15 |
| 106 | Area and Agency Technical Support - NON TPA | 30800 | 0 | 7,810 | 0 | 0 | 0 | 7,810 | |
| 114 | Fish Hatchery Operations - NON TPA | 31950 | 0 | 46,000 | 0 | 0 | 0 | 46,000 | 16 |
| 115 | Fish Hatchery Maintenance - NON TPA | 31960 | 0 | 0 | 0 | 0 | 8,000 | 8,000 | 17 |
| 116 | Tribal Management and Development - NON TPA | 31970 | 0 | 174,000 | 0 | 0 | 70,000 | 244,000 | 18 |
| 120 | Noxious Weed Eradication - NON TPA | 33720 | 0 | 0 | 0 | 0 | 20,000 | 20,000 | 19 |
| 121 | Forestry - NON TPA | 33900 | 0 | 0 | 0 | 0 | 495,000 | 495,000 | 20 |
| 122 | Water Mgmt. Planning & Pre-Develop - NON TPA | 34020 | 0 | 0 | 0 | 0 | 80,000 | 80,000 | 21 |
| 130 | Real Estate Services - NON TPA | 34300 | 0 | 0 | 0 | 0 | 23,946 | 23,946 | 22 |
| 131 | Environmental Management - NON TPA | 34730 | 0 | 0 | 0 | 0 | 500,000 | 500,000 | 23 |
| 132 | Central Office Operations - NON TPA | 35000 | 0 | 0 | 0 | 0 | 0 | 0 | 24 |
| 152 | Housing Development - NON TPA | 36530 | 0 | 0 | 48,500 | 0 | 0 | 48,500 | |
| 154 | Economic Development - NON TPA | 36710 | 0 | 0 | 1,279 | 0 | 0 | 1,279 | |
| 155 | Natural Resources, General - NON TPA | 36810 | 0 | 0 | 14,604 | 0 | 0 | 14,604 | |
| 157 | Forestry - NON TPA | 36830 | 0 | 0 | 6,622 | 0 | 0 | 6,622 | |
| 158 | Forest Marketing Assistance - NON TPA | 36831 | 0 | 18,532 | 320 | 0 | 0 | 18,852 | |
| 164 | All Other Indian Rights Protection - NON TPA | 36920 | 0 | 2,359 | 2,421 | 0 | 0 | 4,780 | |
| 170 | Administrative Services - NON TPA | 36200 | 0 | 0 | 83,923 | 0 | 0 | 83,923 | |
| 174 | Information Resources Technology - NON TPA | 36240 | 0 | 9,806 | 30,169 | 0 | 0 | 39,975 | |
| 177 | Law Enforcement - NON TPA | 37700 | 0 | 0 | 5,283 | 0 | 4,576,753 | 4,582,036 | 25 |
| 183 | Facilities Admin. (Operations) - NON TPA | 37400 | 0 | 263,018 | 0 | 0 | 444,860 | 707,878 | 26 |
| 188 | Facilities Improvement & Repair (N - NON TPA | 11700 | 0 | 0 | 0 | 0 | 2,846,250 | 2,846,250 | 27 |
| 198 | Preparedness - NON TPA | 92120 | 0 | 0 | 0 | 0 | 480,465 | 480,465 | 28 |
| 199 | Preparedness Program Mgmt (Indirec - NON TPA | 92121 | 0 | 0 | 0 | 0 | 45,500 | 45,500 | 29 |
| 200 | Child Care Block Grants - HHS - NON TPA | 95200 | 0 | 0 | 0 | 0 | 204,033 | 204,033 | 30 |
| 201 | Child Care Development Fund - HHS - NON TPA | 95300 | 0 | 0 | 0 | 0 | 241,799 | 241,799 | 31 |
| 203 | Native Employment Works (NEW) - HH - NON TPA | 95520 | 0 | 0 | 0 | 0 | 134,691 | 134,691 | 32 |
| 204 | Supplemental Youth Services-LABOR - NON TPA | 95130 | 0 | 0 | 0 | 0 | 60,296 | 60,296 | 33 |
| 205 | Comprehensive Services(Adult)-LABO - NON TPA | 95140 | 0 | 0 | 0 | 0 | 205,688 | 205,688 | 34 |
| | | TOTAL | 0 | 4,715,897 | 241,117 | 0 | 13,341,881 | 18,298,895 | |

AUTHORIZED FINANCIAL OFFICERS:

Bureau of Indian Affairs - Regional Office
_____

Tribe _____

_____

Office of Self Governance

1 Funds will be distributed using similar methodology as was used last calendar year and published in the Federal Register. The OSG and BIA commit to keeping the Tribe's Director of Finance and Self Governance Coordinator adequately informed in advance of deadlines for submission of contract support payment requests. The estimate is based on the Tribe's indirect cost rate of 9.47%, a fixed carryforward rate approved by the cognizant agency. The Tribe is currently negotiating its CY 2005 indirect cost rate and anticipates a substantial increase in the rate. The Red Lake Band of Chippewa Indians reserves all of its legal rights to full Contract Support Cost funding, as mandated under the Indian Self-Determination and Education Assistance Act.

2 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The Red Lake Band requests an additional $500,000 from the DOJ initiative for operation of Tribal Courts. The Tribe requests that the $17,000 received in CY 2003 for Court-related IIM and probate activities be continued and base-transferred in CY 2005, which will be determined by national distribution methodology.

3 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. An estimated $83,336 of the amount in this line item will be used in accordance with the Tribe's approved P. L. 102-477 Plan.

4 Total funds will be distributed based upon current welfare assistance need as reflected in the quarterly analysis of needs. This amount includes Foster Care. An estimated $530,079 of the amount in this line item will be used in accordance with the Tribes approved P. L. 102-477 Plan for General Assistance.

5 Funds will be distributed based on HIP eligible applicant data. HIP funds shall be used in accordance with HIP regulations unless waived. The Red Lake Band asserts that the funding amount available for this line item has historically been insufficient and inadequate to meet the needs of the service population.

6 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The actual costs for the scholarships program in CY 2003 was $508,000, approximately twice the amount received. The amount in this line item, which has been base transferred to the Tribe, will be used in accordance with the Tribes approved P. L. 102-477 Plan.

7 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The actual cost to minimally protect the lives of Red Lake Band members with fire protection in CY 2003 was $310,192, greater than seven times the funding level. The balance of funds was taken from other Self Governance programs.

8 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The amount in this line item, which has been base transferred to the Tribe, will be used in accordance with the Tribe's approved P. L. 102-477 Plan.

9 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The Tribe desires that funds under this category be distributed including the historical base level of $427,307 and an additional estimated amount of $96,723 reflecting the BIAs actual maintenance needs estimate for Red Lake.

10 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The Red Lake Band and the BIA agree to have one forestry position as "residual" from the entire Red Lake Field Office. The estimated cost, which includes salary and benefits, was $87,416 in FY 2003. The BIA shall return to the Tribe at the end of the calendar year, any unspent funds pertaining to the residual forestry position. The BIA and OSG guarantee the Red Lake Band will be consulted with, and treated equitably, in the allocation of any funding increases to BIA's Forestry Program. The BIA and Tribe agree that $217,000 needs to be base-transferred to the Tribe under Forestry TPA/AGENCY, under FFS Cost Code 39630.

11 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet

the needs of the service population.

12 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population.

13 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The BIA agrees to form a Working Group to identify, assess title status of, survey, establish the value of and transfer lands held by the BLM and others to the BIA to be held in trust for the Tribe. The Working Group shall consist of the BIA Midwest Region Director, The Chairman of the Tribe or his representatives, and a representative of the BLM.

14 This amount to be determined by Congressional appropriation.

15 This amount to be determined by Congressional appropriation. The BIA will make every effort to treat Red Lake Tribal employees the same as all other Tribal and Federal employees for purposes of pay cost adjustments in FY 2005. The BIA and OSG agree to make every possible effort to recover for the Tribe all 638 Pay Cost shortages for FY 2002-2004, which were legitimately due to the Tribe, but which were not received because of Administration oversight.

16 The Red Lake Band believes these dollars are inadequate and insufficient to effectively operate the program.

17 This dollar amount is an estimate. The actual dollar amount for the CY 2005 MFA will be obtained on the basis of an existing competitive process.

18 The Red Lake Band believes these dollars are inadequate and insufficient to effectively operate the program. This line item includes an estimate of $70,000 for Wetlands/Waterfowl Management. The actual amount for Wetlands/Waterfowl Management will be based on an existing, competitive process. The estimate for Wetlands/Waterfowl Management has been placed in this line item because the BIA has temporarily removed this program and funding from the budget. The Tribe asserts this is in violation of Executive Order # 13175, and notes the United States Congress specifically restored the program and funding in FY 2003 and FY 2004.

19 This dollar amount is an estimate. The actual dollar amount for the CY 2005 MFA will be based on an existing competitive process.

20 This amount is an estimate. This is a recent Bureau budget line item, and reflects the merger of three former budget line items, each with differing methods/formulas for funds distribution: Forest Development; Forest Management Inventories & Plans; and Woodland Management. The actual amount will be based on specific forestry development projects, forest acres, and need for the Forest Development portion, and on the approved scheduled project amount for Forest Inventories/Plans portion in CY 2005. The BIA and OSG guarantee the Red Lake Band will be consulted with, and treated equitably, in the allocation of any funding from the BIA's Forestry Program. The Red Lake Band believes these dollars are inadequate and insufficient to effectively operate the program.

21 The actual dollar amount for the CY 2005 MFA will be based on an existing nationally competitive process. The BIA and OSG agree to work with the Red Lake Band to ensure that the Tribe is allowed to compete nationally on the same basis as other tribes.

22 This amount is an estimate. The BIA and OSG have agreed the Tribe should receive these funds.

23 This amount is requested in 2005 to assist with completing the Red Lake Sewage Lagoon upgrades.

24 The Red Lake Band hereby protests and objects to the decision to not distribute shares of the central office for FY 2005, and it is remarkably unfair that the Central Office budget has increased 37% in the last three years compared to the TPA budget increase of a paltry .3%. The Tribe disagrees with the Department of Interior in its assertion that Congress does not intend that Central Office shares should be distributed to tribes, but that to the contrary, past Congressional language in this area fully supported the distribution of Central Office shares to the tribes, until the BIA persuaded Congress and the Administration to freeze distributions in FY 1998 - 2004.



25 The Assistant Secretary - Indian Affairs and the Tribe agree that this amount represents original and historical base-transferred amounts of $1,413,500 from TPA Law Enforcement - Agency, $5,283 from TPA Law Enforcement Area, and $18,799 from Law Enforcement Area, in addition to $95,000 in base eligible funding from the FY 1999 Law Enforcement

Initiative, $94,000 in base eligible funding from the FY 2000 Law Enforcement Initiative, and $224,000 in base eligible funding from the FY 2001 Law Enforcement Initiative. The Assistant Secretary - Indian Affairs agrees to do everything in his power to ensure these amounts are not reduced, and that Self-Governance tribes are treated on an equal footing with BIA Law Enforcement with regard to any additional Law Enforcement funds distributions. The Red Lake Band requests an additional $1 million for operation of Law Enforcement. Any new law enforcement program funding is to be determined and added to the AFA based on national distribution methodology developed by the BIA. The OSG and BIA also agree that it will keep the Tribe closely informed about all activities pertaining to Public Safety and Justice, so that the Tribe can participate to the fullest degree. The OSG and BIA agree that the $1.555 million obtained in FY 2002 for detention operations associated with new facilities needs to be designated as base eligible funding in FY 2005, because this funding is for staffing the Tribes new detention facility, and the Tribe cannot staff this facility for just one year. The BIA agrees to assist the Tribe in obtaining $1,218,482 for operations funding for the Tribes juvenile correction facility in CY 2005, and to request this amount in the next Presidents budget. With regard to any new initiatives pertaining to Homeland Security, it is mutually agreed that Red Lake Law Enforcement shall be eligible to participate at the same level as BIA Law Enforcement in any new programs and funding increases.

26 Historically there has been a deficit of O&M monies for Red Lake Agency facilities. Continuously funds were transferred from the Area to the Agency to negate the deficit. The BIA and the Red Lake Band hereby agree that if funds are available to cover future deficits for O&M monies, these funds will be made available to the Band, and in subsequent years such funds shall be transferred to the Tribes AFA base. Current base funding FFS Code 37400 (Operations) is a combination of both FFS Code 37400 (Operations) and FFS Code 37500 (Maintenance). The amount shown is an estimate. The actual amount will be determined from the FMIS O&M Allotment Formula. The Tribe has incurred a substantial increase in the need for O&M funds for maintaining the new detention facility, which consists of 55,760 square feet for which the BIA is responsible to maintain. The BIA reprogramming request amount of $444,860 is an estimate, and includes a general increase of $26,660, and $418,200 based on square footage for the detention and juvenile facilities, for the period of September 1, 2004 to December 31, 2005. The Tribe requests that funding be allocated to conform with the Tribes calendar year and the MFA. The OSG and BIA agree to assist the Tribe in obtaining $1 million from the FY 2005 O&M account for detention facility maintenance associated with new facilities recently funded by DOJ.

27 The Tribe requests the BIA restore funding to the Agency Water & Sewer Project # 93F01 in the amount of $2,846,250.00. This represents the original BIA project cost of $2,041,799.00 in 1996 adjusted for inflation at 3.5% per year to FY2005. The Tribe requests the completion of this project to restore design fire suppression flows to the southern portions of the Red Lake water system, prevent further contamination of houses on the sewer system and allow the Tribe to proceed with it's planned improvements to the Agency roads and Mn Hwy #1. The MnDot project may be jeopardized and the Agency project delayed indefinitely if the BIA's subsurface utilities are not replaced.

28 This dollar amount is an estimate. The actual dollar amount for the CY 2005 MFA will be based on a preexisting formula according to the National Fire Management Analysis System. The Tribe and the BIA agree that the Wildland Fire Management Memorandum of Agreement between the Red Lake Band of Chippewa Indians and the Bureau of Indian Affairs shall be the guiding document for wildland fire management at Red Lake. It is mutually agreed that a flexible and cooperative working relationship between the Tribe's fire program, the fire management officer at Bemidji, and the fire program at the BIA Midwest Region office will exist, so that adequate trust resource protection and management will be maintained. Pursuant to Section 8 of the Tribe's MFA, the BIA and OSG agree to make every effort to ensure funds are released to the Tribe at the beginning of the calendar year.

29 This dollar amount is an estimate. Red Lake's currently approved indirect cost rate is 9.47%. The Tribe is currently negotiating its CY 2005 indirect cost rate and anticipates a substantial increase in the rate.

30 Estimate of HHS Child Care Block Grant. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.

31 Estimate of HHS Child Care Development Fund. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.

32 Estimate of N.E.W. Program. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.
33 Estimate of Department of Labor Supplemental Youth Services. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.
34 Estimate of Department of Labor Comprehensive Adult Services. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.

# Holland+Knight

Tel   202 955 3000
Fax  202 955 5564

Holland & Knight LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C.  20006
www.hklaw.com

Philip Baker-Shenk
202 457 7031
philip.bakershenk@hklaw.com

*ORIGINAL*
*Return Receipt Attached*

February 17, 2006

<u>VIA HAND DELIVERY</u>
<u>RETURN RECEIPT REQUESTED</u>

Ken Reinfeld, Acting Director
Office of Self-Governance and Self-Determination
U.S. Department of the Interior
1849 C Street NW
Washington, D.C.  20240

Re:    Red Lake Band of Chippewa Indians
        Tender of Contract Disputes Act Claim for Breach of Multi-Year Funding Agreement

Dear Mr. Reinfeld:

We, on behalf of and as duly authorized by the Red Lake Band of Chippewa Indians (the "Tribe") pursuant to Tribal Resolution No. 26-06, a copy of which is attached hereto as Exhibit A, hereby tender this claim to the Office of Self-Governance and Self-Determination ("OSG"), within the U.S. Department of the Interior, pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq. and the implementing regulations thereto (collectively, the "CDA"), for full and appropriate relief from the material breaches by the Bureau of Indian Affairs ("BIA") of the Multi-Year Funding Agreement for 2005-2010 Between the Red Lake Band of Chippewa Indians and the United States of America (the "Agreement"), as executed on behalf of the Tribe by Chairman Floyd Jourdain, Jr. on October 20, 2004 and on behalf of the United States of America by OSG Director William Sinclair on November 15, 2004. A copy of the Agreement is attached hereto as Exhibit B.

The Tribe and the BIA first entered into negotiations for the CY 2005 Annual Funding Agreement in August, 2004 and negotiations were concluded in October, 2004. The matter of program operations funding associated with the Tribe's new juvenile corrections facility (the "Facility") was an express and openly negotiated issue in the negotiations between the Tribe and

Ken Reinfeld, Acting Director
February 17, 2006
Page 2

the Department representatives. The result was language agreed to by the BIA and placed in footnote 25 of the executed Agreement, which states, in relevant part:

> "The BIA agrees to assist the Tribe in obtaining $1,218,482 for operations funding for the Tribes [sic] juvenile correction facility in CY 2005, and to request this amount in the next Presidents [sic] budget."

The breaches which form the basis of this Contract Disputes Act claim are:

(1)    The BIA's failure to obtain $1,218,482 in program operations funding for the Tribe's juvenile corrections facility in CY 2005;

(2)    The BIA's failure to assist the Tribe in obtaining $1,218.482 in program operations funding for the Facility in CY 2005;

(3)    The BIA's failure to include $1,218,482 in program operations funding for the Facility in the FY 2006 budget; and

(4)    The BIA's failure to request $1,218,482 in program operations funding for the Facility in the FY 2006 budget.

The Tribe built the Facility with funds from the Department of Justice and the Red Lake Band's Tribal Treasury. The BIA approved the plans for the Facility prior to construction. Upon completion of the construction, BIA Facility Management and Construction issued a Certificate of Occupancy to the Tribe for the Facility in CY 2005 and provided facilities operating and maintenance funding through the Branch of Facilities Management & Construction in CY 2005.

The BIA failed to obtain the $1,218,482 in program operations funding for the Facility in CY 2005. The BIA failed to assist the Tribe in obtaining such funds in CY 2005. Furthermore, the BIA failed to submit a FY 2006 Presidential budget request for such funds. And the FY 2006 budget request submitted by the President to Congress did not expressly include any such funds.

The foregoing constitute material breaches of the BIA's contractual obligations under the Agreement. The Tribe has attempted to resolve the issue of the contractual breaches by correspondence and discussions with the BIA, to no avail. The Tribe therefore submits this claim and demands an immediate cure and appropriate relief for such breaches.

As appropriate relief, the Tribe requests that the BIA award the Tribe as damages the amount of $1,218,482 for CY 2005 and an additional $1,218,482 for FY 2006, for a total damages award of $2,436,964, plus statutory interest accrued thereon (for the CY 2005 amount effective January 1, 2005, and the FY 2006 amount effective January 1, 2006). The Tribe further requests that the BIA award the Tribe all of its costs, expenses, and fees, including attorneys' fees, incurred as a result of the foregoing breaches and the necessity of pursuing this claim, on authority both equitable in nature and that provided under the Equal Access to Justice Act. Finally, the Tribe requests appropriate declaratory and injunctive relief as to the Tribe's

Ken Reinfeld, Acting Director
February 17, 2006
Page 3

contractual right to have appropriate recurring levels of funding submitted in annual Presidential budget requests by the BIA for the Facility's operations funding for FY 2007 and successive year budgets.

Because the relief sought under this claim exceeds $100,000, attached hereto is a certification of the foregoing claim in accordance with the provision of the CDA at 41 U.S.C. § 605(c)(1).

The Tribe hereby specifically reserves and does not waive its right to assert any and all other claims which it may have pertaining to the Agreement against the BIA, the OSG, the Department of the Interior, or any other entity, under the Contracts Dispute Act or any other applicable law and in any appropriate tribunal.

We look forward to a prompt award decision from you pursuant to the provisions of the CDA.

Sincerely yours,

HOLLAND & KNIGHT LLP

Philip Baker-Shenk

cc:     Hon. Floyd Jourdain, Chairman
        RED LAKE BAND OF CHIPPEWA INDIANS

Attachments:  (A)    Tribal Council Resolution No. 26-06
              (B)    Multi-Year Funding Self-Governance Agreement for 2005-2010
              (C)    Certification of Contract Disputes Act claim

Ken Reinfeld, Acting Director
February 17, 2006
Page 4

## Exhibit A

(See attached resolution)

**RED LAKE BAND**
**of CHIPPEWA INDIANS**
*RED LAKE NATION HEADQUARTERS*



OFFICERS:
FLOYD JOURDAIN, JR., Chairman
JUDY ROY, Secretary
DARRELL G. SEKI, SR., Treasurer
DISTRICT REPRESENTATIVES:
CLIFFORD HARDY
GLENDA J. MARTIN
JULIUS "TOADY" THUNDER
ALLEN PEMBERTON
DONALD E. DESJARLAIT
DONALD J. "DUDIE" MAY
WILLIAM "BILLY" GREENE
RICHARD BARRETT, SR.
ADVISORY COUNCIL:
7 HEREDITARY CHIEFS

PO Box 550, Red Lake, MN 56671          Phone 218-679-3341 • Fax 218-679-3378

## RESOLUTION NO. 26-06

Upon a motion by Treasurer Seki and second by Representative Hardy, the following was enacted:

**WHEREAS,** the Red Lake Tribal Council is the governing body of the Red Lake Band of Chippewa Indians; and

**WHEREAS,** after extensive negotiations, the United States of America entered into a "Multi-Year Funding Agreement for 2005-2010 between the Red Lake Band of Chippewa Indians and the United States of America", with an effective date beginning on January 1, 2005; and

**WHEREAS,** the Agreement contained in footnote 25 language by which the Director of the Office of Self-Governance and Self-Determination specifically committed the United States as follows:

> "The BIA agrees to assist the Tribe in obtaining $1,218,482 for operations funding for the Tribes [sic] juvenile correction facility in CY 2005, and to request this amount in the next Presidents [sic] budget"

; and

**WHEREAS,** the BIA did not assist the Tribe in obtaining any such funds in CY 2005 and, in fact, the BIA did not obtain any such funds in CY 2005; and

**WHEREAS,** the next President's budget referenced above was for FY 2006, which FY 2006 budget request submitted by the President to Congress did not include any such funds, nor did the BIA request that such funds be included in that budget; and

**WHEREAS,** the Tribal Council has carefully considered the process, merits and costs of pursuing a contract claim by the Tribe against the U.S. Department of the Interior and the Bureau of Indian Affairs arising from the BIA's failure to obtain and request $1,218,482 in operations funding for the Tribe's juvenile corrections facility in CY 2005 and FY 2006 despite a contractual obligation to do so; now

**THEREFORE BE IT RESOLVED,** that the Tribe's attorneys of the law firm of Holland & Knight LLP are authorized and instructed to work with the Tribal staff and Tribal Officers to immediately prepare and file a certified claim and any related lawsuits under the Contract Disputes Act and the Indian Self-Determination Act in order to obtain appropriate recurring levels of funding for the future operation of the Tribe's juvenile correctional facility and damages for the lack of operational funding in CY 2005 and FY 2006.

TRIBAL COUNCIL    Organized April 18, 1918  (Revised Constitution & By-Laws, January 6, 1959)
CHIEF COUNCIL OF 1889:   May-dway-gwa-no-nind, Nah-gaun-e-gwon-abe, Mays-co-co-caw-ay, Ahnah-me-ay-ge-shig, Naw-ay-tah-wowb; Nah-wah-quay-ge-shig

# RED LAKE BAND
## of CHIPPEWA INDIANS
*RED LAKE NATION HEADQUARTERS*



OFFICERS:
FLOYD JOURDAIN, JR., Chairman
JUDY ROY, Secretary
DARRELL G. SEKI, SR., Treasurer

DISTRICT REPRESENTATIVES:
CLIFFORD HARDY
GLENDA J. MARTIN
JULIUS "TOADY" THUNDER
ALLEN PEMBERTON
DONALD E. DESJARLAIT
DONALD J. "DUDIE" MAY
WILLIAM "BILLY" GREENE
RICHARD BARRETT, SR.

ADVISORY COUNCIL:
7 HEREDITARY CHIEFS

PO Box 550, Red Lake, MN 56671          Phone 218-679-3341 • Fax 218-679-3378

---

**RESOLUTION NO. 26-06**
**PAGE 2**


FOR        :  10
AGAINST    :   0

      We do hereby certify that the foregoing resolution was duly presented and enacted upon at the Regular Council Meeting of the Tribal Council held on Tuesday, February 14, 2006, with a quorum present, at the Red Lake Nation Headquarters, Red Lake.


FLOYD JOURDAIN, JR., CHAIRMAN                    JUDY ROY, SECRETARY


TRIBAL COUNCIL    Organized April 18, 1918   (Revised Constitution & By-Laws, January 6, 1959)
CHIEF COUNCIL OF 1889:   May-dway-gwa-no-nind, Nah-gaun-e-gwon-abe, Mays-co-co-caw-ay, Ahnah-me-ay-ge-shig, Naw-ay-tah-wowb; Nah-wah-quay-ge-shig

Ken Reinfeld, Acting Director
February 17, 2006
Page 5

## **Exhibit B**

(See attached agreement)



# United States Department of the Interior

## OFFICE OF THE SECRETARY
Washington, DC 20240



**November 15, 2004**

Floyd Jourdain, Jr., Chairman
Red Lake Band of Chippewa Indians
P.O. Box 550
Red Lake, Minnesota 56671

Dear Chairman King:

Enclose is an signed original of the Red Lake Band of Chippewa
Indians Self-Governance Multi-Year Funding Agreement for Calendar
Year 2005.  It is also being sent to the appropriate committees
of the Congress and to the other tribes served by the agency in
which you are located.  The Agreement will go into effect 90 days
following the date signed unless otherwise noted.

Sincerely,

William A. Sinclair, Director
Office of Self-Governance and
Self-Determination

Enclosure

## MULTI-YEAR FUNDING AGREEMENT FOR 2005-2010
## BETWEEN THE RED LAKE BAND OF CHIPPEWA INDIANS
## AND
## THE UNITED STATES OF AMERICA

### Section 1

**Negotiated agreement** - Pursuant to Title IV of P.L. 93-638, as amended, the Red Lake Band of Chippewa Indians (herein referred to as the "Tribe"), and the United States of America, through the Secretary of Interior (herein referred to as the "Secretary"), have negotiated the following Agreement for the assumption of responsibilities by the Tribe for the various programs, functions, services, and activities as specified in this document. This Agreement, which includes programs which are funded by or flow through the Bureau of Indian Affairs (herein referred to as the "BIA") for the benefit of the Tribe, includes all of the matters stated herein in addition to the following listed documents which are hereby incorporated herein by reference:

1. Self Governance 2005 Multi-Year Funding Agreement - Reprogramming Request and Footnotes, Pages 1-7.

2. Red Lake Tribal Council Resolution Number 202-99, Pages 1-2.

### Section 2

**Tribal Programs and Budget** - The Tribe reserves discretion to allocate such amounts of total funding to and between programs, functions, services, and activities enumerated in the attached REPROGRAMMING REQUEST as it sees fit and necessary so long as these funds are used consistent with Federal appropriations law. The Tribe assumes all operational responsibility for all programs, functions, services, and activities as reflected in the REPROGRAMMING REQUEST which are non-residual and not retained by the BIA. The Tribe has broad authority to consolidate and redesign the programs and to reallocate funding between programs without further approval from the Secretary unless otherwise indicated in this Agreement.

### Section 3

**Non-Base Budget Programs** - The programs, functions, services, and activities identified as Non-Recurring, Other Recurring - Competitive, Wildland Fire Management, and Construction will be separately determined and made a part of this Agreement. They include, but are not limited to:

Wetlands/Waterfowl Management
Fish Hatchery Maintenance
Noxious Weed Eradication
Forest Development
Forest Inventories/Plans
Water Management and Development
Environmental Management

1

All Indian Rights Protection Categories
Unresolved Hunting & Fishing Rights
Mineral Assessments
All Real Estate Services Categories

Other Non-Recurring funds not identified in this section may be separately negotiated and included in this Agreement as provided for in Section 9.

## Section 4

**Programs, Functions, Services, and Activities Retained By the BIA** - Any program, function, service, or activity not listed as transferred to the Tribe shall be assumed to be a retained function of the Secretary. In addition, the services related to any inherently federal functions will be available to self-governance tribes on the same basis as other tribes. In cases where there are shared responsibilities between the Tribe and the BIA, the respective roles of the parties will be specified in the endnotes to this Agreement or footnotes to the REPROGRAMMING REQUEST.

## Section 5

**Amount of Funds** - Subject only to Congressional action and the terms of this Agreement, the Secretary shall make available to the Tribe the total amount of funds negotiated as they are identified in the attached REPROGRAMMING REQUEST for Calender Year 2005.

## Section 6

**Rights to Other Direct Funding Reserved** - The Tribe also reserves its right to receive such additional amounts as may be made available for distribution to Tribes for pay costs, retirement cost adjustments, and inflationary cost adjustments, insofar as these funds have not been made available and distributed according to the attached REPROGRAMMING REQUEST.

## Section 7

**Contract Support** - The Tribe is eligible for contract support funding on the same basis as tribes which contract with the BIA under Title I of P.L. 93-638, as amended. The Tribe's contract support funding shall be added to this Agreement at the point when there is clear guidance from the BIA concerning the amount available. The Red Lake Band of Chippewa Indians reserves all of its legal rights to full Contract Support Cost funding, as mandated under the Indian Self-Determination and Education Assistance Act, as amended.

## Section 8

**Payment** - The Tribe chooses to receive all funding possible on an annual lump sum basis at the commencement of the Tribe's Calendar Year. Other funds will be transferred to the Tribe as soon as possible after the amounts due are known and deliverable.

## Section 9

**Amendment or Modification of this Agreement** - Except as otherwise provided in this Agreement, the Compact between the Tribe and the Secretary, or by law, any modifications to this Agreement shall be in the form of a written amendment signed by the Tribe and the Secretary. It is recognized that there may be errors in calculation or other mistakes which may need to be renegotiated. Both parties agree to take corrective action when such errors are identified.

## Section 10

**No Reduction in Programs, Services, Functions or Activities to Other Tribes** - Pursuant to Section 406 (a) of P.L. 93-638, as amended, nothing in this Agreement shall be construed to limit or reduce in any way the services, contracts, or funds that any other Indian tribe or tribal organization is eligible to receive under Federal law.

## Section 11

**Subject to Availability of Funds** - All amounts identified in this Agreement are subject to Congressional action on appropriations and will be adjusted accordingly. Notification to the Tribe of such adjustments will occur as soon as practicable following the action.

## Section 12

**Establishment of Self-Governance Base Budget** - The Tribe has elected to establish a self-governance base budget for its ninth year of operations under self-governance. This includes the actual amounts of funding in the TPA Tribe, TPA Agency, TPA Area (Area field operations), Other Recurring Programs, and Area Office Operations line items, which are base transferred from BIA budget accounts to the Self-Governance budget accounts. Where appropriate, the Secretary agrees to request these amounts for the Tribe in the President's Budget at the earliest opportunity. Non-recurring funds and any other one-time funding are not eligible to be included as part of the Tribe's base.

## Section 13

**Title I Provisions** - Pursuant to Section 19 of P.L. 104-109, the Tribe has the right and option to incorporate any or all of the provisions of Title I of P.L. 93-638, as amended, into this Annual Funding Agreement. In exercising of the Tribe's rights and options under Section 19 of P.L. 104-109, the provisions identified below are incorporated into this Annual Funding Agreement and have the same force and effect as if included in Title IV of P.L. 93-638, as amended. In addition to the provisions identified below, the Tribe reserves the right to unilaterally amend this Section of the Annual Funding Agreement from time to time, at the option of the Tribe, to incorporate additional provisions of Title I of P.L. 93-638, as amended. The Tribe also reserves the right to unilaterally amend this Section of the Annual Funding Agreement from time to time, at the option of the Tribe, to remove such provisions identified in this Section to the extent such provisions are not independently applicable pursuant to Title IV of P.L. 93-638, as amended.

3

Section 102(a) and (b).   Declination Procedures.
Section 102(c).          Secretary's responsibility to provide liability insurance for the Tribe.
Section 102(e).          Hearing burden of proof allocation, and rank of decision-making
                         Department official.
Section 103.            Grants to Indian tribal organizations.  All of section 103(c) not otherwise
                         limited by Congressional Action or earmarking.
Section 105(k).          Tribe deemed an executive agency when carrying out contract, grant, or
                         agreement.
Section 106(a), (b), (c), (d), (e), (f), (i), (j), (l), (m).  Funding and indirect cost, etc.

## Section 14

**Conflict Between Provisions of this Agreement and the Compact -** To the extent that provisions in
this Agreement conflict with the Compact between the Tribe and the Secretary, this Agreement shall
apply.

## Section 15

**Attributable Savings -** Any savings attributable to the operation of this Agreement will be used to
provide additional services during the Calendar Year or may be expended in a manner to be determined
by the Tribe in succeeding Calendar Years.  The Tribe and the Secretary agree to take every reasonable
effort to identify such savings over the term of this Agreement.

## Section 16

**Other Available Funds -** Any funds provided in the preceding Calendar Year under a contract or
agreement pursuant to P. L. 93-638, as amended, shall remain available until expended.

## Section 17

**Additional Funds -** If the Midwest Region Office of the BIA receives notice of the availability of any
additional funding in any fiscal year for any purpose, including any unspent funds, that the Tribe is
eligible to apply for or receive, then it must notify the Tribe as soon as possible about such funds so
that the Tribe may access or apply for those funds.  The Midwest Region Office commits to keeping
the Tribe informed of the existence of funding immediately upon learning of its existence.

## Section 18

**Agency Status -** The BIA shall not abolish or dismantle the Red Lake Agency from the BIA's
organizational chart, nor with regard to Agency facilities, without the express written consent of the
Tribe.  The BIA shall retain ownership of all Agency facilities and buildings, until such time as those
facilities and buildings are brought up to appropriate standards and codes.  Until a mutually agreed
upon transfer of Agency facilities and buildings from the BIA to the Tribe occurs, the Tribe, in
accordance with P. L. 93-638, will operate and maintain those facilities and buildings using the
FACCOM process.  All other BIA property, equipment, and supplies currently utilized at the Red Lake
Agency will be expeditiously transferred to the Tribe.

4

## Section 19

**P.L. 102-477** - The Tribe elects to include its share of funds under the Indian Employment Training and Related Services Demonstration Project into this Agreement. To the extent this Agreement includes funds pursuant to P.L. 102-477, the Tribe agrees that such funds will be administered in accordance with the Tribe's approved plan, all statutory requirements, and applicable federal regulations that have been published in the Federal Register. With respect to programs operated under the P.L. 102-477 Plan, only those federal regulations which are in conflict with the provisions in P.L. 102-477 and those for which waivers have been specifically requested and formally approved in writing will be considered waived. All P.L. 102-477 Plan modifications should be submitted to the Division of Workforce Development, Office of Self Governance & Self Determination. They will be distributed to each federal agency whose programs are affected by the modifications and reviewed through the usual P.L. 102-477 inter-departmental review process. Advance funding for programs funded through this agreement that are derived from non-BIA agencies as a result of their inclusion in the Tribe's P.L. 102-477 plan are to be transferred to the Tribe based on the funding year inherent in those funds and as soon as those funds are available for transfer.

## Section 20

**Automated Information Technology Systems** - Prior to being granted access to DOI automated information technology systems, Tribal employees must successfully complete BIA trust automated technology systems training, the costs of which will be met by the BIA. Further, prior to being granted access to DOI automated information technology systems, the Tribe agrees its employees and employees of its contractors must be favorably screened by the BIA Personnel and Physical Security Office pursuant to OMB Circular No. A-130. The Tribe agrees to comply if background investigation and adjudication becomes necessary. Costs will be incurred by the BIA.
The Tribe agrees that records made or received by the Tribe which evidence the organization, functions, policies, decisions, procedures, operations or other activities undertaken in the performance of Federal Indian trust functions will be preserved and maintained in accordance with applicable Federal law. The Tribe and the Department of the Interior agree to work cooperatively in records creation, maintenance and disposition, and training activities, and to address trust records issues and activities in accordance with Executive Order # 13175 (Consultation and Coordination with Indian Tribal Governments) and the BIA Government-to-Government policy.

## Section 21

**Effective Date** - The effective date of this Agreement will be 90 days following the submission of this signed Agreement to the Congress. The planned effective date is January 1, 2005. This Agreement shall remain in effect until December 31, 2010. Terms of the Agreement and funding amounts will remain in effect unless changed by Congressional action, the promulgation of Federal regulations or an amendment to the multi-year funding agreement (MFA). The amount of funding received by the Tribe may be increased if additional funds become available. In subsequent years, modifications to the MFA and Reprogramming Request will be negotiated by October 1st. This Agreement will remain in effect in the event that the effective date of its successor Agreement is not on or before the expiration date of the Agreement.

5

## Section 22

**Reporting** - The Tribe agrees to provide applicable data and information to the BIA Midwest Regional Office pursuant to the Government Performance and Results Act of 1993 (P.L. 103-62). Before providing such information, the Tribe and BIA will consult to determine applicable data and information needed to meet the requirements of P.L. 103-62 and how such information will be assembled and reported.

## Section 23

**Motor Vehicle Operation Policy** - The Tribe certifies it will self-administer a motor vehicle operation policy that promotes the safe operation of motor vehicles while performing duties to implement the terms of this Agreement. The Tribe's policy is either comparable or superior to the March 19, 2004 Motor Vehicle Operation Policy for the Bureau of Indian Affairs issued by the Assistant Secretary.

THE RED LAKE BAND OF CHIPPEWA INDIANS

BY: _____    DATE: _10-20-04_
Floyd Jourdain, Jr., Chairman

THE UNITED STATES OF AMERICA

BY: _____    DATE: _11/15/04_
Director, Office of Self Governance & Self Determination

6

Office of Self Governance

Self Governance 2005 Annual Funding Agreement - Reprogramming Request

October 18
Page: 1

Tribe:                  RED LAKE BAND OF CHIPPEWA INDIANS
Tribal OSG Compact Code: OSGT409
Tribal BIA Org. Code:   F52409
BIA Regional Office:    MIDWEST REGION
BIA Field Office:       RED LAKE AGENCY

| LINE # | PROGRAM TITLE | COST CODE | (Info) TRIBAL SHARE | A OSG CUM. BASE | B OSG SHORTFALL BASE | C OSG SHORTFALL REQUEST | D BIA REPROGRAM REQUEST | E=A+B+C+D TOTAL AFA | FN |
|---|---|---|---|---|---|---|---|---|---|
| 5 | Other Aid to Tribal Government - TPA/AGENCY | 39220 | 0 | 56,900 | 0 | 0 | 0 | 56,900 | |
| 6 | Other Aid to Tribal Government - TPA/AREA | 39220 | 0 | 364 | 2,097 | 0 | 0 | 2,461 | |
| 10 | Self-Governance Compacts - TPA/TRIBAL | 39240 | 0 | -104,130 | 0 | 0 | 0 | -104,130 | |
| 12 | Contract Support (Ongoing) - TPA/AREA | 39270 | 0 | 0 | 0 | 0 | 1,455,899 | 1,455,899 | 1 |
| 15 | Tribal Courts - TPA/AGENCY | 39280 | 0 | 246,900 | 0 | 0 | 17,000 | 263,900 | 2 |
| 19 | Social Services - TPA/AGENCY | 39310 | 0 | 220,200 | 0 | 0 | 0 | 220,200 | 3 |
| 20 | Social Services - TPA/AREA | 39310 | 0 | 2,333 | 5,000 | 0 | 0 | 7,333 | |
| 21 | Indian Child Welfare Act - TPA/TRIBAL | 39320 | 0 | 65,860 | 0 | 0 | 0 | 65,860 | |
| 24 | Welfare Assistance Grants - TPA/TRIBAL | 39330 | 0 | 0 | 0 | 0 | 1,061,958 | 1,061,958 | 4 |
| 25 | Housing Improvement Program - TPA/TRIBAL | 39370 | 0 | 50,100 | 0 | 0 | 123,020 | 173,120 | 5 |
| 28 | Scholarships - TPA/AGENCY | 39110 | 0 | 254,100 | 0 | 0 | 0 | 254,100 | 6 |
| 33 | Johnson-O'Malley Educational Assis - TPA/TRIBAL | 39140 | 0 | 136,400 | 0 | 0 | 0 | 136,400 | |
| 38 | Law Enforcement - TPA/AGENCY | 39420 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 39 | Law Enforcement - TPA/AREA | 39420 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 41 | Community Fire Protection - TPA/AGENCY | 39430 | 0 | 42,500 | 0 | 0 | 0 | 42,500 | 7 |
| 45 | Job Placement and Training - TPA/AGENCY | 39535 | 0 | 469,900 | 0 | 0 | 0 | 469,900 | 8 |
| 48 | Economic Development - TPA/AGENCY | 39510 | 0 | 84,100 | 0 | 0 | 0 | 84,100 | |
| 49 | Economic Development - TPA/AREA | 39510 | 0 | 0 | 2,323 | 0 | 0 | 2,323 | |
| 50 | Road Maintenance - TPA/TRIBAL | 39550 | 0 | 427,307 | 0 | 0 | 96,723 | 524,030 | 9 |
| 60 | Forestry - TPA/AGENCY | 39630 | 0 | 645,700 | 0 | 0 | 0 | 645,700 | 10 |
| 61 | Forestry - TPA/AREA | 39630 | 0 | 67,000 | 0 | 0 | 150,000 | 217,000 | 10 |
| 63 | Water Resources - TPA/AGENCY | 39640 | 0 | 88,900 | 0 | 0 | 0 | 88,900 | 11 |
| 66 | Wildlife and Parks - TPA/AGENCY | 39650 | 0 | 256,600 | 0 | 0 | 0 | 256,600 | 12 |
| 72 | Trust Services, General - TPA/AGENCY | 39710 | 0 | 400 | 0 | 0 | 0 | 400 | |
| 73 | Trust Services, General - TPA/AREA | 39710 | 0 | 0 | 10,583 | 0 | 0 | 10,583 | |
| 75 | Other Rights Protection - TPA/AGENCY | 39720 | 0 | 1,100 | 0 | 0 | 0 | 1,100 | |
| 78 | Real Estate Services - TPA/AGENCY | 39770 | 0 | 43,600 | 0 | 0 | 0 | 43,600 | 13 |
| 79 | Real Estate Services - TPA/AREA | 39770 | 0 | 4,906 | 20,000 | 0 | 0 | 24,906 | |
| 86 | Environmental Quality Services - TPA/AREA | 39740 | 0 | 0 | 7,993 | 0 | 0 | 7,993 | |
| 94 | Executive Direction - TPA/AGENCY | 39810 | 0 | 93,300 | 0 | 0 | 0 | 93,300 | |
| 97 | Administrative Services - TPA/AGENCY | 39820 | 0 | 182,100 | 0 | 0 | 0 | 182,100 | |

| Code | Program | Acct | | | | | | Total | Line |
|---|---|---|---|---|---|---|---|---|---|
| 102 | TPA General Increase - TPA/TRIBAL | 39901 | 0 | 227,030 | 0 | 0 | 0 | 227,030 | 14 |
| 103 | 638 Pay Costs - TPA/TRIBAL | 39902 | 0 | 630,902 | 0 | 0 | 0 | 630,902 | 15 |
| 106 | Area and Agency Technical Support - NON TPA | 30800 | 0 | 7,810 | 0 | 0 | 0 | 7,810 | |
| 114 | Fish Hatchery Operations - NON TPA | 31950 | 0 | 46,000 | 0 | 0 | 0 | 46,000 | 16 |
| 115 | Fish Hatchery Maintenance - NON TPA | 31960 | 0 | 0 | 0 | 0 | 8,000 | 8,000 | 17 |
| 116 | Tribal Management and Development - NON TPA | 31970 | 0 | 174,000 | 0 | 0 | 70,000 | 244,000 | 18 |
| 120 | Noxious Weed Eradication - NON TPA | 33720 | 0 | 0 | 0 | 0 | 20,000 | 20,000 | 19 |
| 121 | Forestry - NON TPA | 33900 | 0 | 0 | 0 | 0 | 495,000 | 495,000 | 20 |
| 122 | Water Mgmt. Planning & Pre-Develop - NON TPA | 34020 | 0 | 0 | 0 | 0 | 80,000 | 80,000 | 21 |
| 130 | Real Estate Services - NON TPA | 34300 | 0 | 0 | 0 | 0 | 23,946 | 23,946 | 22 |
| 131 | Environmental Management - NON TPA | 34730 | 0 | 0 | 0 | 0 | 500,000 | 500,000 | 23 |
| 132 | Central Office Operations - NON TPA | 35000 | 0 | 0 | 0 | 0 | 0 | 0 | 24 |
| 152 | Housing Development - NON TPA | 36530 | 0 | 0 | 48,500 | 0 | 0 | 48,500 | |
| 154 | Economic Development - NON TPA | 36710 | 0 | 0 | 1,279 | 0 | 0 | 1,279 | |
| 155 | Natural Resources, General - NON TPA | 36810 | 0 | 0 | 14,604 | 0 | 0 | 14,604 | |
| 157 | Forestry - NON TPA | 36830 | 0 | 0 | 6,622 | 0 | 0 | 6,622 | |
| 158 | Forest Marketing Assistance - NON TPA | 36831 | 0 | 18,532 | 320 | 0 | 0 | 18,852 | |
| 164 | All Other Indian Rights Protection - NON TPA | 36920 | 0 | 2,359 | 2,421 | 0 | 0 | 4,780 | |
| 170 | Administrative Services - NON TPA | 36200 | 0 | 0 | 83,923 | 0 | 0 | 83,923 | |
| 174 | Information Resources Technology - NON TPA | 36240 | 0 | 9,806 | 30,169 | 0 | 0 | 39,975 | |
| 177 | Law Enforcement - NON TPA | 37700 | 0 | 0 | 5,283 | 0 | 4,576,753 | 4,582,036 | 25 |
| 183 | Facilities Admin. (Operations) - NON TPA | 37400 | 0 | 263,018 | 0 | 0 | 444,860 | 707,878 | 26 |
| 188 | Facilities Improvement & Repair (N - NON TPA | 11700 | 0 | 0 | 0 | 0 | 2,846,250 | 2,846,250 | 27 |
| 198 | Preparedness - NON TPA | 92120 | 0 | 0 | 0 | 0 | 480,465 | 480,465 | 28 |
| 199 | Preparedness Program Mgmt (Indirec - NON TPA | 92121 | 0 | 0 | 0 | 0 | 45,500 | 45,500 | 29 |
| 200 | Child Care Block Grants - HHS - NON TPA | 95200 | 0 | 0 | 0 | 0 | 204,033 | 204,033 | 30 |
| 201 | Child Care Development Fund - HHS - NON TPA | 95300 | 0 | 0 | 0 | 0 | 241,799 | 241,799 | 31 |
| 203 | Native Employment Works (NEW) - HH - NON TPA | 95520 | 0 | 0 | 0 | 0 | 134,691 | 134,691 | 32 |
| 204 | Supplemental Youth Services+LABOR - NON TPA | 95130 | 0 | 0 | 0 | 0 | 60,296 | 60,296 | 33 |
| 205 | Comprehensive Services(Adult)-LABO - NON TPA | 95140 | 0 | 0 | 0 | 0 | 205,688 | 205,688 | 34 |
| | TOTAL | | 0 | 4,715,897 | 241,117 | 0 | 13,341,881 | 18,298,895 | |

AUTHORIZED FINANCIAL OFFICERS:

*[signature]*
Bureau of Indian Affairs - Regional Office

*See Signature on Next Page*
Tribe

*Ken Reinfeld [signature]*
Office of Self Governance

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 102 | TPA General Increase – TPA/TRIBAL | 39901 | 0 | 227,030 | 0 | 0 | 0 | 227,030 | 14 |
| 103 | 638 Pay Costs – TPA/TRIBAL | 39902 | 0 | 630,902 | 0 | 0 | 0 | 630,902 | 15 |
| 106 | Area and Agency Technical Support – NON TPA | 30800 | 0 | 7,810 | 0 | 0 | 0 | 7,810 | |
| 114 | Fish Hatchery Operations – NON TPA | 31950 | 0 | 46,000 | 0 | 0 | 0 | 46,000 | 16 |
| 115 | Fish Hatchery Maintenance – NON TPA | 31960 | 0 | 0 | 0 | 0 | 8,000 | 8,000 | 17 |
| 116 | Tribal Management and Development – NON TPA | 31970 | 0 | 174,000 | 0 | 0 | 70,000 | 244,000 | 18 |
| 120 | Noxious Weed Eradication – NON TPA | 33720 | 0 | 0 | 0 | 0 | 20,000 | 20,000 | 19 |
| 121 | Forestry – NON TPA | 33900 | 0 | 0 | 0 | 0 | 495,000 | 495,000 | 20 |
| 122 | Water Mgmt. Planning & Pre-Develop – NON TPA | 34020 | 0 | 0 | 0 | 0 | 80,000 | 80,000 | 21 |
| 130 | Real Estate Services – NON TPA | 34300 | 0 | 0 | 0 | 0 | 23,946 | 23,946 | 22 |
| 131 | Environmental Management – NON TPA | 34730 | 0 | 0 | 0 | 0 | 500,000 | 500,000 | 23 |
| 132 | Central Office Operations – NON TPA | 35000 | 0 | 0 | 0 | 0 | 0 | 0 | 24 |
| 152 | Housing Development – NON TPA | 36530 | 0 | 0 | 48,500 | 0 | 0 | 48,500 | |
| 154 | Economic Development – NON TPA | 36710 | 0 | 0 | 1,279 | 0 | 0 | 1,279 | |
| 155 | Natural Resources, General – NON TPA | 36810 | 0 | 0 | 14,604 | 0 | 0 | 14,604 | |
| 157 | Forestry – NON TPA | 36830 | 0 | 0 | 6,622 | 0 | 0 | 6,622 | |
| 158 | Forest Marketing Assistance – NON TPA | 36831 | 0 | 18,532 | 320 | 0 | 0 | 18,852 | |
| 164 | All Other Indian Rights Protection – NON TPA | 36920 | 0 | 2,359 | 2,421 | 0 | 0 | 4,780 | |
| 170 | Administrative Services – NON TPA | 36200 | 0 | 0 | 83,923 | 0 | 0 | 83,923 | |
| 174 | Information Resources Technology – NON TPA | 36240 | 0 | 9,806 | 30,169 | 0 | 0 | 39,975 | |
| 177 | Law Enforcement – NON TPA | 37700 | 0 | 0 | 5,283 | 0 | 0 | 0 | |
| 183 | Facilities Admin. (Operations) – NON TPA | 37400 | 0 | 263,018 | 0 | 0 | 4,576,753 | 4,582,036 | 25 |
| 188 | Facilities Improvement & Repair (N – NON TPA | 11700 | 0 | 0 | 0 | 0 | 444,860 | 707,878 | 26 |
| 198 | Preparedness – NON TPA | 92120 | 0 | 0 | 0 | 0 | 2,846,250 | 2,846,250 | 27 |
| 199 | Preparedness Program Mgmt (Indirec – NON TPA | 92121 | 0 | 0 | 0 | 0 | 480,465 | 480,465 | 28 |
| 200 | Child Care Block Grants – HHS – NON TPA | 95200 | 0 | 0 | 0 | 0 | 45,500 | 45,500 | 29 |
| 201 | Child Care Development Fund – HHS – NON TPA | 95300 | 0 | 0 | 0 | 0 | 204,033 | 204,033 | 30 |
| 203 | Native Employment Works (NEW) – HH – NON TPA | 95520 | 0 | 0 | 0 | 0 | 241,799 | 241,799 | 31 |
| 204 | Supplemental Youth Services–LABOR – NON TPA | 95130 | 0 | 0 | 0 | 0 | 134,691 | 134,691 | 32 |
| 205 | Comprehensive Services(Adult)–LABO – NON TPA | 95140 | 0 | 0 | 0 | 0 | 60,296 | 60,296 | 33 |
| | | | | | | 0 | 205,688 | 205,688 | 34 |
| | | TOTAL | 0 | 4,715,897 | 241,117 | 0 | 13,341,881 | 18,298,895 | |

AUTHORIZED FINANCIAL OFFICERS:

_____

Bureau of Indian Affairs – Regional Office

_____

Tribe

_____

Office of Self Governance

1 Funds will be distributed using similar methodology as was used last calendar year and published in the Federal
  Register. The OSG and BIA commit to keeping the Tribe's Director of Finance and Self Governance Coordinator adequately
  informed in advance of deadlines for submission of contract support payment requests. The estimate is based on the
  Tribe's indirect cost rate of 9.47%, a fixed carryforward rate approved by the cognizant agency. The Tribe is currently
  negotiating its CY 2005 indirect cost rate and anticipates a substantial increase in the rate. The Red Lake Band of
  Chippewa Indians reserves all of its legal rights to full Contract Support Cost funding, as mandated under the Indian
  Self-Determination and Education Assistance Act.

2 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet
  the needs of the service population. The Red Lake Band requests an additional $500,000 from the DOJ initiative for
  operation of Tribal Courts. The Tribe requests that the $17,000 received in CY 2003 for Court-related IIM and probate
  activities be continued and base-transferred in CY 2005, which will be determined by national distribution methodology.

3 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet
  the needs of the service population. An estimated $83,336 of the amount in this line item will be used in accordance
  with the Tribe's approved P. L. 102-477 Plan.

4 Total funds will be distributed based upon current welfare assistance need as reflected in the quarterly analysis of
  needs. This amount includes Foster Care. An estimated $530,079 of the amount in this line item will be used in
  accordance with the Tribes approved P. L. 102-477 Plan for General Assistance.

5 Funds will be distributed based on HIP eligible applicant data. HIP funds shall be used in accordance with HIP
  regulations unless waived. The Red Lake Band asserts that the funding amount available for this line item has
  historically been insufficient and inadequate to meet the needs of the service population.

6 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet
  the needs of the service population. The actual costs for the scholarships program in CY 2003 was $508,000,
  approximately twice the amount received. The amount in this line item, which has been base transferred to the Tribe,
  will be used in accordance with the Tribes approved P. L. 102-477 Plan.

7 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet
  the needs of the service population. The actual cost to minimally protect the lives of Red Lake Band members with fire
  protection in CY 2003 was $310,192, greater than seven times the funding level. The balance of funds was taken from
  other Self Governance programs.

8 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet
  the needs of the service population. The amount in this line item, which has been base transferred to the Tribe, will be
  used in accordance with the Tribe's approved P. L. 102-477 Plan.

9 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet
  the needs of the service population. The Tribe desires that funds under this category be distributed including the
  historical base level of $427,307 and an additional estimated amount of $96,723 reflecting the BIAs actual maintenance
  needs estimate for Red Lake.

10 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet
  the needs of the service population. The Red Lake Band and the BIA agree to have one forestry position as "residual"
  from the entire Red Lake Field Office. The estimated cost, which includes salary and benefits, was $87,416 in FY 2003.
  The BIA shall return to the Tribe at the end of the calendar year, any unspent funds pertaining to the residual forestry
  position. The BIA and OSG guarantee that the Red Lake Band will be consulted with, and treated equitably, in the allocation
  of any funding increases to BIA's Forestry Program. The BIA and Tribe agree that $217,000 needs to be base-transferred
  to the Tribe under Forestry TPA/AGENCY, under FFS Cost Code 39630.

11 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet

the needs of the service population.

12  The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population.

13  The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The BIA agrees to form a Working Group to identify, assess title status of, survey, establish the value of and transfer lands held by the BLM and others to the BIA to be held in trust for the Tribe. The Working Group shall consist of the BIA Midwest Region Director, The Chairman of the Tribe or his representatives, and a representative of the BLM.

14  This amount to be determined by Congressional appropriation.

15  This amount to be determined by Congressional appropriation. The BIA will make every effort to treat Red Lake Tribal employees the same as all other Tribal and Federal employees for purposes of pay cost adjustments in FY 2005. The BIA and OSG agree to make every possible effort to recover for the Tribe all 638 Pay Cost shortages for FY 2002-2004, which were legitimately due to the Tribe, but which were not received because of Administration oversight.

16  The Red Lake Band believes these dollars are inadequate and insufficient to effectively operate the program.

17  This dollar amount is an estimate. The actual dollar amount for the CY 2005 MFA will be obtained on the basis of an existing competitive process.

18  The Red Lake Band believes these dollars are inadequate and insufficient to effectively operate the program. This line item includes an estimate of $70,000 for Wetlands/Waterfowl Management. The actual amount for Wetlands/Waterfowl Management will be based on an existing, competitive process. The estimate for Wetlands/Waterfowl Management has been placed in this line item because the BIA has temporarily removed this program and funding from the budget. The Tribe asserts this is in violation of Executive Order # 13175, and notes the United States Congress specifically restored the program and funding in FY 2003 and FY 2004.

19  This dollar amount is an estimate. The actual dollar amount for the CY 2005 MFA will be based on an existing competitive process.

20  This amount is an estimate. This is a recent Bureau budget line item, and reflects the merger of three former budget line items, each with differing methods/formulas for funds distribution: Forest Development; Forest Management Inventories & Plans; and Woodland Management. The actual amount will be based on specific forestry development projects, forest acres, and need for the Forest Development portion, and on the approved scheduled project amount for Forest Inventories/Plans portion in CY 2005. The BIA and OSG guarantee the Red Lake Band will be consulted with, and treated equitably, in the allocation of any funding from the BIA's Forestry Program. The Red Lake Band believes these dollars are inadequate and insufficient to effectively operate the program.

21  The actual dollar amount for the CY 2005 MFA will be based on an existing nationally competitive process. The BIA and OSG agree to work with the Red Lake Band to ensure that the Tribe is allowed to compete nationally on the same basis as other tribes.

22  This amount is an estimate. The BIA and OSG have agreed the Tribe should receive these funds.

23  This amount is requested in 2005 to assist with completing the Red Lake Sewage Lagoon upgrades.

24  The Red Lake Band hereby protests and objects to the decision to not distribute shares of the central office for FY 2005, and it is remarkably unfair that the Central Office budget has increased 37% in the last three years compared to the TPA budget increase of a paltry .3%. The Tribe disagrees with the Department of Interior in its assertion that Congress does not intend that Central Office shares should be distributed to tribes, but that to the contrary, past Congressional language in this area fully supported the distribution of Central Office shares to the tribes, until the BIA persuaded Congress and the Administration to freeze distributions in FY 1998 - 2004.

25  The Assistant Secretary - Indian Affairs and the Tribe agree that this amount represents original and historical base-transferred amounts of $1,413,500 from TPA Law Enforcement - Agency, $5,283 from TPA Law Enforcement Area, and $18,799 from Law Enforcement Area, in addition to $95,000 in base eligible funding from the FY 1999 Law Enforcement

Initiative, $94,000 in base eligible funding from the FY 2000 Law Enforcement Initiative, and $224,000 in base eligible funding from the FY 2001 Law Enforcement Initiative. The Assistant Secretary - Indian Affairs agrees to do everything in his power to ensure these amounts are not reduced, and that Self-Governance tribes are treated on an equal footing with BIA Law Enforcement with regard to any additional Law Enforcement funds distributions. The Red Lake Band requests an additional $1 million for operation of Law Enforcement. Any new law enforcement program funding is to be determined and added to the AFA based on national distribution methodology developed by the BIA. The OSG and BIA also agree that it will keep the Tribe closely informed about all activities pertaining to Public Safety and Justice, so that the Tribe can participate to the fullest degree. The OSG and BIA agree that the $1.555 million obtained in FY 2002 for detention operations associated with new facilities needs to be designated as base eligible funding in FY 2005, because this funding is for staffing the Tribes new detention facility, and the Tribe cannot staff this facility for just one year. The BIA agrees to assist the Tribe in obtaining $1,218,482 for operations funding for the Tribes juvenile correction facility in CY 2005, and to request this amount in the next Presidents budget. With regard to any new initiatives pertaining to Homeland Security, it is mutually agreed that Red Lake Law Enforcement shall be eligible to participate at the same level as BIA Law Enforcement in any new programs and funding increases.

26 Historically there has been a deficit of O&M monies for Red Lake Agency facilities. Continuously funds were transferred from the Area to the Agency to negate the deficit. The BIA and the Red Lake Band hereby agree that if funds are available to cover future deficits for O&M monies, these funds will be made available to the Band, and in subsequent years such funds shall be transferred to the Tribes AFA base. Current base funding FFS Code 37400 (Operations) is a combination of both FFS Code 37400 (Operations) and FFS Code 37500 (Maintenance). The amount shown is an estimate. The actual amount will be determined from the FMIS O&M Allotment Formula. The Tribe has incurred a substantial increase in the need for O&M funds for maintaining the new detention facility, which consists of 55,760 square feet for which the BIA is responsible to maintain. The BIA reprogramming request amount of $444,860 is an estimate, and includes a general increase of $26,660, and $418,200 based on square footage for the detention and juvenile facilities, for the period of September 1, 2004 to December 31, 2005. The Tribe requests that funding be allocated to conform with the Tribes calendar year and the MFA. The OSG and BIA agree to assist the Tribe in obtaining $1 million from the FY 2005 O&M account for detention facility maintenance associated with new facilities recently funded by DOJ.

27 The Tribe requests the BIA restore funding to the Agency Water & Sewer Project # 93F01 in the amount of $2,846,250.00. This represents the original BIA project cost of $2,041,799.00 in 1996 adjusted for inflation at 3.5% per year to FY2005. The Tribe requests the completion of this project to restore design fire suppression flows to the southern portions of the Red Lake water system, prevent further contamination of houses on the sewer system and allow the Tribe to proceed with it's planned improvements to the Agency roads and Mn Hwy #1. The MnDot project may be jeopardized and the Agency project delayed indefinitely if the BIA's subsurface utilities are not replaced.

28 This dollar amount is an estimate. The actual dollar amount for the CY 2005 MFA will be based on a preexisting formula according to the National Fire Management Analysis System. The Tribe and the BIA agree that the Wildland Fire Management Memorandum of Agreement between the Red Lake Band of Chippewa Indians and the Bureau of Indian Affairs shall be the guiding document for wildland fire management at Red Lake. It is mutually agreed that a flexible and cooperative working relationship between the Tribe's fire program, the fire management officer at Bemidji, and the fire program at the BIA Midwest Region office will exist, so that adequate trust resource protection and management will be maintained. Pursuant to Section 8 of the Tribe's MFA, the BIA and OSG agree to make every effort to ensure funds are released to the Tribe at the beginning of the calendar year.

29 This dollar amount is an estimate. Red Lake's currently approved indirect cost rate is 9.47%. The Tribe is currently negotiating its CY 2005 indirect cost rate and anticipates a substantial increase in the rate.

30 Estimate of HHS Child Care Block Grant. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.

31 Estimate of HHS Child Care Development Fund. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.

32 Estimate of N.E.W. Program. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.
33 Estimate of Department of Labor Supplemental Youth Services. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.
34 Estimate of Department of Labor Comprehensive Adult Services. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.

Ken Reinfeld, Acting Director
February 17, 2006
Page 6

## Exhibit C

## Certification of Contract Disputes Act Claim

I, Floyd Jourdain, Tribal Council Chairman for the Red Lake Band of Chippewa Indians, hereby certify on this day, February 16, 2006, in accordance with the Contract Disputes Act, 41 U.S.C. § 601, et seq., and its implementing regulations, and on behalf of the Red Lake Band of Chippewa Indians (the "Tribe"), as to the following:

1)    The claim submitted herewith by the Tribe, by letter dated February 17, 2006, from the law firm of Holland & Knight LLP as duly authorized by the Tribe, is made in good faith;

2)    Any and all supporting data are accurate and complete to the best of the Tribe's knowledge and belief;

3)    The amount requested accurately reflects the contract adjustment for which the Tribe, as contractor, believes the government is liable; and

4)    I am duly authorized to certify the claim submitted herewith on behalf of the Tribe, as contractor.

Floyd Jourdain
Red Lake Band of Chippewa Indians
Tribal Council Chairman

# 3592863_v3

**Confirmation of Hand Delivery**

I hereby certify that on the date and time below, I received by hand delivery a letter from the law firm Holland & Knight LLP, regarding the Red Lake Band of Chippewa Indians - Tender of Contract Disputes Act Claim for Breach of Multi-Year Funding Agreement, dated February 17, 2006, along with accompanying attachments, addressed as follows

Ken Reinfeld, Acting Director
Office of Self-Governance and Self-Determination
U.S. Department of the Interior
1849 C Street NW
Washington, D.C. 20240

I further certify that I am authorized to receive such deliveries on behalf of the above named addressee.

_Ken Reinfeld_
Signed

_Ken Reinfeld_
Name

_Acting Director, Office of SGS-Governance_
Title

_1:80PM 02/17/06_
Time and Date

I hereby certify that I hand delivered the foregoing documents to the above-named recipient as of the time and date noted above.

_Andrew Malleck_

Andrew Malleck
Holland & Knight LLP

_2 - 17 - 06_

Date

# 3597122_v1



# United States Department of the Interior

### BUREAU OF INDIAN AFFAIRS

IN REPLY REFER TO:
Law Enforcement Services

JUN 1 5 2006

Honorable Floyd Jourdain, Jr.
Chairman, Red Lake Band of Chippewa Indians
P.O. Box 550
Red Lake, Minnesota 56671

Dear Chairman Jourdain:

Thank you and the Red Lake Council membership for the opportunity to participate in
your special event to celebrate the restoration of your fishery resource and for the
opportunity to visit with you and your staff providing essential public safety services.

The Bureau of Indian Affairs (BIA) Office of Law Enforcement Services (OLES) is
committed to promoting effective and efficient law enforcement programs within Indian
country. It is my understanding that Special Agent Fourdance has verified that the Tribe
has attended to the technical inspection report and properly addressed those concerns and
recommendations.

The present funding allocation for Red Lake law enforcement and detention services is as
follows:
Law Enforcement.............$1,731,777
Detention Services............$1,555,000
Detention Facilities O&M ...$268,125

I am pleased to inform you that effective this fiscal year, we will increase Red Lake
Tribe's base funding allocation for law enforcement and detention services $275,000 per
year on the conditions that:

1.  The additional funds may only be used only for law enforcement and detention
    purposes without any reduction of other law enforcement funds from your current
    multi-year funding agreement (MYFA) or successor MYFA.

2.  The Tribe provides adequate assurance that it will cooperate with Federal law
    enforcement agencies including participation with the Federal Bureau of
    Investigations (FBI) in the Safe Trails Task Force program and by seeking
    Federal special law enforcement commissions through OLES. In this regard, Mr.
    Chaney, Mr. Fourdance and I are willing to meet with you and appropriate law
    enforcement officials to address any concerns about issues of sovereignty or
    jurisdiction which you may have. It is my understanding that self-governance
    contract negotiations are scheduled for September 7, 2006, in Red Lake, MN;
    which may be a very opportune time for this discussion.  I believe this is a

vital requirement to ensure effective law enforcement in Indian country because criminals do not honor boundaries and only with the cooperation of all governments will we be able to effectively provide essential public safety services to our citizens.

3. In accordance with regulatory provisions the Tribe considers increasing the salaries of law enforcement and detention services personnel. Additionally, regular in-service training should be increased and scheduled for law enforcement and detention personnel on an annual basis.

4. The Tribe provides assurance that non-law enforcement Tribal government employees and elected leadership will have in place the appropriate protocols to ensure that the integrity of law enforcement investigations and law enforcement sensitive information is not compromised. The responsibility of the tribal governing body is to provide oversight for law enforcement without direct involvement in the operation.

We have received your legal counsel's letter dated February 17, 2006, regarding the Tender of Contract Disputes Act Claim for Breach of the MYFA. At this time, we can not agree to your request for additional funding to provide for staffing and operations at the new detention facility. It is not possible to provide this funding without decreasing allocations for other law enforcement operations nationwide which would adversely impact other tribes. However, in compliance with the MYFA, I am instructing OLES to make a renewed effort to assist the Tribe in finding sources for operational funding ($1,218,482) for the Tribe's new juvenile facility. In addition, I have asked our detention services personnel to provide you with technical assistance to formulate a program mission for your new facility. Please feel free to contact Ms. Greta Baker, Supervisory Corrections Specialist for District I, at (605) 226-7470.

Finally, I want to say that I was impressed with the dedication and professionalism of your staff and it is our desire to provide the financial resources to strengthen public safety services. We look forward to discussing this and any other matters with you that concern the public safety program on the Red Lake Indian Reservation. Please share this letter and my thanks with your Council members.

Sincerely,

Director, Bureau of Indian Affairs

cc:    Associate Director of Operations
       Midwest Regional Director,
       Special Agent in Charge, District I

### UNITED STATES DEPARTMENT OF THE INTERIOR
### OFFICE OF THE SECRETARY
### OFFICE OF SELF-GOVERNANCE
### 1951 CONSTITUTION AVENUE, N.W. MAIL STOP SIB 355-G
### WASHINGTON, D.C. 20240

**FROM:** Ken Reinfeld *Ken*      **PHONE:**   (202) 208-5734
                                  **FAX:**     (202) 219-1404

**DATE:** October 13, 2006

**TO:** Lisa Spears   **TRIBE:** Red Lake Band of Chippewa Indians

**FAX NUMBER:**  (218) 679-3378   **PHONE :** (218) 679-3341

**COMMENTS:**

I just heard back from the BIA Office of Justice Services (OJS) with
comments on the Law Enforcement and Corrections Footnote 20 in Red
Lake's Draft 2007 reprogramming request.

Chris Chaney has indicated that with regard to the new facility, the only
language that he will accept in the footnote is as follows: "OJS will assist the
Tribe in locating alternate funding sources for the facility." He indicates that
it is not possible at this time for OJS to request that Congress provide funding
since the window has already closed.

If you would like to speak to Chris Chaney or Peter Maybee about this
position then you should contact Suzanne Torchiani and she will schedule a
conference call. She can be reached by phone at (202) 208-6414.

**NUMBER OF PAGES (INCLUDING COVER): 1**

10/20/2006  14:37   2186793691              RED LAKE AGENCY                    Exhibit H



# United States Department of the Interior

### OFFICE OF THE SECRETARY
Washington. D.C. 20240

1997

**January 27, 1997**

Bobby Whitefeather. Chairman
Red Lake Band of Chippewa Indians
Red Lake. MN 56671

Dear Chairman Whitefeather:

Enclosed is an original of Red Lake Band of Chippewa Indians' Compact.

Sincerely,

Renee M. Buckner. Secretary
Office of Self-Governance

Enclosure

## COMPACT OF SELF-GOVERNANCE
## BETWEEN
## THE RED LAKE BAND OF CHIPPEWA INDIANS
## AND
## THE UNITED STATES OF AMERICA

### Article I   Authority and Purpose

Section 1 -- Authority.  This agreement, denoted a Compact of Self-Governance (hereinafter referred to as the "Compact"), is entered into by the Secretary of the Interior (hereinafter referred to as the "Secretary"), for and on behalf of the United States of America pursuant to the authority granted by Title II of P.L. 103-413, and by the Red Lake Band of Chippewa Indians by the authority of the Constitution and Bylaws of the Red Lake Band of Chippewa Indians (hereinafter referred to as the "Tribe").

Section 2 -- Purpose.  This Compact shall be liberally construed to achieve its purposes:

(a)   This Compact is to carry out Self-Governance as authorized by Title II of Pub. L. 103-413, which built upon the Self Governance Demonstration Project, and transfers control to tribal governments, upon tribal request, over funding and decision making of Federal programs, services, functions and activities as an effective way to implement the federal policy of government-to-government relations with Indian tribes.

(b)   This Compact is to enable the Red Lake Band of Chippewa Indians to redesign programs, activities, functions, and services of the Bureau of Indian Affairs; to reallocate funds for such programs, activities, functions, or services according to its tribal priorities; to provide such programs, activities, functions, and services, as determined by its tribal priorities; to enhance the effectiveness and long term financial stability of its tribal government; to plan, conduct, consolidate, and administer programs, services, functions, and activities, or portions thereof, administered by the Department of the Interior, other than through the Bureau of Indian Affairs, to the extent as provided in the annual funding agreement applicable to such non-BIA program, service, function or activity; and to reduce the Federal-Indian service bureaucracy.

(c)   This Compact is to enable the United States to maintain and improve its unique and continuing relationship

Compact of Self-Governance
Page 2

with and responsibility to the Red Lake Band of Chippewa Indians through tribal self-governance as proposed by the Red Lake Band of Chippewa Indians which will allow the Tribe to: remove federal obstacles to effective self-governance; reorganize tribal government programs and services; and provide a documented example for the development of future Federal-Indian policy. This policy of tribal self-governance shall permit an orderly transition from federal domination of programs and services to allow Indian tribes meaningful authority to plan, conduct, and administer those programs and services to meet the needs of their people. To implement Self-Governance, the Department of the Interior is also expected to reorganize to provide the same level of service to other tribal governments and demonstrate new policies and methods to provide improved service delivery to address tribal needs. In fulfilling its responsibilities under the Compact, the Secretary hereby pledges that the Department will conduct all relations with the Tribe on a government-to-government basis.

Section 3 -- Tribal Law and Forums. The duly enacted laws of the Tribe shall be applied in the execution of this Compact and the powers and decisions of the Tribe's Court shall be respected, to the extent that federal law, construed in accordance with the applicable canons of construction and Title II of Pub. L. 103-413, is not inconsistent.

Article II   Terms, Provisions and Conditions

Section 1 -- Term. The term of this Compact begins, and shall extend thereafter throughout the time period authorized by Title II of Pub. L. 103-413, and any subsequent amendments thereto.

Section 2 -- Effective Date. This compact shall be effective when signed by the Secretary or an authorized representative and the Tribe. The annual funding agreement required by Pub. L. 103-413 and this compact shall be signed by the Tribe and the Secretary or an authorized representative and be forthwith submitted by the Secretary or an authorized representative and the Tribe to the Committee on Indian Affairs of the United States Senate, the Committee on Resources of the United States House of Representatives and to the tribes served by the Agency, and shall be effective ninety days after such submission, unless otherwise provided by law. Successor Annual Agreements shall be likewise submitted.

Section 3 -- Funding Amount. Subject only to the appropriation of funds by the Congress of the United States and to Section 403(g) of Pub. L. 103-413, the Secretary or an

Compact of Self-Governance
Page 3

authorized representative shall provide to the Tribe the total
amount specified in the Annual Agreement incorporated by
reference in Article VI, Section 2.

     Section 4 -- Payment.  Payments shall be made as
expeditiously as possible in compliance with applicable Treasury
Department regulations and shall include financial arrangements
to cover funding during periods under continuing resolutions to
the extent permitted by such resolutions.  To the extent
authorized by law, for each calendar year covered by the Compact,
the Secretary or an authorized representative will pay to the
Tribe the funds specified for that calendar year under the Annual
Agreement in advance in the form of annual or semi-annual
installments, at the discretion of the Tribe by using an
instrument such as a letter of credit, or other method authorized
by law, or a combination thereof, as may be specified in the
Annual Agreement.  To the extent applicable, each semi-annual
payment shall be made on the first day of the first and third
quarter of the calendar year except for the first quarter, for
which the payment shall be made on or before ten calendar days of
the date on which the Office of Management and Budget apportions
the appropriations for that calendar year for the programs,
activities, functions and services subject to the Compact.

     Section 5 -- Reports to Congress.  In order to implement
Section 405 of Title II of Pub. L. 103-413, on each January 1
throughout the period of the Compact, the United States shall
make a written report to the Congress, which shall separately
include the views of the Tribe, concerning the matters
encompassed in Section 405(b) and (d).

     Section 6 -- Audits.

          (a)  The Tribe shall provide to the Designated Official
     an annual single organization-wide audit as prescribed by
     the Single Audit Act of 1984, 31 U.S.C. § 7501, et seq., and
     P.L. 104-156, Amendments to the Single Audit Act, and shall
     adhere to generally accepted accounting principles and
     Circular A-128 of the Office of Management and Budget as
     follows:

          (I)  The costs of this Compact consist of the
          direct and support costs, including indirect costs,
          actually incurred in the performance of this Compact,
          determined in accordance with the costs principles set
          forth in the OMB Circular A-87 in effect as of January
          1, 1997 except as provided herein; provided, however,
          that if the Office of Management and Budget revises any
          provisions of such Circular:

Compact of Self-Governance
Page 4

1.    The revisions shall not apply to the Compact
unless agreed to by the Tribe or until the
Secretary determines their applicability as
provided below.

2.    The Secretary shall immediately review the
revisions in consultation with the Tribe to
determine if the revisions are detrimental to
the self-governance project or inconsistent
with the intent of the Act.

3.    If it is determined that the revisions are
neither detrimental nor inconsistent with the
intent of the Act, the Secretary will amend
this Compact to include those revisions.

Without intending any limitation, a tribe/consortium may, without
the approval of the Secretary, expend funds provided under a
annual funding agreement for the following purposes to the extent
that the expenditure of the funds is supportive of a compacted
program:

1.    Depreciation and use allowances not otherwise
specifically prohibited by law, including the
depreciation of facilities owned by the tribe or
tribal organization.

2.    Publication and printing costs.

3.    Buildings, realty, and facilities costs, including
rental costs or mortgage expenses.

4.    Automated data processing and similar equipment or
services.

5.    Costs for capital assets and repairs.

6.    Management studies.

7.    Professional services, other than services
provided in connection with judicial proceedings
by or against the United States.

8.    Insurance and indemnification, including insurance
covering the risk of loss of or damage to property
used in connection with the compact without regard
to the ownership of such property.

9.    Costs incurred to raise funds or contributions
from non-Federal sources for the purpose of

Compact of Self-Governance
Page 5

> furthering the goals and objectives of the annual
> funding agreement.

> 10.  Interest expenses paid on capital expenditures
>      such as buildings, building renovation, or
>      acquisition or fabrication of capital equipment,
>      and interest expenses on loans necessitated due to
>      delays by the Secretary in providing funds under a
>      compact.

> 11.  Expenses of a governing body of a tribal
>      organization that are attributable to the
>      management or operation of programs under this
>      Act.

> 12.  Costs associated with the management of pension
>      funds, self-insurance funds, and other funds of
>      the tribal organization that provide for
>      participation by the Federal Government.

(b)  No other audit or accounting standards, except as
specified in Article IV, Section 2, shall be required by the
Secretary or his authorized representative of the Tribe.  To
the extent that tribal law is not inconsistent, small and
minority business audit firms shall be afforded maximum
practical opportunity to participate in fulfilling the
requirements herein.  The preference requirements of the
Indian Self-Determination and Education Assistance Act, as
amended, 25 U.S.C. § 450e(b), shall apply to such audits
pursuant to Section 2 of Article V of this Compact.

Section 7 -- Records.

The following provisions will supplement tribal law on document
disclosure and will govern record keeping associated with this
Compact:

(a)  Except for previously provided copies of tribal
records that the Secretary or an authorized representative
demonstrates are clearly required to be maintained as part
of the record keeping system of the Department of the
Interior, tribal records shall not be considered federal
records for purposes of chapter 5 of title 5, United States
Code.

(b)  The Tribe shall maintain a record keeping system,
and provide reasonable access to records to the Secretary or
an authorized representative, which permits the Department
of the Interior to meet its minimum legal record keeping
program requirements under the Federal Records Act,
44 U.S.C. § 3101, et seq., and which will allow for

Compact of Self-Governance
Page 6

retrocession of this Compact in whole or in part pursuant to
Section 13 of this Article.

(c)  The Tribe shall maintain in its record keeping
system all documents necessary for the annual audit
requirement in Section 6 of this Article, and shall provide
reasonable access to records to the Secretary or his
authorized representative.

Section 8 -- Property.

(a)  At the request of the Tribe, the Secretary or an
authorized representative shall make available to the Tribe
reasonably divisible real property, facilities, equipment,
and personal property that the BIA had previously utilized
to provide the programs, activities, functions and services
now consolidated by the Tribe pursuant to Article III of
this Compact.  A mutually agreed upon list specifying the
property, facilities, and equipment to be utilized shall
also be prepared and periodically revised so that such
property can be properly recorded in the Bureau of Indian
Affairs Property Inventory.

(b)  Subject to the agreement of the General Services
Administration, the Secretary hereby delegates to the Tribe
the authority to acquire such surplus or "excess" property
as may be appropriate in the judgement of the Tribe to
support the programs, activities, functions, and services
designated under Article III of this Compact.  The Secretary
or an authorized representative agrees to make best efforts
to assist the Tribe in obtaining such confiscated, surplus
or excess property as may become available to tribes or
local governments. Upon the request of the Tribe, a Screener
Identification Card (General Services Administration
Form 2946) shall be issued to the Tribe.

(c) The Tribe shall determine what capital equipment,
leases, rentals, property or services, it shall require to
perform its obligations under Title III of this Compact, and
shall acquire and maintain records of such capital
equipment, property rentals, leases, property or services
through tribal procurement procedures.

(d) Property and equipment furnished by the federal
government for use in the performance of the compact and
annual funding agreement and property which was purchased
with funds under any compact and annual funding agreement
which has a value in excess of $5,000 at the time of
retrocession, rescission or termination of the funding
agreement, and is not donated, shall be subject to reversion

Compact of Self-Governance
Page 7

    with title reverting to the Secretary, at the option of the
Secretary.

    (e) Property and equipment furnished by the BIA for use
in the performance of the compact and funding agreement or
purchased with funds under any funding agreement that is
utilized by the tribe in performance of the compact shall
remain eligible for replacement on the same basis as if
title to such property were vested in the United States.

    Section 9 -- Savings.  If it becomes apparent that funds
allocated by the Tribe pursuant to its budget process, to any
activity as defined in the Annual Agreement are in excess of that
needed for such activity, the Tribe may reallocate that excess to
any other activity under this Compact.  Any funds not expended
during the term of any of the calendar years of this Compact may
be carried over to the succeeding calendar year, but such
carry-over shall not diminish the amount of funds that the Tribe
is authorized to receive in that succeeding calendar year or in
any subsequent calendar year.

    Section 10 -- Use of Motor Vehicles.  Subject to the
agreement of the General Services Administration, the Secretary
hereby authorizes the Tribe to obtain Interagency Motor Pool
vehicles and related services, if available, for performance of
any activities under this Compact.

    Section 11 -- Regulatory Authority.  The Secretary and the
Tribe agree to utilize the following procedures governing the
establishment and application of regulations under this Compact:

    (a) Program Guidelines Rules.  The Tribe is not
required to abide by federal program guidelines, manuals,
policy directives, etc. except for those which it
specifically agrees to.  The Tribe may adopt its own
guidelines to be used in place of the existing federal
guidelines.  However, if the Tribe decides to replace
federal guidelines, the Tribe shall give written notice to
the Designated Official.

    (b) Federal Regulations.  The Tribe agrees to
abide by all federal regulations as published in the
Federal Register unless waived in accordance with
Section 403(I)(2) of Title II of Pub. Law 103-413.

    (c]  In order to put to good use the Secretary's waiver
authority as authorized by Section 403 and (I) of Pub. L.
103-413, the Secretary will seek to expedite the waiver of
any federal regulation which the Secretary or the Tribe
determine presents an obstacle to the carrying out of the
Compact and annual funding agreement, its purposes, and the

Compact of Self-Governance
Page 8

programs, activities, functions, and services pursuant to
the Compact, under the following procedures:

(I)  if at any time the Tribe determines that one or
more specific federal regulations requires waiver to
effectively carry out the Compact or annual funding
agreement, the Tribe may submit a written request for
waiver to the Designated Official, identifying the
regulation sought to be waived and the basis for the
request.

(ii)  Not later than 60 days after receipt by the
Secretary of a written request by the tribe to waive
application of a federal regulation for any funding
agreement, the Secretary shall either approve or deny
the requested waiver in writing to the tribe. A denial
of a request may be made only upon a specific finding
by the Secretary that identified language in the
regulation may not be waived because such waiver is
prohibited by Federal law.

Section 12 -- Disputes.

(a)  Section 110 of Pub. L. 93-638, as amended, shall
apply to disputes under this Compact and any annual funding
agreement.

(b)  In addition or as an alternative to remedies and
procedures prescribed by Section 110 of Pub. L. 93-638, as
amended, the parties jointly may:

(I)  Submit disputes under this Compact to
third-party mediation, which for purposes of this
Section means that the Secretary or his authorized
representative and the Tribe nominate third parties who
together choose a third party mediator ("third-party"
means a person not employed by or significantly
involved with either the Tribe or the Secretary or the
Department of the Interior); or

(ii)  Submit the dispute to the Tribe's Court; or

(iii)  Submit the dispute to mediation processes
provided for under the Tribe's law.

(iv)  The Secretary shall be expected to accept
decisions reached by mediation processes or the tribal
court, but he shall not be bound by any decision which might
be in conflict with the interests of the Indians or the
United States.

Compact of Self-Governance
Page 9

Section 13 -- Retrocession. The retrocession provisions of Section 105(e) of Pub. L. 93-638, as amended, and any regulations thereunder, are herein adopted, except that the effective date of such retrocession of this Compact, in whole or in part, shall be 45 calendar days from the date of request by the Tribe unless the Tribe requests an effective date that is more than 45 calendar days, in which case the Tribe's requested date shall be the effective date of such retrocession. If the United States and the Tribe mutually agree to an effective date of less than 45 calendar days from the date of the request by the Tribe, the mutually-agreed upon date shall be the effective date of such retrocession.

Section 14 -- Tribal Administrative Procedures. Tribal law and tribal forums shall provide administrative due process rights pursuant to the Indian Civil Rights Act of 1968, 25 U.S.C. § 1301, et seq., that persons, or groups of persons, may have with respect to services, activities, programs, and functions that are provided by the Tribe pursuant to this Compact.

Section 15 -- Successor Annual Agreement. Negotiations for a successor Annual Agreement, as provided for in Article VI, Section 2, shall begin no later than 120 days in advance of the conclusion of the preceding Annual Agreement. Pursuant to Sections 403(b) and (g) and Section 404 of Pub. L. 103-413, the Secretary shall make best efforts to continue and to promote self governance in preparing his/her budgets for subsequent years. The Tribe is hereby assured that future funding of successor Annual Agreements shall only be reduced pursuant to the provisions of Section 106(b) of Pub. L. 93-638, as amended. The Secretary or an authorized representative agrees to prepare and supply relevant information, and promptly to comply with the Tribe's requests for information reasonably needed to determine the funds that may be available for a successor Annual Agreement as provided for in Article VI, Section 2 of this Compact.

Section 16 -- Matching Funds. All funds provided under this compact and any annual funding agreement entered into pursuant to Title II of Pub. L. 103-413, and all funds provided under contracts or grants made pursuant to Pub. L. 93-638, as amended, shall be treated as non-Federal funds for purposes of meeting matching requirements under any federal law.

### Article III    Obligations of the Tribe

Section 1 -- Consolidation. With the exception of the specific responsibilities of the United States identified and retained in Article IV, Section 3, and the programs, activities, functions, and services funded as provided in Section 403(b)(4)

Compact of Self-Governance
Page 10

of Pub. L. 103-413, the Tribe will perform the programs,
activities, functions and services as provided for in the Annual
Agreement, as provided for in Article VI, Section 2 of this
Compact.  To the extent a program, activity, function, or service
included within such Annual Agreement was included within a
contract or grant entered into pursuant to P.L. 93-638, as
amended or subject to any obligation arising from such contract
or grant, that contract or grant is terminated and the parties'
obligations shall be governed by this Compact.

Section 2 -- Amount of Funds.  The total amount of funds
covered by the consolidation and redesign provided for in
Section 1 of this Article that the Secretary or his authorized
representative shall make available to the Tribe shall be
determined in an Annual Agreement between the Secretary and the
Tribe, which shall be incorporated in its entirety to this
Compact and attached hereto as provided for in Article VI,
Section 2.

Section 3 -- Tribal Programs.  The Tribe agrees to provide
such programs, activities, functions, and services that are
identified in the Annual Agreement.  The Tribe pledges to
practice utmost good faith in upholding its responsibility to
provide such programs, activities, functions and services.

Section 4 -- Trust Services for Individual Indians.  To the
extent that the Annual Agreement endeavors to provide trust
services to individual Indians that were formerly provided by the
Secretary or an authorized representative, the Tribe will
maintain at least the same level of service as was previously
provided by the Secretary or an authorized representative.  The
Tribe pledges to practice utmost good faith in upholding its
responsibility to provide such service.  Trust Services for
Individuals Indians means only services that pertain to land or
financial management connected to individually held allotments.

Section 5 -- Reallocation.  Reallocation of funds from one
program, activity, function, or service to another within a
General Budget Category, or from one General Budget Category to
another shall be governed only by tribal law and procedure and
shall not require Secretarial consent.  In the event a
reallocation involves 30% or more, on a cumulative annual basis,
of funds for a physical resource trust or trust fund management
function performed by the Tribe, the Tribe shall provide notice
to the Secretary's Designated Official, together with an
explanation of how the Tribe's responsibilities will continue to
be fulfilled.

Compact of Self-Governance
Page 11

### Article IV  Obligations of the United States

Section 1 -- Trust Responsibility.  The United States reaffirms its trust responsibility to the Red Lake Band of Chippewa Indians to protect and conserve trust resources of the Tribe, and of individual Indians, of the Red Lake Band of Chippewa Indians.  Nothing in this Compact is intended to, nor should be interpreted, to terminate, waive, modify, diminish or reduce the Trust responsibility of the United States to the Tribe or individual Indians.  The Secretary pledges to practice utmost good faith in upholding said trust responsibility.

Section 2 -- Trust Evaluations.
The United States and the Red Lake Band of Chippewa Indians agree that Section 104 of the Tribal Self-Governance Act requires the United States to conduct annual evaluations of trust functions performed by the tribe on its own behalf and on behalf of its members.  Pursuant to this section, it is agreed that the United States will conduct an annual evaluation of the trust functions assumed by the Red Lake Band of Chippewa Indians under its annual funding agreement.  The annual trust evaluation will include a review of trust transactions; on-site inspections of trust resources as appropriate; compliance with applicable statutory law and regulatory requirements; compliance with the terms of the annual funding agreement; and will document the existence of systems of internal control, trust standards, and safeguards against conflicts of interest.  Additional review processes or the application of additional standards of review must be negotiated between the Tribe and the Secretary's representative designated to perform annual trust evaluations.  It is understood that the terms contained in this paragraph may be superceded by regulation.

The United States agrees that it will not reassume a trust function or the direct management of a trust resource performed by the Tribe except upon a finding of imminent jeopardy.  Until such time as the term is defined by regulation, the parties agree that imminent jeopardy means a significant devaluation and/or loss of a physical trust asset or natural resource or the intended benefit from such asset or resource; or significant diminishment of public health and safety caused by the Tribe's action or omission.  Upon a finding of imminent jeopardy, the United States will immediately notify the Tribe in writing and will commence reassumption of the affected trust function unless the Secretary's designated representative determines that the Tribe can cure the condition causing jeopardy within 60 days and without causing significant loss, harm, or devaluation of a trust asset, natural resource or the public health and safety.

Compact of Self-Governance
Page 12

Section 3 -- Programs Retained.  As specified in the Annual
Agreement, the United States hereby retains the programs,
services, functions, and activities with respect to the Tribe
that are not specially assumed by the Tribe in the Annual
Agreement.

Section 4 -- Financial and other Information.  The Tribe
shall be eligible for new programs, activities, services and
functions on the same basis as other tribes and the Secretary or
his authorized representative shall advise the Tribe of the
funding available for such programs.  To assist the Tribe in
monitoring compliance with Title II of Pub. L. 103-413, the
United States shall provide:

(a)  monthly copies of Bureau of Indian Affairs' Status
of Obligations reports of the central Office concerning
Minneapolis Area obligations;

(b)  monthly Status of Obligations reports of the Area
Office concerning programs, activities, functions, and
services performed in the Minneapolis Area which are
comparable to those performed by the Tribe under this
Compact; and

(c)  revisions in such program plans, guidelines or
budgets as they are made.

Responses providing other information which may be requested by
the Tribe shall be made within ten working days.

### Article V  Other Provisions

Section 1 -- Designated Officials.  On or before the
effective date of this Compact, both the United States and the
Tribe shall provide each other with a written designation of a
senior official as its representative/liaison official for
notices, proposed amendments to the Compact and other purposes
for this Compact.

Section 2 -- Indian Preference in Employment, Contracting
and Subcontracting.  Tribal law shall govern the provision of
Indian Preference in Employment, Contracting, and Subcontracting
pursuant to this Compact.  Section 104 of Pub. L. 93-638, as
amended, shall apply to individuals who leave federal employment
for tribal employment.

Compact of Self-Governance
Page 13

    Section 3 -- Insurance.  The Tribe shall be fully covered by
such liability insurance or equivalent coverage that the
Secretary or his authorized representative provides or obtains
pursuant to Section 102(c) of Pub. L. 93-638, as amended.
Additionally, the Tribe shall be fully covered by all liability
coverage under the Federal Tort Claims Act that is made available
to the Secretary or his authorized representative or to
P.L. 93-638 contractors and their employees under federal law, as
the same may be amended from time to time, and shall be
responsible in the same manner as P.L. 93-638 contractors.

    Section 4 -- Compact Modifications or Amendments.  To be
effective any modifications of this Compact shall be in the form
of a written amendment to the Compact, and shall require the
written consent of the Tribe and the United States.

    Section 5 -- Construction.  In the implementation of this
Compact, the Secretary, to the extent feasible, shall interpret
Federal laws and regulations in a manner that facilitates  this
Compact in accordance with Section 403(I) of Pub. L. 103-413.

    Section 6 -- Officials Not To Benefit.  No member of or
delegate to Congress, or resident commissioner, shall be admitted
to any share or part of any contract executed pursuant to this
Compact, or to any benefit that may arise therefrom; but this
provision shall not be construed to extend to any contract under
this Compact if made with a corporation for its general benefit.

    Section 7 -- Covenant Against Contingent Fees.  The parties
warrant that no person or selling agency has been employed or
retained to solicit or secure any contract executed pursuant to
this Compact upon an agreement or understanding for a commission,
percentage, brokerage, or contingent fee, excepting bona fide
employees or bona fide established commercial or selling agencies
maintained by the contractor for the purpose of securing
business.  For breach or violation of this warranty the
Government shall have the right to annul any contract without
liability or in its discretion to deduct from the contract price
or consideration, or otherwise recover, the full amount of such
commission, percentage, brokerage, or contingent fee.

    Section 8 -- Penalties.  The parties agree that the criminal
penalties set forth in 25 U.S.C. 450d apply to all activities
conducted pursuant to this Compact.

    Section 9 -- Non - BIA Programs. Subject to the provisions
of the regulations to be promulgated pursuant to Section 407 of
Title II of Pub. L. 103-413, the administration of programs,
services, functions or activities under Section 403 (b)(2),
(b)(3), and (C) of Title II of Pub. L. 103-413, shall be

Compact of Self-Governance
Page 14

controlled by the terms of the applicable annual funding
agreements.

## Article VI  Attachments

Section 1 -- Approval of Compact.  The resolution of the Red
Lake Band of Chippewa Indians approving this Compact is attached
hereto as Attachment 1.

Section 2 -- Annual Agreement.  The negotiated and duly
approved Annual Agreement with respect to Red Lake Band of
Chippewa Indians identifying those programs, services, functions,
and activities, to be performed, the General Budget Category
assigned, and the funds to be provided, is hereby incorporated in
its entirety in this Compact and attached hereto as Attachment 2.
This Compact shall be in effect only during the term of any such
Annual Agreement.

DATED THIS ___14th___ DAY OF ___January,___ , 1997.

RED LAKE BAND OF CHIPPEWA INDIANS

BY _____

UNITED STATES OF AMERICA DEPARTMENT OF THE
INTERIOR

BY _____

Office of Self Governance
Self Governance 2006 Annual Funding Agreement - Reprogramming Request

January 18
Page: 1

Tribe:                RED LAKE BAND OF CHIPPEWA INDIANS
Tribal OSG Compact Code: OSGT409
Tribal BIA Org. Code:    F5240B
BIA Regional Office:     MIDWEST REGION
BIA Field Office:        RED LAKE AGENCY

| LINE # | PROGRAM TITLE | COST CODE | (Info) TRIBAL SHARE | A OSG CUM. BASE | B OSG SHORTFALL BASE | C OSG SHORTFALL REQUEST | D BIA REPROGRAM REQUEST | E=A+B+C+D TOTAL AFA | FN |
|---|---|---|---|---|---|---|---|---|---|
| 5 | Other Aid to Tribal Government - TPA/AGENCY | 39220 | 0 | 56,900 | 0 | 0 | 0 | 56,900 | |
| 6 | Other Aid to Tribal Government - TPA/AREA | 39220 | 0 | 364 | 2,097 | 0 | 0 | 2,461 | |
| 10 | Self-Governance Compacts - TPA/TRIBAL | 39240 | 0 | -173,544 | 0 | 0 | 0 | -173,544 | |
| 12 | Contract Support (Ongoing) - TPA/AREA | 39270 | 0 | 0 | 0 | 0 | 2,335,940 | 2,335,940 | 1 |
| 15 | Tribal Courts - TPA/AGENCY | 39280 | 0 | 246,900 | 0 | 0 | 0 | 246,900 | 2 |
| 19 | Social Services - TPA/AGENCY | 39310 | 0 | 220,200 | 0 | 0 | 0 | 220,200 | 3 |
| 20 | Social Services - TPA/AREA | 39310 | 0 | 2,333 | 5,000 | 0 | 0 | 7,333 | |
| 21 | Indian Child Welfare Act - TPA/TRIBAL | 39320 | 0 | 65,860 | 0 | 0 | 0 | 65,860 | |
| 24 | Welfare Assistance Grants - TPA/TRIBAL | 39330 | 0 | 0 | 0 | 0 | 1,125,880 | 1,125,880 | 4 |
| 25 | Housing Improvement Program - TPA/TRIBAL | 39370 | 9 | 50,100 | 0 | 0 | 123,020 | 173,120 | 5 |
| 28 | Scholarships - TPA/AGENCY | 39110 | 0 | 254,100 | 0 | 0 | 0 | 254,100 | 6 |
| 33 | Johnson-O'Malley Educational Assis - TPA/TRIBAL | 39140 | 0 | 136,400 | 0 | 0 | 0 | 136,400 | |
| 38 | Law Enforcement - TPA/AGENCY | 39420 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 39 | Law Enforcement - TPA/AREA | 39420 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 41 | Community Fire Protection - TPA/AGENCY | 39430 | 0 | 42,500 | 0 | 0 | 0 | 42,500 | 7 |
| 45 | Job Placement and Training - TPA/AGENCY | 39535 | 0 | 469,900 | 0 | 0 | 0 | 469,900 | 8 |
| 48 | Economic Development - TPA/AGENCY | 39510 | 0 | 84,100 | 0 | 0 | 0 | 84,100 | |
| 49 | Economic Development - TPA/AREA | 39510 | 0 | 0 | 2,323 | 0 | 0 | 2,323 | |
| 50 | Road Maintenance - TPA/TRIBAL | 39550 | 0 | 427,307 | 0 | 0 | 101,520 | 528,827 | 9 |
| 60 | Forestry - TPA/AGENCY | 39630 | 0 | 645,700 | 0 | 0 | 0 | 645,700 | 10 |
| 61 | Forestry - TPA/AREA | 39630 | 0 | 214,916 | 0 | 0 | 0 | 214,916 | 10 |
| 63 | Water Resources - TPA/AGENCY | 39640 | 0 | 88,900 | 0 | 0 | 0 | 88,900 | 11 |
| 66 | Wildlife and Parks - TPA/AGENCY | 39650 | 0 | 256,600 | 0 | 0 | 0 | 256,600 | 12 |
| 72 | Trust Services, General - TPA/AGENCY | 39710 | 0 | 400 | 0 | 0 | 0 | 400 | |
| 73 | Trust Services, General - TPA/AREA | 39710 | 0 | 0 | 10,583 | 0 | 0 | 10,583 | |
| 75 | Other Rights Protection - TPA/AGENCY | 39720 | 0 | 1,100 | 0 | 0 | 0 | 1,100 | |
| 78 | Real Estate Services - TPA/AGENCY | 39770 | 0 | 43,600 | 0 | 0 | 0 | 43,600 | 13 |
| 79 | Real Estate Services - TPA/AREA | 39770 | 0 | 4,906 | 20,000 | 0 | 0 | 24,906 | |
| 86 | Environmental Quality Services - TPA/AREA | 39740 | 0 | 0 | 7,993 | 0 | 0 | 7,993 | |
| 94 | Executive Direction - TPA/AGENCY | 39810 | 0 | 93,300 | 0 | 0 | 0 | 93,300 | |
| 97 | Administrative Services - TPA/AGENCY | 39820 | 0 | 182,100 | 0 | 0 | 0 | 182,100 | |
| 102 | TPA General Increase - TPA/TRIBAL | 39901 | 0 | 227,030 | 0 | 0 | 0 | 227,030 | 14 |
| 103 | 638 Pay Costs - TPA/TRIBAL | 39902 | 0 | 650,874 | 0 | 0 | 128,776 | 779,650 | 15 |
| 106 | Area and Agency Technical Support - NON TPA | 30800 | 0 | 7,810 | 0 | 0 | 0 | 7,810 | |
| 114 | Fish Hatchery Operations - NON TPA | 31950 | 0 | 46,000 | 0 | 0 | 0 | 46,000 | 16 |
| 115 | Fish Hatchery Maintenance - NON TPA | 31960 | 0 | 0 | 0 | 0 | 5,000 | 5,000 | 17 |
| 116 | Tribal Management and Development - NON TPA | 31970 | 0 | 174,000 | 0 | 0 | 70,000 | 244,000 | 18 |
| 120 | Noxious Weed Eradication - NON TPA | 33720 | 0 | 0 | 0 | 0 | 24,000 | 24,000 | 19 |
| 121 | Forestry - NON TPA | 33900 | 0 | 0 | 0 | 0 | 487,500 | 487,500 | 20 |
| 122 | Water Mgmt. Planning & Pre-Develop - NON TPA | 34020 | 0 | 0 | 0 | 0 | 30,000 | 30,000 | 21 |
| 129 | Real Estate Services - NON TPA | 34300 | 0 | 0 | 0 | 0 | 23,946 | 23,946 | 22 |
| 130 | Environmental Management - NON TPA | 34730 | 0 | 0 | 0 | 0 | 500,000 | 500,000 | 23 |
| 131 | Central Office Operations - NON TPA | 35000 | 0 | 0 | 0 | 0 | 0 | 0 | 24 |

PAGE  03

RLDNR

2186792830

10/23/2006  13:21

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 151 Housing Development – NON TPA | 36530 | 0 | 0 | 48,500 | 0 | 0 | 48,500 | |
| 153 Economic Development – NON TPA | 36710 | 0 | 0 | 1,279 | 0 | 0 | 1,279 | |
| 154 Natural Resources, General – NON TPA | 36810 | 0 | 0 | 14,604 | 0 | 0 | 14,604 | |
| 156 Forestry – NON TPA | 36830 | 0 | 0 | 6,622 | 0 | 0 | 6,622 | |
| 157 Forest Marketing Assistance – NON TPA | 36831 | 0 | 18,532 | 320 | 0 | 0 | 18,852 | |
| 163 All Other Indian Rights Protection – NON TPA | 36920 | 0 | 2,359 | 2,421 | 0 | 0 | 4,780 | |
| 169 Administrative Services – NON TPA | 36200 | 0 | 0 | 83,923 | 0 | 0 | 83,923 | |
| 173 Information Resources Technology – NON TPA | 36240 | 0 | 9,806 | 30,169 | 0 | 0 | 39,975 | |
| 176 Law Enforcement – NON TPA | 37700 | 0 | 0 | 5,283 | 0 | 4,548,975 | 4,554,258 | 25 *Note deletion in 25* |
| 182 Facilities Admin. (Operations) – NON TPA | 37400 | 0 | 173,717 | 0 | 0 | 171,120 | 344,837 | 26 |
| 184 Detention Center Admin (Operations – NON TPA | 37490 | 0 | 178,904 | 0 | 0 | 632,282 | 811,086 | 26 |
| 187 Facilities Improvement & Repair (N – NON TPA | 11700 | 0 | 0 | 0 | 0 | 2,945,869 | 2,945,869 | 27 |
| 197 Preparedness – NON TPA | 92120 | 0 | 0 | 0 | 0 | 936,537 | 936,537 | 28 |
| 198 Preparedness Program Mgmt (Indirec – NON TPA | 92121 | 0 | 0 | 0 | 0 | 91,500 | 91,500 | 29 |
| 199 Child Care Block Grants – HHS – NON TPA | 95200 | 0 | 0 | 0 | 0 | 196,572 | 196,572 | 30 |
| 200 Child Care Development Fund – HHS – NON TPA | 95300 | 0 | 0 | 0 | 0 | 301,305 | 301,305 | 31 |
| 202 Native Employment Works (NEW) – HR – NON TPA | 95520 | 0 | 0 | 0 | 0 | 134,691 | 134,691 | 32 |
| 203 Supplemental Youth Services–LABOR – NON TPA | 95130 | 0 | 0 | 0 | 0 | 69,052 | 69,052 | 33 |
| 204 Comprehensive Services(Adult)–LABO – NON TPA | 95140 | 0 | 0 | 0 | 0 | 207,372 | 207,372 | 34 |
| 206 Tribal Transportation Planning – NON TPA | 93600 | 0 | 0 | 0 | 0 | 55,000 | 55,000 | 35 |
| 207 Indian Reservation Roads – NON TPA | 93100 | 0 | 0 | 0 | 0 | 2,957,883 | 2,957,883 | 36 |
| | TOTAL | 0 | 4,903,974 | 241,117 | 0 | 18,203,640 | 23,348,731 | |

AUTHORIZED FINANCIAL OFFICERS:

*[signature]*
Bureau of Indian Affairs – Regional Office

*[signature]*
Tribe

*[signature] Ken Reinfeld*
Office of Self Governance

1 Funds will be distributed using similar methodology as was used last calendar year and published in the Federal Register. The OSG and BIA commit to keeping the Tribe's Director of Finance and Self Governance Coordinator adequately informed in advance of deadlines for submission of contract support payment requests. The estimate is based on the Tribe's indirect cost rate of 14.66%, a fixed carry forward rate approved by the cognizant agency. The Tribe is currently negotiating its CY 2006 indirect cost rate and anticipates a substantial increase in the rate. The Red Lake Band of Chippewa Indians reserves all of its legal rights to full Contract Support Cost funding, as mandated under the Indian Self-Determination and Education Assistance Act.

2 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The Red Lake Band requests an additional $500,000 to meet existing operations costs for Tribal Courts.

3 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. An estimated $83,336 of the amount in this line item will be used in accordance with the Tribe's approved P. L. 102-477 Plan.

4 Total funds will be distributed based upon current welfare assistance need as reflected in the current mid-year Analysis of Funds Report. This amount includes Foster Care. An estimated $562,940 of the amount in this line item will be used for General Assistance in accordance with the Tribes approved P. L. 102-477 Plan.

5 Funds will be distributed based on HIP eligible applicant data. HIP funds shall be used in accordance with HIP regulations unless waived. The Red Lake Band asserts that the funding amount available for this line item has historically been insufficient and inadequate to meet the needs of the service population.

6 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet

the needs of the service population. The actual costs for the scholarships program in CY 2003 was $508,000, approximately twice the amount received. The amount in this line item, which has been base transferred to the Tribe, will be used in accordance with the Tribes approved P. L. 102-477 Plan.

7 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The actual cost to minimally protect the lives of Red Lake Band members with fire protection in CY 2004 was $326,957, about eight times the funding level. The balance of funds was taken from other Self Governance programs.

8 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The amount in this line item, which has been base transferred to the Tribe, will be used in accordance with the Tribe's approved P. L. 102-477 Plan.

9 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The Tribe desires that funds under this category be distributed including the historical base level of $427,307 and an additional estimated amount of $101,520 reflecting the BIAs actual maintenance needs for Red Lake. This amount is an estimate.

10 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The Red Lake Band and the BIA agree to have one forestry position as "residual" from the entire Red Lake Agency. The estimated cost, which includes salary and benefits, was $86,126 in FY 2005. The BIA shall return to the Tribe at the end of the calendar year, any unspent funds pertaining to the residual forestry position. The BIA and OSG guarantee the Red Lake Band will be consulted with, and treated equitably, in the allocation of any funding increases to BIA's Forestry Program.

11 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population.

12 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population.

13 The Red Lake Band asserts that the funding amount available for this line item is insufficient and inadequate to meet the needs of the service population. The BIA agrees to form a Working Group to identify, assess title status of, survey, establish the value of and transfer lands held by the BLM and others to the BIA to be held in trust for the Tribe. The Working Group shall consist of the BIA Midwest Region Director, The Chairman of the Tribe or his representatives, and a representative of the BLM.

14 This amount to be determined by Congressional appropriation.

15 This amount to be determined by Congressional appropriation. The BIA will make every effort to treat Red Lake Tribal employees the same as all other Tribal and Federal employees for purposes of pay cost adjustments in FY 2006. The BIA and OSG agree to make every possible effort to recover for the Tribe all 638 Pay Cost shortages for FY 2003-2005, which were legitimately due to the Tribe, but which were not received because of Administration oversight and/or internal errors or omissions. Further, the BIA and OSG agree to provide to the Tribe by April 1, 2006, a detailed Pay Cost analysis for the years 2003-2006, showing what the Tribe was eligible to receive each year based upon Pay Cost data the Tribe provided, the actual amount received, and the shortfall or unfunded amount. This analysis will include Law Enforcement. The analysis will separately show the total amounts received each year for Self Governance tribes, contracting tribes, and BIA programs, as well as the total amounts the BIA was eligible to receive for these programs based upon data it compiled. The above information has been requested by the Tribe to verify whether Red Lake, other Self Governance tribes, contracting tribes, and BIA programs were treated the same way with regard to the distribution of Pay Costs for the years 2003-2006. It is noted that the Tribe has proposed the above footnote language be applied to CY 2002. The BIA Midwest Region Director is trying to get more Pay Cost information on CY 2002, and agrees to provide this information to the Tribe if it is available. The BIA agrees it failed to provide $30,900 in base eligible Pay Costs to the Tribe in CY 2003. The BIA agrees to restore the full amount due, plus interest at the current Prompt Pay rate of 4.3%, to the Tribes CY 2006 AFA. The estimated restoration amounts are $34,465 (2003), $33,236 (2004), $31,424 (2005), and $29,651 (2006). The BIA further agrees these amounts shall be base transferred in CY 2006.

16 The Red Lake Band believes these dollars are inadequate and insufficient to effectively operate the program.

17 This dollar amount is an estimate. The actual dollar amount for the CY 2006 MFA will be obtained on the basis of an existing competitive process.

18 The Red Lake Band believes these dollars are inadequate and insufficient to effectively operate the program. This line item includes an estimate of $70,000 for Wetlands/Waterfowl Management. The actual amount for Wetlands/Waterfowl Management will be based on an existing, competitive process. The estimate for Wetlands/Waterfowl Management has been placed in this line item because the BIA has temporarily removed this program and funding from the budget. The Tribe asserts this is in violation of Executive Order # 13175, and notes the United States Congress specifically restored the program and funding in FY 2003 - FY 2006.

19 This dollar amount is an estimate. The actual dollar amount for the CY 2006 MFA will be based on an existing competitive process.

20 This amount is an estimate. This is a recent Bureau budget line item, and reflects the merger of three former budget line items, each with differing methods/formulas for funds distribution: Forest Development; Forest Management Inventories & Plans; and Woodland Management. The actual amount will be based on specific forestry development projects, forest acres, and need for the Forest Development portion, and on the approved scheduled project amount for Forest Inventories/Plans portion in CY 2006. The BIA and OSG guarantee the Red Lake Band will be consulted with, and treated equitably, in the allocation of any funding from the BIA's Forestry Program. The Red Lake Band believes these dollars are inadequate and insufficient to effectively operate the program.

21 The actual dollar amount for the CY 2006 MFA will be based on an existing nationally competitive process. The BIA and OSG agree to work with the Red Lake Band to ensure that the Tribe is allowed to compete nationally on the same basis as other tribes.

22 This amount is an estimate. The BIA and OSG have agreed the Tribe should receive these funds.

23 This amount is requested in 2006 to assist with completing the Red Lake Sewage Lagoon upgrades.

24 The Red Lake Band hereby protests and objects to the decision to not distribute shares of the central office for FY 2006, and it is remarkably unfair that the Central Office budget was increased 37% in the last three years compared to the TPA budget increase of a paltry .3%. The Tribe disagrees with the Department of Interior in its assertion that Congress does not intend that Central Office shares should be distributed to tribes, but that to the contrary, past Congressional language in this area fully supported the distribution of Central Office shares to the tribes, until the BIA persuaded Congress and the Administration to freeze distributions in FY 1998 - 2006.

25 The Assistant Secretary - Indian Affairs and the Tribe agree that this amount represents original and historical base-transferred amounts of $1,413,500 from TPA Law Enforcement - Agency, $5,283 from TPA Law Enforcement Area, and $18,799 from Law Enforcement Area, in addition to $95,000 in base eligible funding from the FY 1999 Law Enforcement Initiative, $94,000 in base eligible funding from the FY 2000 Law Enforcement Initiative, and $224,000 in base eligible funding from the FY 2001 Law Enforcement Initiative. The Assistant Secretary - Indian Affairs agrees to do everything in his power to ensure these amounts are not reduced, and that Self-Governance tribes are treated on an equal footing with BIA Law Enforcement with regard to any additional Law Enforcement funds distributions. The Red Lake Band requests an additional $1 million for operation of Law Enforcement. Any new law enforcement program funding is to be determined and added to the AFA based on national distribution methodology developed by the BIA. The OSG and BIA also agree that it will keep the Tribe closely informed about all activities pertaining to Public Safety and Justice, so that the Tribe can participate to the fullest degree. The OSG and BIA agree that the $1.555 million obtained in FY 2002 for detention operations associated with new facilities needs to be designated as base eligible funding in FY 2006, because this funding is for staffing the Tribes new detention facility on an annual basis. ~~The BIA agrees to assist the Tribe in obtaining $1,210,192 for operations funding for the Tribes juvenile correction facility in CY 2006, and further agrees to request $1,599,325 for operation of the Tribes juvenile corrections facility in the Presidents FY 2007 budget.~~ With regard to any new initiatives pertaining to Homeland Security, it is mutually agreed that Red Lake Law Enforcement shall be eligible to participate at the same level as BIA Law Enforcement in any new programs and funding increases. ~~The BIA and OSG agree that the Red Lake Reservation be designated as a high crime area, and that the Tribe shall receive extraordinary consideration for high crimes area funding, in light of the March 21, 2005 shooting incident at Red Lake High School.~~

26 Historically there has been a deficit of O&M monies for Red Lake Agency facilities. Continuously funds were transferred from the Area to the Agency to negate the deficit. The BIA and the Red Lake Band hereby agree that if funds are available to cover future deficits for O&M monies, these funds will be made available to the Band, and in subsequent years such funds shall be transferred to the Tribes AFA base. Current base funding FFS Code 37400 (Operations) is a combination of both FFS Code 37400 (Operations) and FFS Code 37500 (Maintenance). The amount shown is an estimate. The actual amount will be determined from the FMIS O&M Allotment Formula. The Tribe has incurred a substantial increase in the need for O&M funds for maintaining the new detention facility, which consists of 55,760 square feet for which the BIA is responsible to maintain. The BIA reprogramming request total amount of $1,155,923 is an estimate, and includes $344,837 for Agency Facilities O&M, and $811,086 for Detention Facilities O&M. Of this amount, $162,217 represents funds not provided for the period of October 1 - December 31, 2005. Facilities operations and maintenance funding for the Tribes adult and juvenile detention facilities shall be included in this Agreement and transferred to the Tribe based on the funding year inherent in those funds and as soon as those funds are known and available for transfer. The Tribe requests that funding be allocated to conform with the Tribes calendar year and the MFA.

27 The Tribe requests the BIA restore funding to the Agency Water & Sewer Project # 93F01 in the amount of $2,945,869.00. This represents the original BIA project cost of $2,041,799.00 in 1996 adjusted for inflation at 3.5% per year to CY2006. The Tribe requests the completion of this project to restore design fire suppression flows to the southern portions of the Red Lake water system, prevent further contamination of houses on the sewer system and allow the Tribe to proceed with it's planned improvements to the Agency roads and Mn Hwy #1. The MnDot project may be jeopardized and the Agency project delayed indefinitely if the BIA's subsurface utilities are not replaced.

28 This dollar amount is an estimate. The actual dollar amount for the CY 2006 MFA will be based on a preexisting formula

These sentences are not agreed to by the Secretary
KR 04/14/06

according to the National Fire Management Analysis System. The Tribe and the BIA agree that the Wildland Fire Management Memorandum of Agreement between the Red Lake Band of Chippewa Indians and the Bureau of Indian Affairs shall be the guiding document for wildland fire management at Red Lake. It is mutually agreed that a flexible and cooperative working relationship between the Tribe's fire program, the fire management officer at Bemidji, and the fire program at the BIA Midwest Region office will exist, so that adequate trust resource protection and management will be maintained. Pursuant to Section 8 of the Tribe's MFA, the BIA and OSG agree to make every effort to ensure funds are released to the Tribe at the beginning of the calendar year.

29 This dollar amount is an estimate. Red Lake's currently approved indirect cost rate is 14.66%. The Tribe is currently negotiating its CY 2006 indirect cost rate and anticipates a substantial increase in the rate.

30 Estimate of HHS Child Care Block Grant. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.

31 Estimate of HHS Child Care Development Fund. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.

32 Estimate of N.E.W. Program. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.

33 Estimate of Department of Labor Supplemental Youth Services. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan

34 Estimate of Department of Labor Comprehensive Adult Services. Funds will be used in accordance with the Tribe's approved P. L. 102-477 plan.

35 This line represents Tribal Transportation Planning NON-TPA, and is an estimate.

36 This amount is an estimate. Highway Trust Funds will be received and expended by the Tribe in accordance with 25 CFR part 170. Section 17 of the AFA shall apply to this program. The Tribe and the Secretary reserve the right to amend this AFA at any time to implement Section 1119(g)(4) of the Safe, Accountable, Flexible, Efficient Transportation Equity Act-A Legacy for Users (SAFETY-LU), Public Law 109-59, and enter into an agreement directly with the Federal Highway Administration for the operation of the Tribes IRR program.

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

RED LAKE BAND OF CHIPPEWA INDIANS,
a federally recognized Indian Tribe

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___88888___
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801
Phone: (202) 955-3000

## DEFENDANTS

(1) UNITED STATES OF AMERICA
and
(2) DIRK KEMPTHORNE,
t in his official capacity as Secretary, United States Department of the Interior

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTORNEYS (IF KNOWN)

Unknown

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust

- ☐ 410 Antitrust

### ○ B. Personal Injury/ Malpractice

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff))
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. _Habeas Corpus/_** **_2255_** | ○ **H. _Employment_** **_Discrimination_** | ◉ **I. _FOIA/PRIVACY_** **_ACT_** | ○ **J. _Student Loan_** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K. _Labor/ERISA_** **_(non-employment)_** | ○ **L. _Other Civil Rights_** **_(non-employment)_** | ◉ **M. _Contract_** | ○ **N. _Three-Judge Court_** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original
Proceeding
○ 2 Removed
from State
Court
○ 3 Remanded from
Appellate Court
○ 4 Reinstated
or Reopened
○ 5 Transferred from
another district
(specify)
○ 6 Multi district
Litigation
○ 7 Appeal to
District Judge
from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

25 U.S.C. section 450m-1(a) and (d), 458ff(c) and 41 U.S.C. sections 605, 609(a) - Contract Dispute Act claim for breach of self-governance contract.

**VII. REQUESTED IN COMPLAINT**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 2,652,202.00    Check YES only if demanded in complaint

JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**
(See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 10/24/2006    SIGNATURE OF ATTORNEY OF RECORD

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.