IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

RED LAKE BAND OF CHIPPEWA INDIANS,  )
)
Plaintiff,  )
)
v.  )      Civil Action No.
)      1:06CV01826 (CK-K)
UNITED STATES OF AMERICA, et al.,  )
)
Defendants.  )

———————————————————————

### [PROPOSED] ORDER

Upon consideration of the parties' cross-motions for summary judgment and all other

submissions and proceedings in this matter, it is

ORDERED that summary judgment in favor of the United States defendants is granted as

to all counts of the complaint; plaintiff's motion for summary judgment is denied; and, the

complaint is dismissed with prejudice.

—————————————————————
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

Dated: ———————————————

cc:     Philip Baker-Shenk            Reginald T. Blades, Jr.
Holland & Knight LLP           Assistant Director
Suite 100                       United States Department of Justice
2099 Pennsylvania Avenue, NW    Civil Division
Washington, D.C.  20006         Commercial Litigation Branch
Telephone: (202) 955-3000       1100 L Street, NW
Room 12130
Washington, D.C.  20530
Telephone: (202) 616-8257

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
RED LAKE BAND OF CHIPPEWA INDIANS,    )
                                      )
          Plaintiff,                  )
                                      )
          v.                          )        Civil Action No.
                                      )        1:06CV01826 (CK-K)
UNITED STATES OF AMERICA, et al.,     )
                                      )
          Defendants.                 )
_____)

**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**
**AND**
**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

Of Counsel:
JEFFREY A. TAYLOR
United States Attorney              REGINALD T. BLADES, Jr.
D.C. Bar #498610                    Senior Trial Counsel
RUDOLPH CONTRERAS                   Louisiana Bar #03128
Assistant United States Attorney    Department of Justice
D.C. Bar #434122                    Civil Division
KEITH MORGAN                        Commercial Litigation Branch
Deputy Chief, Civil                 1100 L Street, N.W.
D.C. Bar#422655                     Room 12130
Judiciary Center Building           Washington, D.C. 20005
555 Fourth St., N.W.                Telephone:  (202) 616-8257
Room E4224                          Facsimile: (202) 307-0972
Washington, D.C. 20530              reginald.blades@usdoj.gov
(202) 307-0372.

July 18, 2008                       Attorneys for Defendants

1

TABLE OF CONTENTS

Page

DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . 1

MEMORANDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    Statement Of The Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.     Red Lake Is Not Entitled To Any Funds For Calendar Year 2005 Or Fiscal Year
        2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.     Interior Did Not Promise To Pay Red Lake The Funds Claimed For
              Calendar Year 2005 Or Fiscal Year 2006 . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.     Interior Did Not Possess Authority To Insert A Request Into The
              President's Budget . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.     Payment To Red Lake Would Deprive Other Tribes Of Funds . . . . . . . . 12

        D.     Red Lake Has Not Demonstrated Any Damage . . . . . . . . . . . . . . . . . . . 14

    III.   Red Lake Is Not Entitled To 2006 End Of Year Funds . . . . . . . . . . . . . . . . . . . 15

    IV.   The Pay Costs Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TABLE OF AUTHORITIES

Page

CASES

Alaska Pulp & Lumber Co., Inc. v. Madigan,
    2 F.3d 389 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Cherokee Nation of Oklahoma v. Leavitt,
    543 U.S. 631 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

City of El Centro v. United States,
    922 F.2d 816 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

Cutler-Hammer, Inc. v. United States,
    194 Ct. Cl. 788 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Designer Direst, Inc. v. DeForest Development Authority,
    313 F.3d 1036 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Essen Mall Properties v. United States,
    21 Cl. Ct. 430 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Federal Crop Ins. Corp. v. Merrill,
    332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

First Federal Lincoln Bank v. United States,
    54 Fed.Cl. 446 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Flexfab, L.L.C. v. United States,
    424 F.3d 1254 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Grundy v. United States,
    2 Cl. Ct. 596 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TABLE OF AUTHORITIES (cont'd)

Page

CASES (cont'd)

Harbert/Lummus Agrifuels Projects v. United States,
    142 F.3d 1429 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Heckler v. Community Health Serv. of Crawford County,
    467 U.S. 51 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hunt Constr. Group, Inc. v. United States,
    281 F.3d 1369 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ingersoll-Rand Co. v. United States,
    780 F.2d 74 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Monarch Assurance P.L.C. v. United States,
    244 F.3d 1356 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ramah Navajo School Bd., Inc. v. Babbitt,
    87 F.3d 1338 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Samish Indian Nation v. United States,
    419 F.3d 1355 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Seal-Flex, Inc. v. Athletic Track and Court Const.,
    98 F.3d 1318 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Shoshone-Bannock Tribes of Fort Hall Reservation v. Dept. of Health and Human Services,
    279 F.3d 660 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Starflight Boats v. United States,
    48 Fed.Cl. 592 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Watt v. Alaska,
    451 U.S. 259 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TABLE OF AUTHORITIES (cont'd)

Page

STATUTES

25 U.S.C. § 450j-1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

25 U.S.C. § 450m-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

25 U.S.C. § 458cc(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

25 U.S.C. § 458ff(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

31 U.S.C. 1105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

31 U.S.C. 1108(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Contract Disputes Act, 41 U.S.C. § 601, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

Indian Self-Determination and Education Assistance Act (ISDEAA),
    Pub. L. No. 93-638, 25 U.S.C. § 450 et seq. (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3


RULES

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

LcvR 7 and 56.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LCvR 7(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LcvR 56.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1


OTHER AUTHORITIES

E. Allan Farnsworth, Contracts § 12.16 (2d ed. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES (cont'd)

Page

OTHER AUTHORITIES (cont'd)

Merriam-Webster's Collegiate Dictionary, 10th ed. (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Restatement (Second) of Contracts § 344(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) of Contracts § 344(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

RED LAKE BAND OF CHIPPEWA INDIANS,    )
                                      )
                 Plaintiff,           )
                                      )
         v.                           )    Civil Action No.
                                      )    1:06CV01826 (CK-K)
UNITED STATES OF AMERICA, et al.,     )
                                      )
                 Defendants.          )
_____)

**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
AND
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and LcvR 7 and 56.1, we respectfully request the Court to enter summary judgment in favor of the United States defendants because there is no genuine issue as to any material fact and the United States defendants are entitled to judgment as a matter of law. In support of this request, we rely upon plaintiff's complaint, our statement of material facts as to which there is no genuine issue, filed separately pursuant to LCvR 7(h) and 56.1, and the following memorandum with attached appendix. We respectfully request also that the Court deny plaintiff's motion for summary judgment, and submit with our motion our response to plaintiff's motion and our statement of genuine issues, filed separately pursuant to LcvR 7(h) and 56.1.

<u>**MEMORANDUM**</u>

<u>**STATEMENT OF THE ISSUES**</u>

1.  Whether, in connection with operating a program out of the facility at issue,

    a. the Department of Interior (Interior) promised to pay plaintiff

    any funds for calendar year 2005 or fiscal year 2006;

    b. there exists an enforceable promise that Interior would request

    funds for fiscal year 2006;

    c. Interior is relieved of any potential obligation to provide funds

    because to do so would have an adverse effect upon other tribes;

    and,

    d. plaintiff incurred any damage as a result of not receiving the

    allegedly promised funds in calendar year 2005 or fiscal year 2006.

2.  Whether Interior is liable to plaintiff for any 2006 end of year funds.

3.  Whether Interior is liable to provide plaintiff with a pay cost report.

<u>**STATEMENT OF THE CASE**</u>

I.  <u>**Nature Of The Case**</u>

Plaintiff, Red Lake Band of Chippewa Indians (Red Lake), claims entitlement to funds based upon three promises by Interior: (1) a promise to assist Red Lake in efforts to obtain funds for a program for juveniles to be operated out of the Phase III building at the Red Lake correctional complex; (2) a promise to submit a request for funds in "the next President's budget;" and, (3) a promise to notify plaintiff of the potential availability of end of year funds. Plaintiff also requests specific performance of a promise to prepare a report concerning pay

-2-

costs.

Alleging that Interior has failed to perform and is, therefore, liable in damages, Red Lake

submitted a claim pursuant to the Contract Disputes Act, 41 U.S.C. § 601, et seq.  Interior denied

the claim, and Red Lake filed its complaint in this Court.  Each party has requested summary

judgment.

## II.     Statement Of The Facts

On January 14, 1997, pursuant to the Indian Self-Determination and Education

Assistance Act (ISDEAA), Pub. L. No. 93-638, 25 U.S.C. § 450 et seq. (1975), Red Lake

entered into a Compact of Self Governance with the Secretary of the Interior, enabling Red Lake

to plan, conduct, and administer programs and services to the extent as provided in the annual

funding agreement applicable to such BIA [Bureau of Indian Affairs] program, service, function

or activity.  Pl. Ex. A.[1]  See 25 U.S.C. § 458cc(b)(1).

Under the Presidential Initiative on Law Enforcement in Indian Country, Red Lake

received a grant from the Department of Justice to construct a new correctional complex.  Pl. Ex.

G, H.  Phase I of the correctional complex is a detention facility with separate wings for housing

adults and juveniles.  Id.  Phase III of the correctional complex is a separate, smaller facility

from which Red Lake could operate programs for juveniles.  Id.  For purposes of juvenile

detention, Red Lake did not fully utilize the available (18) juvenile beds in the Phase I facility.

See Pl. Ex. H.

On November 15, 2004, pursuant to the ISDEAA, the Director of the Department of

---

[1] "Pl. Ex." refers to the exhibits attached to plaintiff's brief in support of its motion for summary judgment.  "Def. Ex." refers to the exhibit appended to this brief.

Interior's Office of Self Governance (OSG), William Sinclair, upon behalf of the United States,

executed a multi-year funding agreement for 2005-2010 with Red Lake.  Pl. Ex. B.

> Section 11 of the agreement provides:

>> All amounts identified in the Agreement are subject to
>> Congressional action on appropriations and will be adjusted
>> accordingly.

Id. at 3.

> Section 17 of the agreement provides:

>> **Additional Funds** – If the Midwest Region Office of the BIA
>> receives notice of the availability of <u>any</u> additional funding in any
>> fiscal year for any purpose, including any unspent funds, that the
>> Tribe is eligible to apply for or receive, then it must notify the
>> Tribe as soon as possible about such funds so that the Tribe may
>> access or apply for those funds.  The Midwest Region Office
>> <u>commits</u> to keeping the Tribe informed of the existence of funding
>> immediately upon learning of its existence.

Id. at 4 (emphasis in original).

> Footnote 25 to line item 177 in the reprogramming request attached to the agreement

states, in pertinent part,

>> The BIA agrees to assist the Tribe in obtaining $1,218,482 for
>> operations funding for the Tribe[']s juvenile correction facility in
>> CY 2005, and to request this amount in the next President[']s
>> budget.

Id. at 13, n.25.

> On January 23, 2006, Ken Reinfeld, Acting Director, OSG, executed a multi-year

funding agreement for 2005-2010 with Red Lake.  Pl. Ex. L.

> Footnote 15 to line item 103 of the reprogramming request attached to the agreement

states, in pertinent part,

> Further, the BIA and OSG agree to provide to the Tribe by April 1,
> 2006, a detailed Pay Costs analysis for the years 2003-2006,
> showing what the Tribe was eligible to receive each year based
> upon Pay Cost data the Tribe provided, the actual amount received,
> and the shortfall or unfunded amount.

Id. at 10.

Red Lake does not claim to have made any effort to obtain funds for calendar year 2005 from any alternative sources, relying solely upon the Government.

Red Lake did not receive funds for staffing or operating any programs from the facility in CY 2005 or FY 2006.

Red Lake did not receive end of year funds distributed by the Midwest Region Office in 2006.

Red Lake did not receive a pay costs analysis.

On February 17, 2006, Red Lake submitted a certified claim under the Contract Disputes Act, 41 U.S.C. § 601, et seq.

By letter dated June 15, 2006, Mr. W. Patrick Ragsdale, then Director, Bureau of Indian Affairs, advised Red Lake that the present allocation for Red Lake law enforcement and detention services was as follows:

> Law Enforcement ..........$1,731777
> Detention Services .......$1,555,000
> Detention Facilities O&M ..$268,125

Pl. Ex N at 1. Mr. Ragsdale informed Red Lake further that, subject to enumerated conditions, Red Lake's funding allocation would increase annually by $275,000. Id. In response to Red Lake's claim that the multi-year funding agreement entitled Red Lake to further funds, Mr. Ragsdale explained,

> At this time we can not agree to your request for additional
> funding to provide for staffing and operations at the new detention
> facility.  It is not possible to provide this funding without
> decreasing allocations for other law enforcement operations
> nationwide which would adversely impact other tribes.

Id at 2.

## STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party bears the initial burden of establishing the absence of any disputes of material fact.  Seal-Flex, Inc. v. Athletic Track and Court Const., 98 F.3d 1318, 1321 (Fed. Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When the movant has met its initial burden, the non-movant must respond with sufficient evidence to show that there is a material factual dispute and that, on the non-movant's evidence, the movant is not entitled to judgment as a matter of law." Id.  Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. Celotex, 477 U.S. at 325.  The Supreme Court has emphasized that the "[s]ummary judgment procedure is not properly regarded as a disfavored procedural shortcut but, rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action. . . .'" Celotex, 477 U.S. at 327 (citations omitted).

## SUMMARY OF ARGUMENT

Interior did not promise to pay any funds to Red Lake; it promised only to assist Red Lake in finding funds and to request funds "in the next President's budget."  As to the first

promise, although Interior promised only to assist Red Lake to obtain funding from alternative sources, Red Lake made no effort to attempt to obtain funds, relying entirely upon the Government. As to the second promise, no one with whom Red Lake dealt, no one that signed the agreements on behalf of Interior, had authority to include any amount in the President's budget. Moreover, any potential Interior obligation to provide funds was subject to the availability of appropriations, and Interior was not required to provide funds if, as it concluded was the case, providing funds to Red Lake would have an adverse affect upon funding for other tribes. In any event, other than claiming entitlement to the funds, Red Lake claims no damage as a result of not obtaining the allegedly promised funds.

As to the promise to notify Red Lake of the potential availability of end-of-year funds, the challenged funds were distributed in a reasoned manner under the circumstances. Red Lake and other self-governance tribes were not included in the distribution because there was not time to include those tribes before the funds expired. Had the Government waited to distribute the funds, no tribes would have been able to receive the funds because it would have been too late. In any event, Red Lake had already received more than a fair share of funds distributed during the year. Red Lake was not treated less favorably than any other tribe. If anything, Red Lake was treated more favorably over the course of the year.

As to the pay costs report, the Government has prepared a report, but as a matter of law, Red Lake cannot obtain specific performance from the Government and has not alleged any damages as a result of not receiving the report. Its claims for pay costs are not based upon contract but, if anything, upon statute, subject to Administrative Procedure Act review that cannot result in money damages.

## ARGUMENT

I. **Red Lake Is Not Entitled To Any Funds For Calendar Year 2005 Or Fiscal Year 2006**

    A.    **Interior Did Not Promise To Pay Red Lake The Funds Claimed For Calendar Year 2005 Or Fiscal Year 2006**

As is plain from the language of footnote 25 of the multi-year funding agreement, Interior did not promise to pay Red Lake funds for calendar year 2005.  Interior agreed "to assist the Tribe in obtaining [funds] . . . in CY 2005."  Pl. Ex. B, at 13.  Similarly, Interior did not promise to pay Red Lake funds for fiscal year 2006.  Interior agreed "to request [funds] in the next President['s] budget."  Pl. Ex. B at 13.

General principles of contract interpretation require reliance, first, upon the plain meaning of the words used.  E.g., Watt v. Alaska, 451 U.S. 259, 266 (1981) ("the words used, even in their literal sense, are the primary, and ordinarily most reliable, source of interpreting the meaning of any writing:  be it a statute, a contract, or anything else").  "When the contract language is unambiguous on its face, [the court's] inquiry ends, and the plain language of the contract controls."  Hunt Constr. Group, Inc. v. United States, 281 F.3d 1369, 1373 (Fed. Cir. 2002); accord Alaska Pulp & Lumber Co., Inc. v. Madigan, 2 F.3d 389, 392 (Fed. Cir. 1993) ("Where contract provisions are clear and unambiguous, they must be given their plain and ordinary meaning.").

Interior agreed only to "assist" and did not promise  actually to "obtain" or to pay funds for CY 2005.  Interior agreed only to "request" and did not promise actually to obtain or to pay funds for FY 2006.  Failure to pay funds, therefore, cannot constitute a breach of the agreement as expressed in the writing.  If anything, the language of the footnote is a mere statement of

intention to assist and to request, not binding upon Interior.  See Cutler-Hammer, Inc. v. United States, 194 Ct. Cl. 788, 794 (1971) ("the obligation of the government, if it is to be held liable, must be in the form of an undertaking, not as mere prediction or statement of opinion or intention").

Further, in this context, "assist" means to give support or aid, indicating a secondary role of assistance in cooperation with the primary actor.  Merriam-Webster's Collegiate Dictionary, 10th ed. (1999) ("another surgeon assisted on the operation").  In other words, Interior was to assist Red Lake in Red Lake's efforts to obtain funds.  Red Lake, however, does not claim to have made any effort to obtain funds, much less any effort in which Interior did not assist.

Similarly, "request" means to ask for, usually as a favor or a privilege, indicating no promise that the request will be granted or that the requestor will receive that which was requested.  Id. ("requests to be excused" or "requested a brief delay").

Red Lake misconstrues the language "to assist" and "to request" to mean that Interior would provide funding.  Pl. Brf. at 11-12.  The only argument that Red Lake offers to support this misinterpretation is the idea that the agreement should be read broadly "to advance its remedial purpose."  Pl. Brf. at 11 (quoting Samish Indian Nation v. United States, 419 F.3d 1355, 1367 (Fed. Cir. 2005).  Reading the contract broadly, however, does not provide license to disregard the plain language.

The Court, therefore, should find that Interior was not obligated to pay Red Lake funds for calendar year 2005 or fiscal year 2006.

### B.    Interior Did Not Possess Authority To Insert A Request Into The President's Budget

"'Government employees hold express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants them such authority in unambiguous terms.'"  First Federal Lincoln Bank v. United States, 54 Fed.Cl. 446, 452 (2002) (quoting Starflight Boats v. United States, 48 Fed.Cl. 592, 598 (2001)).

Contracts entered into by Government personnel who lack authority to bind the Government are unenforceable.  City of El Centro v. United States, 922 F.2d 816, 820-21 (Fed. Cir. 1990); see also Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1263 (2005) ("Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept.").  When a Federal employee exceeds his or her authority, the Government can "disavow the [agent's] words and is not bound by an implied contract."  Essen Mall Properties v. United States, 21 Cl. Ct. 430, 445 (1990). The United States Court of Appeals for the Federal Circuit has explained the rationale for this rule as follows:

> The United States Government employs close to three million civilian employees.  If all Government employees could, of their own volition, enter into contracts obligating the Government, then federal expenditures would be wholly uncontrollable.

Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir. 2001) (footnote omitted).  Moreover, the Supreme Court has made clear that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority" even if "the agent himself may have been unaware of the limitations upon his authority."  Federal Crop Ins. Corp.

-10-

v. Merrill, 332 U.S. 380, 384 (1947).

A plaintiff asserting the existence of a contract with the United States, therefore, bears the burden of establishing that the person or people upon whose alleged promises or representations the plaintiff relied had actual authority to bind the Government.  Heckler v. Community Health Serv. of Crawford County, 467 U.S. 51, 63 (1984); see Grundy v. United States, 2 Cl. Ct. 596, 599 (1983) (holding that a "claimant for money damages for breach of contract must plead and prove that the Government officer, who supposedly entered into the contract with the claimant, had the actual authority to appropriate Government funds for such purpose").

No one at the BIA or at the OSG possessed authority to insert a budget request into the President's budget.  The Secretary of the Interior is vested with exclusive authority to "prepare and submit to the President each appropriation request for the agency."  31 U.S.C. § 1108(a). Interior's budget recommendation is submitted to the President through the Office of Management and Budget (OMB).  Id.  Both OMB and the President are free to modify, including rejecting, Interior's recommendations.  The President, then, submits a unified budget request to Congress, which is under no obligation to accept the President's recommendations.  31 U.S.C. § 1105(a).

Consequently, only the President possesses authority to insert a budget request into the President's budget, which, in any event, is no guarantee that Congress will appropriate any requested amount.  Because the individuals with whom Red Lake dealt on this matter had no authority to insert a request into the President's budget, any promise to do so is not binding upon the Government.  Federal Crop Ins, 332 U.S. at 384; Harbert/Lummus Agrifuels Projects v.

-11-

United States, 142 F.3d 1429, 1432-33 (Fed. Cir. 1998); Trauma Service Group, 104 F.3d at

1325; City of El Centro, 922 F.2d at 820-21.  The Court, should, therefore, find that Interior was

not obligated to insert a request into the President's budget.

      **C.**     **Payment To Red Lake Would Deprive Other Tribes Of Funds**

Section 11 of the agreement provides, "All amounts identified in this Agreement are

subject to Congressional action on appropriations and will be adjusted accordingly."  Pl. Ex. B at

4.  Moreover, 25 U.S.C. § 450j-1(b) provides,

> Notwithstanding any other provision in this subchapter, the
> provision of funds under this subchapter is subject to the
> availability of appropriations and the Secretary is not required to
> reduce funding for programs, projects, or activities serving a tribe
> to make funds available to another tribe or tribal organization
> under this subchapter.

See also 25 U.S.C. § 458ff(a).

By letter dated June 15, 2006, Mr. W. Patrick Ragsdale, then Director, Bureau of Indian

Affairs, advised Red Lake that the present allocation for Red Lake law enforcement and

detention services was as follows:

> Law Enforcement ..........$1,731777
> Detention Services .......$1,555,000
> Detention Facilities O&M ..$268,125

Pl. Ex N at 1.  Mr. Ragsdale informed Red Lake further that, subject to enumerated conditions,

Red Lake's funding allocation would increase annually by $275,000.  Id.  In response to Red

Lake's claim that the multi-year funding agreement entitled Red Lake to further funds, Mr.

Ragsdale explained,

> At this time we can not agree to your request for additional
> funding to provide for staffing and operations at the new detention
> facility.  It is not possible to provide this funding without

> decreasing allocations for other law enforcement operations
> nationwide which would adversely impact other tribes.

Id at 2.  Moreover, as mentioned above, for purposes of juvenile detention, Red Lake was not

fully utilizing the available (18) juvenile beds in the Phase I facility.  See Pl. Ex. H.

When there are insufficient funds and the Secretary cannot satisfy every tribe's needs, the

Secretary is not required to take funds from existing programs and services, which would

adversely affect other tribes, to satisfy an obligation to any one tribe.  Ramah Navajo School Bd.,

Inc. v. Babbitt, 87 F.3d 1338, 1344-45 (D.C. Cir. 1996) (citing 25 U.S.C. §§ 450j-1(b), 450k(a),

450m-1(a)) ("Even though the ISDA speaks of a Tribe's 'entitlement' to certain funds, the

Secretary cannot be forced to take money from a program serving a Tribe . . . in order to make

up for a [contract support fund] shortfall").  See also Shoshone-Bannock Tribes of Fort Hall

Reservation v. Dept. of Health and Human Services, 279 F.3d 660 (9th Cir. 2002) (holding that in

25 U.S.C. §§ 450j-1(a)(2), (b), 4501(c), Congress clearly excluded the possibility of construing

the contract support costs provision as an entitlement that existed independently of whether

Congress appropriated money to cover those costs).  Therefore, pursuant to Section 11 of the

agreement and 25 U.S.C. § 450j-1(b), Interior was not obligated to provide the funding that Red

Lake claims.

Red Lake's reliance upon Cherokee Nation of Oklahoma v. Leavitt, 543 U.S. 631 (2005),

is misplaced.  In that case, the Court premised its analysis upon the following facts:

> The Government does not deny that it promised to pay the relevant
> contract support costs.  . . .  The Government in effect concedes yet
> more.  It does not deny that, *were these contracts ordinary*
> *procurement contracts*, its promises to pay would be legally
> binding.

Id. at 636 (emphasis in original).  In this case, however, as demonstrated above, the Government

made no promise to pay.  The Supreme Court's analysis of the application of the "subject to availability of appropriations" exceptions in multi-year funding agreements and in the statute is, therefore, inapposite in this case in which there is no promise to pay.  The Court should, therefore, find that, in the absence of a promise to pay, the "subject to availability of appropriations" exceptions in the agreement and in the statute, relieved Interior of any potential obligation to pay Red Lake.

       **D.**        <u>**Red Lake Has Not Demonstrated Any Damage**</u>

In any event, Red Lake has not demonstrated any damage as a result of not receiving funds in calendar year 2005 or fiscal year 2006.  Although Red Lake does not refer to them as such, any damages would be, necessarily, reliance or restitution damages.  Any expectation interest in lost profits is not at issue, and in light of the fact that there was no promise to pay any amount to Red Lake, Red Lake could not have possessed any reasonable expectation of receiving any particular amount or any amount at all, especially considering that Red Lake had not received the claimed funding in any prior year.

Reliance damages compensate the party for loss caused by reliance upon the contract and are intended to put the injured party in as good a position as he would have been in had the contract not been made.  Restatement (Second) of Contracts § 344(b).  Reliance damages generally include out-of-pocket expenditures incurred in preparation or performance of the contract and "are limited to those expenses incurred after an agreement has been reached."  E. Allan Farnsworth, Contracts § 12.16 (2d ed. 1997).  Red Lake has neither claimed nor identified any reliance expenditures, and we are aware of none.

The aim of restitution is similar, but a precondition for restitution is that the promisee

-14-

confer a benefit upon the promisor by performing in some way. Restatement (Second) of Contracts § 344(c). Red Lake has neither claimed nor identified any benefit conferred upon the Government, nor any expenditures that would qualify for restitution, and we are aware of none.

Accordingly, the Court should find that Interior was not obligated to pay Red Lake any funds in calendar year 2005 or fiscal year 2006 and that, in any event, Red Lake has not demonstrated any damage as a result of not receiving funds. The Court should, therefore, enter summary judgment in favor of the United States defendants upon Count I of the complaint.

**III.    Red Lake Is Not Entitled To 2006 End Of Year Funds**

Interior did not breach a promise that the Midwest Regional Office would notify Red Lake of any additional funding for which Red Lake was eligible to apply. Under the circumstances, the challenged funds were distributed in a reasoned manner. The Bureau of Indian Affairs decided to distribute the contested funds to only the Title I, P.L. 93-638 contract tribes, and not the self-governance tribes, like Red Lake, because "the money had to be obligated within a very short period of time and the Bureau's mechanism through the Office of Self Governance could not mechanically do that." Pl. Ex. K (Ragsdale Depo. at p. 64, ll. 1-7); see also Def. Ex. A (Virden Depo. at p. 12, l. 17). In other words, Red Lake and other self-governance tribes were not included in the distribution because there was not time to include those tribes before the funds expired. Had the Government waited to distribute the funds, no tribes would have been able to receive the funds because it would have been too late. Moreover, the Midwest Regional Office could not alter this decision by the Bureau's central office, and therefore, had no reason to notify Red Lake that the funds were to be distributed to only Title I tribes. Id. ( Virden Depo at p. 11, l. 24 to p. 12, l. 13). In any event, Red Lake had already

-15-

received discretionary funds distributed during the year. Id. (Virden Depo. p. 11, l. 2).   Red

Lake was not treated less favorably than any other tribe.  If anything, Red Lake was treated more

favorably over the course of the year.

      Moreover, Red Lake would have been, at best, only eligible to apply for the funds.

Interior had not promised that Red Lake would receive any funds.  In light of the central office's

determination that there was not time before the funds would have expired to include self-

governance tribes in the distribution, Red Lake would not have, in fact, been awarded any funds.

      Accordingly, the Court should find that Red Lake is not entitled to receive any 2006 end-

of-year funds.  The Court should, therefore, grant summary judgment in favor of the United

States defendants upon Count II of the complaint.

## IV.    The Pay Costs Report

      Red Lake seeks specific performance for a pay costs report.  See Pl. Ex. L, p. 10, n.15.

Specific performance, however, is not available against the United States.  No court possess

jurisdiction to award specific performance of a contract with the United States.  Ingersoll-Rand

Co. v. United States, 780 F.2d 74, 80 (D.C. Cir. 1985).  As explained by the United States Court

of Appeals for the Seventh Circuit,  "An action seeking specific performance, rather than

damages, against a government official is an action against the sovereign and is not maintainable

unless consented to." Designer Direst, Inc. v. DeForest Development Authority, 313 F.3d 1036

(7th Cir. 2002).

      Red Lake's reliance upon 25 U.S.C. § 450m-1(a) is misplaced.  See Pl. Brf. at 16-17.

That the statute authorizes injunctive relief for violations of the Act and to fund contracts does

not provide authority for a court to award specific performance of a contract with the United

States in circumstances not expressly provided by the statute.

Nevertheless, Interior has prepared a pay costs report, a copy of which is attached to this motion.

Further, any claim Red Lake may raise concerning payment of pay costs is not contractual but, if anything, statutory, subject to review pursuant to the Administrative Procedure Act, under which money damages are not available.

Accordingly the Court should deny Red Lake's request for specific performance and deny Red Lake's claim for a pay costs report as moot. The Court should, therefore, grant summary judgment in favor of the United States upon Counts III and IV of the complaint.

<u>**CONCLUSION**</u>

For these reasons, we respectfully request the Court to grant summary judgment in favor of the United States, deny summary judgment for Red Lake, and dismiss the complaint with prejudice.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General


s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

Of Counsel:

| | |
|---|---|
| JEFFREY A. TAYLOR | s/ Reginald T. Blades, Jr. |
| United States Attorney | REGINALD T. BLADES, Jr. |
| D.C. Bar #498610 | Senior Trial Counsel |
| RUDOLPH CONTRERAS | Louisiana Bar #03128 |
| Assistant United States Attorney | Department of Justice |
| D.C. Bar #434122 | Civil Division |
| KEITH MORGAN | Commercial Litigation Branch |
| Deputy Chief, Civil | 1100 L Street, N.W. |
| D.C. Bar#422655 | Room 12130 |
| Judiciary Center Building | Washington, D.C. 20005 |
| 555 Fourth St., N.W. | Telephone:  (202) 616-8257 |
| Room E4224 | Facsimile: (202 307-0972 |
| Washington, D.C. 20530 | reginald.blades@usdoj.gov |
| (202) 307-0372. | |
| | |
| July 18, 2008 | Attorneys for Defendants |

**<u>APPENDIX</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

RED LAKE BAND OF CHIPPEWA INDIANS,   )
                                     )
          Plaintiff,                 )
                                     )
          v.                         )     Civil Action No.
                                     )     1:06CV01826 (CK-K)
UNITED STATES OF AMERICA, et al.,    )
                                     )
          Defendants.                )
_____)

**INDEX TO APPENDIX FOR**
**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**
**AND**
**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

First Tab          Defendant' Exhibit A

Second Tab         Pay Costs Report

**DEFENDANT'S EXHIBIT A**

Terrance L. Virden

Page 1

1                UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF COLUMBIA

3       ----------------------------
        RED LAKE BAND OF              Civil Action No.
4       CHIPPEWA INDIANS              1:06CV01826 (CK-K)

5                     Plaintiff,

6       v.

7       UNITED STATES OF AMERICA,
        et al.,

8                     Defendants.

9       ----------------------------

10
        TELEPHONIC DEPOSITION OF:   Terrance L. Virden
11
        TAKEN AT:   701 Fourth Avenue South, Suite 500
12                  Minneapolis, Minnesota

13      DATE:       September 21, 2007

14      COMMENCING AT:  10:10 a.m.

15

16
        Reported by:  Patrick J. Mahon
17                    Registered Merit Reporter
                      Certified Realtime Reporter
18                    Job No. 183209

19

20

21

22

23

24

25

Terrance L. Virden

1    2006, that is, to the Red Lake Band?

2        A.  Not at year-end.  I think we had sent them some

3    discretionary money earlier in the year.

4        Q.  Okay.  But the year-end funds, whatever amount

5    that was, none went to the Red Lake out of the year-end

6    allocation; is that right?

7        A.  To the best of my knowledge, no.

8        Q.  Okay.  Do you know to how many of the 35 tribes

9    in the Midwest Region those funds went to?

10       A.  I think we funded -- and this is approximate,

11   because I don't know exactly -- about five or six

12   projects.  Not all were tribes.  We funded to the 1854

13   Authority for a project and the Great Lakes Indian Fish

14   and Wildlife Commission for a project.

15       Q.  Okay.

16       A.  And there were several tribes after that.

17       Q.  Do you know if the Red Lake Band was informed of

18   the availability of these year-end funds before they

19   were distributed to other tribes?

20       A.  No, they were not informed.

21       Q.  And do you know on what basis that -- was there a

22   decision to not inform them and other self-governance

23   tribes?

24       A.  We were told that the money was -- that we were

25   only to consider the 638 contract tribes in the

Terrance L. Virden

Page 12

 1   distribution.

 2       Q.  And the Midwest Region was instructed to inform

 3   only tribes with Title I self-determination contracts of

 4   these funds; is that right?

 5       A.  Well, generally, we didn't -- we didn't inform

 6   any tribes of the availability.  What we did is --

 7   again, we had -- we had known projects already, and so

 8   we -- the only tribes that were informed are the ones

 9   that were awarded any funds.

10       Q.  Okay.  Was it Central Office that made the

11   decision to award those funds only to Title I contract

12   tribes?

13       A.  Yes.

14       Q.  Was it the office of division of trust

15   responsibility that made that decision or another

16   office, to your knowledge?

17       A.  I'm not sure, but I understand the reason was

18   because they were having trouble running funds through

19   the Office of Self-Governance on short notice.

20       Q.  Was this decision communicated in writing to you

21   or to your office?

22       A.  It was a verbal communication to Robert Jackson,

23   my regional biologist.

24       Q.  I see.  Do you happen to remember when that was

25   communicated to Mr. Jackson?

**PAY COSTS REPORT**

v5
3/27/2008

**PAY COST ANALYSIS FOR FY 2003-2006 (Including Law Enforcement)**

| | FY03 | | | | | FY04 | | | | | FY05 | | | | | FY06 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Salary Base | Increase Eligible to Receive | Congressional Rescissions | Received | % Received | Salary Base | Eligible to Receive | Congressional Rescissions | Received | % Received | Salary Base | Eligible to Receive | Congressional Rescissions | Received | % Received | Salary Base | Eligible to Receive | Congressional Rescissions | Provided in budget | Withheld from Bureau Programs a/ | Received as pay rate | % Received |
| Self Governance Tribes | 80,236,075 | 1,311,000 | -8,522 | 1,302,478 | 1.6% | 96,447,658 | 1,311,000 | -13,979 | 1,117,021 | 1.2% | 98,507,513 | 872,923 | -12,169 | 860,754 | 0.9% | 95,888,684 | 1,991,436 | -29,299 | 1,991,436 | 0 | 1,962,137 | 2.0% |
| Contracting Tribes (PL 638) | 179,654,483 | 2,954,127 | -19,267 | 2,944,860 | 1.6% | 183,152,128 | 2,089,316 | -25,824 | 2,063,492 | 1.1% | 192,190,022 | 1,678,558 | -23,399 | 1,655,169 | 0.9% | 198,017,779 | 3,938,005 | -57,938 | 3,938,005 | 0 | 3,880,067 | 2.0% |
| BIA Programs (DOP)* | 312,304,553 | 4,996,873 | -32,480 | 4,964,393 | 1.6% | 368,016,000 | 3,929,684 | -48,657 | 3,880,027 | 1.1% | 307,153,372 | 1,455,519 | -20,262 | 1,435,257 | 0.9% | 332,327,600 | 6,778,483 | -99,637 | 6,491,305 | -166,037 | 6,483,705 | 2.0% |
| Total | 572,195,101 | 9,272,000 | -60,269 | 9,211,732 | 1.6% | 647,615,786 | 7,157,000 | -88,460 | 7,068,540 | 1.1% | 597,840,907 | 4,006,000 | -55,830 | 3,949,170 | 0.9% | 626,291,063 | 12,708,924 | -186,874 | 17,215,000 | -253,274 | 12,325,879 | 1.9% |

| Red Lake | 3,781,787 | 62,500 | -406 | 62,094 | 1.6% | 5,342,998 | 62,800 | -774 | 62,026 | 1.2% | 4,426,911 | 39,393 | -547 | 38,846 | 0.9% | 4,999,917 | 99,898 | -1,431 | | 0 | 95,831 b/ | 1.9% |

*BIA Programs do not include Federal and Tribal teachers, construction, or loan accounts.

a/ Funds were withheld pending unexpected needs. Final distribution included $4.6M distributed to Tribes (see attached explanatory note).

b/ Amount owed Red Lake: $2,686 plus $4.3 interest = $3,109.00 see attached schedule.

**Tribal Paycost Analysis for FY's 2003-2006 by Region Including Law Enforcement (before Congressional Rescissions)**
($ in 000's)

| | Total | Region 1 | Region 2 | Region 3 | Region 4 | Region 5 | Region 6 | Region 7 | Region 8 | Region 9 | Region 10 | Region 11 | Region 12 | Red Lake |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **FY03** | | | | | | | | | | | | | | |
| Self Gov Salaries | 80,236.075 | 9,524.980 | 0.000 | 3,667.874 | 2,743.126 | 24,214.924 | 0.000 | 8,494.149 | 5,703.300 | 676.630 | 3,351.972 | 21,081.397 | 837.723 | |
| 638 Salaries | 179,654.463 | 14,314.743 | 24,372.991 | 4,582.400 | 7,624.040 | 7,972.200 | 24,817.994 | 1,564.000 | 7,843.791 | 12,507.179 | 27,745.394 | 30,182.487 | 16,166.694 | 3,781.767 |
| Total Eligible Salaries | 259,890.538 | 23,839.723 | 24,372.991 | 8,250.274 | 10,367.166 | 32,187.124 | 24,817.994 | 10,058.149 | 13,547.091 | 13,183.809 | 31,097.916 | 51,163.884 | 17,004.417 | 3,781.767 |
| Payosts - Self Gov | 1,311.000 | 0.000 | 0.000 | 61.000 | 37.700 | 401.800 | 0.000 | 141.500 | 95.400 | 10.800 | 55.700 | 377.500 | 14.000 | |
| Payosts - 638 | 2,964.127 | 276.500 | 402.727 | 75.200 | 126.100 | 122.500 | 410.100 | 25.500 | 121.100 | 455.100 | 468.300 | 284.800 | | 62.500 |
| Total Payosts | 4,275.127 | 276.500 | 402.727 | 136.200 | 163.800 | 524.300 | 410.100 | 167.000 | 216.500 | 510.800 | 845.800 | 278.800 | 62.500 | |
| Ineligible Salaries | 13,681.004 | 935.006 | 402.727 | 974.673 | | 19.000 | | 765.000 | 0.000 | | 2,504.270 | 25.451 | 0.000 | |
| **FY04** | | | | | | | | | | | | | | |
| Self Gov Salaries | 96,447.658 | 12,140.432 | 0.000 | 5,729.140 | 2,160.046 | 25,870.000 | 0.000 | 4,050.720 | 858.000 | 2,800.970 | 23,405.073 | 29,690.350 | 567.000 | |
| 638 Salaries | 183,152.128 | 14,789.314 | 25,333.000 | 5,657.718 | 13,516.439 | 8,614.000 | 26,959.852 | 2,149.000 | 9,393.099 | 12,990.000 | 23,405.073 | 29,896.633 | 11,015.000 | 5,342.998 |
| Total Eligible Salaries | 279,599.786 | 26,929.746 | 25,333.000 | 11,386.858 | 15,676.485 | 34,484.000 | 26,959.852 | 13,443.819 | 13,848.000 | 26,206.043 | 59,586.983 | 11,015.000 | | 5,342.998 |
| Payosts - Self Gov | 1,131.000 | 142.500 | 0.000 | 67.500 | 19.700 | 306.400 | 0.000 | 148.400 | 47.600 | 10.100 | 32.800 | 349.300 | 6.700 | |
| Payosts - 638 | 2,089.316 | 172.500 | 297.776 | 66.700 | 135.200 | 94.900 | 306.100 | 23.300 | 109.700 | 152.900 | 271.600 | 340.100 | 116.600 | |
| Total Payosts | 3,220.316 | 315.000 | 297.776 | 134.200 | 154.900 | 401.300 | 306.100 | 173.700 | 157.300 | 163.000 | 304.400 | 689.400 | 123.300 | 62.800 |
| Ineligible Salaries | 16,446.214 | 596.420 | 0.000 | 297.716 | 0.000 | 0.000 | 0.000 | 0.000 | 63.398 | 0.000 | 6,111.832 | 310.000 | 0.000 | |
| **FY05** | | | | | | | | | | | | | | |
| Self Gov Salaries | 98,507.513 | 13,163.303 | 0.000 | 5,107.257 | 2,671.094 | 25,870.000 | 0.000 | 11,989.299 | 3,193.797 | 722.000 | 8,410.662 | 32,987.961 | 403.150 | |
| 638 Salaries | 192,180.022 | 17,000.648 | 22,265.000 | 6,339.963 | 8,281.416 | 12,217.000 | 27,386.918 | 3,973.050 | 13,707.004 | 26,820.668 | 31,625.983 | 14,258.211 | | |
| Total Eligible Salaries | 290,687.535 | 30,171.951 | 22,265.000 | 11,447.220 | 10,952.510 | 32,096.918 | 27,386.918 | 15,962.349 | 11,489.938 | 13,443.819 | 35,231.340 | 64,593.944 | 14,661.361 | 4,426.911 |
| Payosts - Self Gov | 872.923 | 111.297 | 0.000 | 45.229 | 21.689 | 176.802 | 0.000 | 106.480 | 27.756 | 6.426 | 74.846 | 298.811 | 3.587 | |
| Payosts - 638 | 1,678.558 | 146.029 | 190.501 | 53.438 | 64.464 | 104.026 | 244.447 | 23.300 | 73.576 | 116.805 | 236.224 | 280.837 | 122.863 | 39.393 |
| Total Payosts | 2,551.481 | 257.326 | 190.501 | 98.667 | 86.053 | 280.928 | 244.447 | 141.838 | 101.332 | 123.231 | 311.070 | 589.648 | 126.440 | |
| Ineligible Salaries | 19,915.682 | 2,351.372 | 0.000 | 712.225 | 1,903.865 | 3,513.000 | 0.000 | 6,888.078 | 5.000 | 487.000 | 2,737.245 | 310.000 | 0.000 | 1,659.650 |
| **FY06** | | | | | | | | | | | | | | |
| Self Gov Salaries | 95,888.664 | 15,149.150 | 0.000 | 4,917.377 | 1,726.207 | 18,945.254 | 0.000 | 12,392.101 | 4,524.129 | 585.695 | 9,465.734 | 28,213.905 | 568.932 | |
| 638 Salaries | 198,074.779 | 14,320.893 | 23,972.000 | 4,639.476 | 8,730.400 | 10,912.000 | 35,366.387 | 2,247.926 | 9,214.848 | 16,279.000 | 28,784.637 | 33,494.503 | 10,112.709 | |
| Total Eligible Salaries | 293,963.463 | 29,470.043 | 23,972.000 | 9,556.853 | 9,856.607 | 29,857.254 | 35,366.387 | 14,640.027 | 13,738.977 | 16,864.895 | 38,250.371 | 61,708.408 | 10,681.641 | 4,999.917 |
| Payosts - Self Gov | 2,396.344 | 357.064 | 0.000 | 116.300 | 28.625 | 447.187 | 0.000 | 310.060 | 106.955 | 13.852 | 232.316 | 772.534 | 13.451 | |
| Payosts - 638 | 4,742.850 | 347.165 | 561.248 | 109.700 | 211.123 | 257.983 | 836.104 | 53.145 | 215.076 | 396.003 | 676.587 | 832.304 | 246.412 | 117.397 |
| Payosts | 7,139.194 | 704.229 | 561.248 | 226.000 | 237.748 | 705.170 | 836.104 | 363.205 | 322.031 | 409.855 | 908.903 | 1,604.838 | 259.863 | |
| One less day SG | -404.808 | 0.000 | 0.000 | -19.650 | -4.445 | -55.199 | 0.000 | -52.407 | -18.079 | -2.341 | -39.266 | -210.553 | -2.273 | |
| One less day 638 | -804.845 | -59.424 | -95.808 | -18.540 | -37.705 | -43.639 | -141.323 | -8.981 | -36.361 | -66.943 | -115.025 | -160.667 | -40.499 | |
| One less day | -1,209.753 | -120.119 | -95.808 | -38.190 | -43.418 | -118.838 | -141.323 | -69.284 | -84.440 | -164.291 | -271.444 | -142.682 | -20.135 | |
| Payosts - Self Gov | 1,991.436 | 296.369 | 0.000 | 96.650 | 22.180 | 371.988 | 0.000 | 257.653 | 88.876 | 11.511 | 193.050 | 561.981 | 11.178 | 97.262 |
| Payosts - 638 | 3,938.005 | 287.741 | 465.440 | 91.160 | 195.598 | 694.781 | 694.781 | 178.715 | 329.060 | 561.562 | 661.191 | 206.003 | | |
| Total Payosts | 5,929.441 | 584.110 | 465.440 | 187.810 | 195.598 | 586.332 | 694.781 | 340.571 | 754.612 | 1,333.598 | 217.181 | 97.262 | | |
| Ineligible Salaries | 12,502.156 | 588.876 | 0.000 | 705.300 | 4,868.719 | 0.000 | 301.817 | 0.000 | | | 340.571 | 310 | 38.815 | |

**Red Lake Band of Chippewa Indians Pay Raise Cost Analysis for FY 2006**
**Including Law Enforcement**

| Red Lake | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|
| Pay Cost Data Provided | 3,781,767 | 5,342,998 | 6,086,561 | 5,038,732 |
| Ineligible Salary Costs* | 0 | 0 | 1,659,650 | 38,815 |
| **Salary Base** | **3,781,767** | **5,342,998** | **4,426,911** | **4,999,917** |
| Eligible to receive | 62,500 | 62,800 | 39,393 | 99,998 |
| Congressional Rescissions | (406) | (774) | (547) | (1,471) |
| Amount owed Tribe | 62,094 ** | 62,026 | ·38,846 | 98,527 |
| Amount Paid to Tribe | (62,094) | (62,026) | (38,846) | 95,831 |
| Amount Outstanding | 0 | 0 | 0 | 2,696 |

*Ineligible salary costs: Contract Support, Welfare Assistance, HIP, Road
   maintenance
**FY03 amounts reflect correction and interest provided to Tribe during FY06

| Red Lake | 2006 |
|---|---|
| Amount Outstanding | 2,696 |
| Interest | 413 |
| **Total owed to Tribe** | **3,109** |

| Interest Period | Prompt Pay Rate | Interest | Cumulative P&I |
|---|---|---|---|
| 10/1/05-12/31/05 | 4.50% | 30.33 | 2,726.33 |
| 1/1/06-6/30/06 | 5.13% | 69.86 | 2,796.19 |
| 7/1/06-12/31/06 | 5.75% | 80.39 | 2,876.58 |
| 1/1/07-6/30/07 | 5.25% | 75.51 | 2,952.09 |
| 7/1/07-12/31/07 | 5.75% | 84.87 | 3,036.97 |
| 1/1/08-3/31/08 | 4.75% | 72.13 | 3,109.09 |
| Total | | 413.09 | |

<u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that on this 18th day of July, 2008, I caused to be placed

in the United States mail (first-class mail, postage prepaid) a copy of "DEFENDANTS' CROSS-

MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION

FOR SUMMARY JUDGMENT" addressed as follows:

> Philip Baker-Shenk, Esquire
> Holland & Knight LLP
> 2099 Pennsylvania Avenue, NW
> Washington, D.C.   20006
> Telephone :  (202) 955-3000


___  s/ Reginald T. Blades, Jr._____