IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
RED LAKE BAND OF CHIPPEWA INDIANS,        )
                                          )
         Plaintiff,                      )
                                          )
         v.                              )     Civil Action No.
                                          )     1:06CV01826 (CK-K)
UNITED STATES OF AMERICA, et al.,         )
                                          )
         Defendants.                     )
_____)

## DEFENDANTS' STATEMENT OF GENUINE ISSUES

     Pursuant to LCvR 7(h) and 56.1, the United States defendants respectfully, submit the

following statement of genuine issues in response to plaintiff's statement of facts.


Plaintiff's Fact No. 1:

     The Tribe is a federally recognized Indian tribe. (Answer, p. 1 at ¶ 1).

Defendants' Response:

     Agreed.


Plaintiff's Fact No. 2:

     Defendant Dirk Kempthorne is Secretary of the U.S. Department of the Interior (the

"Department") and has overall responsibility for administering the Department as well as

overseeing its constituent agencies, including the Bureau of Indian Affairs (BIA), and

managing certain Indian affairs and appropriations. (Answer, p. 2 at ¶ 2).

 Defendants' Response:

     Agreed.

Plaintiff's Fact No. 3:

      The Office of Self-Governance (the "OSG") is the office within the Department

      responsible for administering the Secretary's tribal self-governance program,

      including BIA programs. (Answer, p. 2 at ¶ 5).

Defendants' Response:

      Agreed.

Plaintiff's Fact No. 4:

      Kenneth Reinfeld at times relevant to the Complaint functioned as the Acting Director of

      the OSG and was responsible for executing the functions and duties of the  OSG.

      (Answer, p. 2 at ¶ 6).

Defendants' Response:

      Agree that for some of the relevant time Mr. Reinfeld was Acting Director, OSG.  Prior

to Mr. Reinfeld becoming Acting Director, William Sinclair was Director, OSG.  See. Pl. Ex. B

at 7.[1]

Plaintiff's Fact No. 5:

      On or about January 14, 1997, the Tribe and the United States entered into a Compact of

      Self-Governance ("Compact") pursuant to the Indian Self-Determination and Education

---

      [1]  "Pl. Ex." refers to the exhibits attached to plaintiff's brief in support of its motion for
summary judgment.

Assistance Act, 25 U.S.C § 450, et seq. (App. Ex. A).

Defendants' Response:

    Agreed.

Plaintiff's Fact No. 6:

    The purpose of the Compact is to transfer control to the Tribe over funding and

decision-making for certain federal programs, services, functions and activities as an

effective way to implement the federal policy of government-to-government relations

with Indian tribes. (App. Ex. A — Compact, Article I § 2(a)).

Defendants' Response:

    This is not a fact but a legal conclusion, plaintiff's characterization and interpretation of

the Compact, to which no response is required.

Plaintiff's Fact No. 7:

    Pursuant to Article II, Section 3 of the Compact, the Secretary of the Interior or an

authorized representative "shall provide to the Tribe the total amount specified in the

Annual Agreement incorporated by reference in [the Compact]." (App. Ex. A —

Compact, Article II § 3).

Defendants' Response:

    The full text of Article II, § 3 is as follows:

        Section 3 - - Funding Amount.  Subject only to the appropriation

        of funds by the Congress of the United States and section 403(g) of

Pub. L. 103-413, the Secretary or an authorized representative

shall provide to the Tribe the total amount specified in the Annual

Agreement incorporated by reference in Article VI, Section 2.

Plaintiff's Fact No. 8:

The Tribe used Department of Justice ("DOJ") and BIA grant funds to design two

detention facilities comprising parts of the Red Lake Law Enforcement Complex: a Phase

I facility housing medium and minimum security adults and juveniles, and a Phase III

facility housing minimum security juveniles in a rehabilitative setting.  (App. Ex. D —

Deposition Transcript of John N. Rever, July 20, 2007, pp. 29:5-30:5; Ex. F; Ex. G at

Grant Manager's Memorandum, Pt. I: Project Summary, p. 1 of 1, § 15; Ex. H).

Defendants' Response:

None of the citations to the record support plaintiff's description of the Phase III facility

as "housing minimum security juveniles in a rehabilitative setting."  Exhibit F and Exhibit H

describe the facility as a "work camp."  Defendants do not agree that Phase III is a detention

facility.  Nevertheless, defendants agree that DOJ and BIA provided grant funds for the design

and  construction of Phase I and Phase III of the correctional complex.

Plaintiff's Fact No. 9:

The Tribe subsequently constructed both the Phase I and Phase III facilities using DOJ

grant funds. (App. Ex. I — Deposition Transcript of Kenneth D. Reinfeld, Ph.D., August

21, 2007 ("Reinfeld Depo."), pp. 17:1-9, 19:11-20:2).

Defendants' Response:

Agreed.

Plaintiff's Fact No. 10:

On or about November 15, 2004, pursuant to the Compact, the Tribe and the United

States entered into a Multi-Year Funding Agreement ("Agreement") for 2005-2010 and

an attached "Self Governance 2005 Annual Funding Agreement -Reprogramming

Request" ("2005 Reprogramming Request") that set forth, by line item and program title,

the funds to be provided by the United States to the Tribe for 2005. (App. Ex. B; Ex.

1—Reinfeld Depo., pp. 36:14-17, 42:7-9).

Defendants' Response:

Agree that the parties entered into a Multi-Year Funding Agreement and the related

reprogramming request for 2005. Plaintiff's characterization that the reprogramming request

"set forth, by line item and program title, the funds to be provided by the United States to the

Tribe for 2005" is not a fact but a legal conclusion, plaintiff's interpretation of the agreement, to

which no response is required; to the extent it may be deemed a fact, defendants deny that it is a

complete description of the obligations associated with the agreement, including, for example,

the limitations upon funding subject to the availability of appropriations. See Pl. Ex. B at 4,

Section 11.

Plaintiff's Fact No. 11:

The Agreement became effective in 2005 and has a termination date of December 31,

2010. (Answer, p.3 at ¶ 12; App. Ex. B—Agreement, p.5 at § 21).

Defendants' Response:

Agreed.  The agreement, however, is amended annually by a reprogramming request.

See, _e.g._, Pl. Ex. L.


Plaintiff's Fact No. 12:

The Agreement provides for the Tribe to assume responsibility for various programs,

functions, services, and activities specified in the Agreement and the 2005

Reprogramming Request. (App. Ex. B — Agreement, p. 1 at § 2).

Defendants' Response:

This is not a fact but a legal conclusion, plaintiff's characterization and interpretation of

the agreement, to which no response is required.


Plaintiff's Fact No. 13:

The Agreement further provides that "the Secretary [of the Interior] shall make available

to the Tribe the total amount of funds negotiated as they are identified in the attached

REPROGRAMMING REQUEST for Calendar Year 2005." (App. Ex. B - Agreement, p.

2 at § 5).

Defendants' Response:

The full text of the cited section of the agreement includes the introductory condition,

"Subject only to Congressional action and the terms of this Agreement."

Plaintiff's Fact No. 14:

The 2005 Reprogramming Request set forth, by line item and program title, the funds   to be provided to the Tribe for 2005. (App. Ex. B — 2005 Reprogramming Request).

Defendants' Response:

Plaintiff's characterization that the reprogramming request "set forth, by line item and program title, the funds to be provided to the Tribe for 2005" is not a fact but a legal conclusion, plaintiff's interpretation of the agreement, to which no response is required; to the extent it may be deemed a fact, defendants deny that it is a complete description of the obligations associated with the agreement, including, for example, the limitations upon funding subject to the availability of appropriations.  See Pl. Ex. B at 4, Section 11.

Plaintiff's Fact No. 15:

Funding for both the adult and the juvenile detention facilities was addressed in line item 177 of the 2005 Reprogramming Request, which covered "Law Enforcement — NON TPA" and specified that a total of $4,582,036 would be provided to the Tribe, including $1,218,482 for funding operations of the Tribe's juvenile detention facility in CY 2005. (App. Ex. B — 2005 Reprogramming Request, p. 2; Ex. M — Declaration of David Conner, ¶ 4).

Defendants' Response:

This is not a fact but a legal conclusion, plaintiff's characterization and interpretation of the agreement, to which no response is required.  Mr. Conner's declaration to the same effect

does not convert a legal interpretation into a fact. The 2005 reprogramming request does not establish what plaintiff contends.

Plaintiff's Fact No. 16:

A footnote to line item 177— footnote 25— provided that:

The Assistant Secretary — Indian Affairs and the Tribe agree that this amount represents original and historical base-transferred amounts of $1,413,500 from TPA Law Enforcement — Agency, $5,283 from TPA Law Enforcement Area, and $18,799 from Law Enforcement Area, in addition to $95,000 in base eligible funding from the FY 1999 Law Enforcement Initiative, $94,000 in base eligible funding from the FY 2000 Law Enforcement Initiative, and $224,000 in base eligible funding from the 2001 Law Enforcement Initiative. The Assistant Secretary — Indian Affairs agrees to do everything in his power to ensure these amounts are not reduced, and that Self-Governance tribes are treated on an equal footing with BIA Law Enforcement with regard to any additional Law Enforcement funds distributions. The Red Lake Band requests an additional $1 million for operation of Law Enforcement. Any new law enforcement program funding is to be determined and added to the AFA [the Agreement] based on national distribution methodology developed by the BIA. The OSG and BIA also agree that it [sic] will keep the Tribe closely informed about all activities pertaining to Public Safety and Justice, so that the Tribe can participate to the fullest degree. The OSG and BIA agree that the $1.555 million obtained in FY 2002 for detention funding is for staffing the Tribes [sic] new [adult] detention facility, and the Tribe cannot staff this facility for just one year. The BIA agrees to assist the Tribe in obtaining $1,218,482 for operations funding for the Tribes [sic] juvenile correction facility in CY 2005, and to request this amount in the next Presidents [sic] budget. With regard to any new initiatives pertaining to Homeland Security, it is mutually agreed that Red Lake Law Enforcement shall be eligible to participate at the same level as BIA Law Enforcement in any new programs and funding increases. (emphasis added). (App. Ex. B — 2005 Reprogramming Request, pp. 5-6 n. 25).

Defendants' Response:

Agreed.

Plaintiff's Fact No. 17:

The Government did not provide the Tribe $1,218,482 in program operations funding for the juvenile facility in CY 2005. (App. Ex. K — Deposition Transcript of W. Patrick Ragsdale, July 11, 2007 ("Ragsdale Depo."), p. 39:1-8; Ex. I — Reinfeld Depo., p. 41:1-5; Ex. E — Deposition Transcript of Christopher Chaney, August 30, 2007 ("Cheney Depo."), pp. 71:2-8, 80:9-14).

Defendants' Response:

Agreed.


Plaintiff's Fact No. 18:

The head of the BIA's Office of Justice Services, Christopher Chaney, testified that the BIA did not provide any assistance to the Tribe in obtaining staffing and program operations funding for the facility in CY 2005. (App. Ex. E — Chaney Depo., p. 72:5-14).

Defendants' Response:

Agreed.


Plaintiff's Fact No. 19:

Patrick Ragsdale, Director of the BIA, testified that he is not aware of any efforts by the BIA to obtain staffing and program operations funding for the Tribe's juvenile facility for CY 2005. (App. Ex. K — Ragsdale Depo., pp. 39:9-40:22).

Defendants' Response:

      Agreed.


Plaintiff's Fact No. 20:

      Kenneth Reinfeld, the Acting Director of the OSG and the person who executed the 2005

Reprogramming Request on behalf of the United States, testified that he personally did

not make any efforts to obtain staffing and program operations funding for the Tribe's

juvenile facility for CY 2005. (App. Ex. I — Reinfeld Depo., p. 41:6-12).

Defendants' Response:

      Agreed.


Plaintiff's Fact No. 21:

      At the time the 2005 Reprogramming Request was negotiated and executed, in the fall of

2004, the next President's budget was for Fiscal Year 2006. The President's budget for

FY 2006 was submitted to Congress on February 7, 2005. (App. Ex. P; App. Ex. Q, p. 1).

Defendants' Response:

      Denied.  The effective date of the agreement was "90 days after the submission of this

signed agreement to the Congress."  Pl. Ex. B at 6, Section 21.  The agreement was singed by

William Sinclair, Director OSG, on November 15, 2004.  Id. at 7.  The earliest effective date,

therefore, would have been February 13, 2005.

Plaintiff's Fact No. 22:

    The Government did not include a request for $1,218,482 for the Tribe's juvenile facility in the President's budget for FY 2006. (App. Ex. E — Cheney Depo., p. 80:3-8; App. Ex. O - Defendants' Responses to Plaintiffs First Set of Interrogatories ("First Interrogatory Responses"), p. 5-6 at Response to Interrogatory No. 4).

Defendants' Response:

    Agreed.

Plaintiff's Fact No. 23:

    The Government did not include a request for $1,218,482 for the Tribe's juvenile facility in the President's budget for FY 2007. (App. Ex. E — Cheney Depo., p. 80:3-8; App. Ex. O - First Interrogatory Responses, p. 5-6 at Response to Interrogatory No. 4).

Defendants' Response:

    Agreed.

Plaintiff's Fact No. 24:

    In January 2006 the Tribe and the Government completed bilateral negotiations on a Fourth Amendment to the Multi-Year Funding Agreement for 2005-2010 ("Fourth Amendment") and an associated "Self Governance 2006 Annual Funding Agreement - Reprogramming Request" ("2006 Reprogramming Request"). (App. Ex. L — Fourth Amendment and attached 2006 Reprogramming Request; Ex. M — Declaration of David Conner, ¶ 6).

Defendants' Response:

    Agreed.


Plaintiff's Fact No. 25:

    Line item 176 of this 2006 Reprogramming Request addressed "Law Enforcement —

NON TPA" and specified that a total of $4,554,258 would be provided to the Tribe.

(App. Ex. L — 2006 Reprogramming Request, p. 2).

Defendants' Response:

    Plaintiff's characterization that the reprogramming request "specified that a total of

$4,554,258 would be provided to the Tribe" is not a fact but a legal conclusion, plaintiff's

interpretation of the agreement, to which no response is required; to the extent it may deemed a

fact, defendants deny that it is a complete description of the obligations associated with the

agreement, including, for example, the limitations upon funding subject to the availability of

appropriations.  See Pl. Ex. L at 4, Section 11.


Plaintiff's Fact No. 26:

    The same footnote 25 was appended to this line item as in the 2005 Reprogramming

Request. This footnote was identical to the previous one except for two changes. First,

the sentence regarding funding for the juvenile correction facility was updated to state

that "The BIA agrees to assist the Tribe in obtaining $1,218,482 for operations funding

for the Tribes [sic] juvenile correction facility in CY 2006, and further agrees to request

$1,599,225 for operation of the Tribes [sic] juvenile corrections facility in the Presidents

[sic] FY 2007 budget." Second, a new final sentence was added to the footnote which

provided that "The BIA and OSG agree that the Red Lake Reservation be designated as a

high crime area, and that the Tribe shall receive extraordinary consideration for high

crimes area funding, in light of the March 21, 2005 shooting incident at Red Lake High

School." (App. Ex. L — 2006 Reprogramming Request, p. 4 n. 25),

Defendants' Response:

Denied. The parties did not agree to the changes to which plaintiff refers. See Pl. Ex. L

at 11, n.25 margin note "These two sentences are not agreed to by the Secretary. KR 01/19/06."

In any event, the referenced footnote is immaterial to plaintiff's claims; no claim is based upon

this footnote.


Plaintiff's Fact No. 27:

The reference to "the March 21, 2005 shooting incident at Red Lake High School" in the

final sentence of footnote 25 referred to the highly-publicized incident, commonly

referred to as the "Red Lake High School massacre," in which a 16-year-old Red Lake

Indian shot and killed seven people on the Reservation school campus, comprising five

students, one teacher and an unarmed security guard, and wounded multiple others. The

shooting ended when the gunman exchanged fire with police, then retreated to a

classroom where he took his own life. The gunman had previously killed his paternal

grandfather and the grandfather's girlfriend. (Christopher Lee and Shankar Vedantam,

Minn. Rampage Leaves 10 Dead; Dozens are Shot on Reservation, Most at School;

Suspect, Grandfather Die, Washington Post, Mar. 22, 2005, at A1; Sylvia Moreno, Slain

<u>Guard Called a Hero for Actions at Minn. School</u>, Washington Post, Mar. 24, 2005, at

A1).

Defendants' Response:

As indicated above, in response to plaintiff's fact number 26, the sentence containing the

reference was not part of the agreement between the parties.  Moreover, the footnote involved is

immaterial to plaintiff's claim; no claim is based upon the footnote.


Plaintiff's Fact No. 28:

Pursuant to standard procedure, the Tribe's Chairman executed the Fourth Amendment to

the Agreement and the 2006 Reprogramming Request on January 19, 2006, after

negotiations were concluded, and then submitted them to the BIA for execution. (App.

Ex. M — Declaration of David Conner, ¶ 6).

Defendants' Response:

Agree that the Chairman signed the agreement on January 19, 2006.  See Pl.  Ex. L at 7.


Plaintiff's Fact No. 29:

Kenneth Reinfeld, the Acting Director of the OSG, executed the Fourth Amendment to

the Agreement and the 2006 Reprogramming Request on or about January 23, 2006, and

sent them back to the Tribe. (App. Ex. L — Fourth Amendment, p. 6, and 2006

Reprogramming Request, p.2; Ex. I—Reinfeld Depo., pp. 44:11-15, 49:5-7; Ex. M —

Declaration of David Conner, ¶ 8).

Defendants' Response:

    Agree that Mr. Reinfeld signed the agreement on January 23, 2006.  See Pl. Ex. L at 7.


Plaintiff's Fact No. 30:

    After receiving the 2006 Reprogramming Request from the Tribe, Mr. Reinfeld, the

Acting Director of the OSG, struck out by hand two sentences in footnote 25 and added

the hand-written notation that "These sentences are not agreed to by the Secretary." The

two sentences were the new final sentence to the footnote and the updated sentence

stating that "The BIA agrees to assist the Tribe in obtaining $1,218,482 for operations

funding for the Tribes [sic] juvenile correction facility in CY 2006, and further agrees to

request $1,599,225 for operation of the Tribes [sic] juvenile corrections facility in the

Presidents [sic] FY 2007 budget." (App. Ex. L — 2006 Reprogramming Request, p. 4 n.

25; Ex. 1— Reinfeld Depo., pp. 36:14-17, 38:22-39:9, 44:11-15,45:9-46:15; Ex. M—

Declaration of David Conner, ¶ 8).

Defendants' Response:

    Agreed.


Plaintiff's Fact No. 31:

    The Tribe never agreed to the unilateral changes to footnote 25 to the 2006

Reprogramming Request made by Mr. Reinfeld. (App. Ex. M — Declaration of David

Conner, ¶ 9).

Defendants' Response:

      Deny.  Red Lake did not reject the agreement as signed by Mr. Reinfeld with the two

sentences deleted.  Nevertheless, agree that the parties did not agree


Plaintiff's Fact No. 32:

      The Department's budgets for FY 2005 and FY 2006 included significant, general

      funding increases for staffing and operations of Indian country detention facilities. (App.

      Ex. E—Chaney Depo., pp. 47:4-15, 48:12-17).

Defendants' Response:

      Agree that Mr. Chaney testified that "[t]here was [sic] significant increases in '05 and

'06, to the best of my recollection."  Pl. Ex. E – Chaney depo. p. 48, ll. 14-15.


Plaintiff's Fact No. 33:

      Congress appropriated $180,063,000 for BIA's Public Safety and Justice law

      enforcement and detention programs for FY 2005 (including $2,328,000 for the Indian

      Police Academy), an increase of $7,568,000 over what was appropriated for the same

      purposes in FY 2004. (App. Ex. R).

Defendants' Response:

      Agreed.


Plaintiff's Fact No.34:

      The President's budget for FY 2006 requested $192,265,000 (including $2,378,000 for

the Indian Police Academy) for BIA Public Safety and Justice law enforcement programs,

including funding for the operation of detention services, programs, and facilities. (App. Ex. R).

Defendants' Response:

> Agreed.


Plaintiff's Fact No. 35:

> Congress increased this FY 2006 funding by an additional $1.1 million, appropriating a
>
> total of $193,377,000, an increase of $13,314,000 over what was appropriated for the
>
> same purposes in FY 2005. (App. Ex. S).

Defendants' Response:

> Agreed.


Plaintiff's Fact No. 36:

> A lump sum of $201,620,000 was requested in the President's budget for FY 2007 for
>
> BIA Public Safety and Justice law enforcement programs, including funding for the
>
> operation of detention services, programs, and facilities. (App. Ex. S).

Defendants' Response:

> Agreed.


Plaintiff's Fact No. 37:

> Congress increased the funding over and above this requested amount, appropriating a
>
> total of $204,454,000 for FY 2007, an increase of $11,077,000 over what was

appropriated for the same purposes in FY 2006. (App. Ex. T).

Defendants' Response:

      Agreed.


Plaintiff's Fact No. 38:

      On February 17, 2006, counsel for the Tribe submitted to Mr. Reinfeld at the OSG a

certified claim for damages arising from the Department's breaches of the Agreement,

namely failing to obtain or assist the Tribe in obtaining $1,218,482 in programs operation

funding for the Tribe's juvenile corrections facility in CY 2005 and failing to include or

request $1,218,482 in programs operation funding for the facility in the FY 2006 budget.

(Answer, p. 5 at ¶¶ 26-27; App. Ex. J — Defendants' Responses to Plaintiffs First

Requests for Admission ("First RFA Response"), pp. 15-16 at ¶¶ 24-25).

Defendants' Response:

      Agree that counsel submitted a letter dated February 17, 2006; the remainder of this

paragraph is not a fact but plaintiff's characterization of the letter and legal conclusions, to

which no response is required; to the extent the assertions may be deemed factual assertions,

defendants deny them, particularly the assertion that defendants breached the agreement.


Plaintiff's Fact No. 39:

      BIA Director W. Patrick Ragsdale responded to this claim in a letter dated June 15, 2006,

stating that "It is not possible to provide this funding without decreasing allocations for

other law enforcement operations nationwide which would adversely impact other tribes.

However, in compliance with the [Agreement], I am instructing OLES to make a renewed effort to assist the Tribe in finding sources for operational funding ($1,218,482) for the Tribe's new juvenile facility." (App. Ex. N, p. 2).

Defendants' Response:

Agreed that plaintiff has accurately quoted a portion of Mr. Ragsdale's letter.

Plaintiff's Fact No. 40:

No federal funding for the Tribe's juvenile facility was ever provided for CY 2005, FY 2006, or FY 2007. (App. Ex. I — Reinfeld Depo., pp. 41:1-5, 43:13-19; Ex. Chaney Depo., pp. 80:9-17, 89:3-13; Ex. M — Declaration of David Conner, ¶ 5).

Defendants' Response:

Deny. Operation and maintenance funding was provided.

Plaintiff's Fact No. 41:

Section 17 of the Agreement and of the Fourth Amendment provides:

**Additional Funds -** If the Midwest Region Office of the BIA receives notice of the availability <u>any</u> additional funding in any fiscal year for any purpose, including any unspent funds, that the Tribe is eligible to apply for or receive, then it must notify the Tribe as soon as possible about such funds so that the Tribe may access or apply for those funds. The Midwest Region Office <u>commits</u> to keeping the Tribe informed of the existence of funding immediately upon learning of its existence.

(emphasis in original). (App. Ex. B — Agreement, p. 4).

Defendants' Response:

      Agreed.


Plaintiff's Fact No. 42:

      Article IV, Section 4 of the Compact states, "The Tribe shall be eligible for new

programs, activities, services and functions on the same basis as other tribes and the

Secretary or his authorized representative shall advise the Tribe of the funding available

for such programs." (App. Ex. A — Compact, p. 12).

Defendants' Response:

      Agreed.


Plaintiff's Fact No. 43:

      In September 2006, the BIA Midwest Regional Office received and distributed

approximately $200,000 in FY 2006 year-end funds to five of the thirty-five Indian tribes

and tribal organizations within the BIA Midwest Region. (Answer, p. 6 at App. Ex. O—

First Interrogatory Responses, p. 9-10 at Response to Interrogatory 7).

Defendants' Response:

      Deny.  As indicated in defendants' response to interrogatory number 7, the Midwest

Region Office distributed a total of $85,000 in FY 2006 year end funds.  Pl. Ex. O at 9-10.


Plaintiff's Fact No. 44:

      The Tribe was not informed about the availability of these funds until weeks after they

were distributed. (Answer, p. 6 at ¶ 37).

Defendants' Response:

Agreed.


Plaintiff's Fact No. 45:

The Tribe did not receive any of these year-end funds. (App. Ex. J — First RFA

Responses, p. 21 at ¶ 37; Ex. K—Ragsdale Depo., pp. 63:6-14, 65:6-10).

Defendants' Response:

Agreed.


Plaintiff's Fact No. 46:

One month after the BIA distributed these year-end funds, on October 18, 2006, the Tribe

was informed by the BIA Midwest Regional Office that the BIA Central Office had made

a decision to distribute the year-end funds only to tribes having contracts under Title I of

P.L. 93-638 (codified at 25 U.S. §§ 450f), and not to tribes — like the Tribe — having

contracts under Title IV of P.L. 93-63 8 (codified at 25 U.S. §§ 458cc).  (Answer, p. 7 at

¶ 39).

Defendants' Response:

Agreed.


Plaintiff's Fact No. 47:

 BIA Director Patrick Ragsdale testified that he does not dispute that self-governance

tribes — like the Tribe — were eligible to receive the end-of-year money. (App. Ex. K
— Ragsdale Depo., pp. 63 :6-14, 64:11-19).

Defendants' Response:

    Agreed.


Plaintiff's Fact No. 48:

    Mr. Ragsdale testified that "Self-governance tribes were eligible for funds, but my
understanding is is [sic] that the money had to be obligated within a very short period of
time and the Bureau's mechanism through the Office of Self-Governance could not
mechanically do that. So the self-governance tribes were excluded from that — from that
potential allocation." (App. Ex. K— Ragsdale Depo., p. 64:1-7).

Defendants' Response:

    Agreed.


Plaintiff's Fact No. 49:

    Footnote 15 to the 2006 Reprogramming Request addresses the issue of pay cost
adjustments for Tribal employees and provides in relevant part:

> The BIA will make every effort to treat Red Lake Tribal employees the
> same as all other Tribal and Federal employees for purposes of pay cost
> adjustments in FY 2006. ... Further, the BIA and OSG agree to provide to
> the Tribe by April 1, 2006, a detailed Pay Cost analysis for the years
> 2003-2006, showing what the Tribe was eligible to receive each year
> based upon Pay Cost data the Tribe provided, the actual amount received,
> and the shortfall or unfunded amount. This analysis will include Law
> Enforcement. The analysis will separately show the total amounts received
> each year for Self Governance tribes, contracting tribes, and BIA
> programs, as well as the total amounts the BIA was eligible to receive for

these programs based upon data it compiled. The above information has been requested by the Tribe to verify whether Red Lake, other Self Governance tribes, contracting tribes, and BIA programs were treated the same way with regard to the distribution of Pay Costs for the years 2003-2006.

(emphasis added).  (App, Ex, L — 2006 Reprogramming Request, p. 3 n. 15).

Defendants' Response:

Agreed.

Plaintiff's Fact No. 50:

The Department failed to provide a detailed Pay Cost analysis to the Tribe by April 1, 2006, and has yet to provide it to the Tribe. (Answer, p. 8 at ¶ 47; App. Ex. I — Reinfeld Depo., pp. 70:9-71:13; Ex. M — Declaration of David Conner, ¶ 10).

Defendants' Response:

Agreed.

Plaintiff's Fact No. 51:

Defendants have stated that, upon review of the estimated pay cost increases effective in FY 2006, the BIA believes that an error was made and that the Tribe will be owed an additional distribution. (App. Ex. O— First Interrogatory Responses, pp. 10-11 at Response to Interrogatory No. 8).

Defendants' Response:

Agreed.

Plaintiff's Fact No. 52:

> The Defendants stated in their discovery responses dated October 24, 2007, that the
>
> Department "anticipates that it will be able to provide the determination [of the amount
>
> of the additional distribution] and the additional funds within 60 days[,]" i.e. by
>
> December 24, 2007. (App. Ex. O—First Interrogatory Responses, pp. 10-11 at Response
>
> to Interrogatory No. 8).

Defendants' Response:

> Agreed.

<div style="margin-left: 40%;">

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General


s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

</div>

| | |
|---|---|
| Of Counsel: | |
| JEFFREY A. TAYLOR | s/ Reginald T. Blades, Jr. |
| United States Attorney | REGINALD T. BLADES, Jr. |
| D.C. Bar #498610 | Senior Trial Counsel |
| RUDOLPH CONTRERAS | Louisiana Bar #03128 |
| Assistant United States Attorney | Department of Justice |
| D.C. Bar #434122 | Civil Division |
| KEITH MORGAN | Commercial Litigation Branch |
| Deputy Chief, Civil | 1100 L Street, N.W. |
| D.C. Bar#422655 | Room 12130 |
| Judiciary Center Building | Washington, D.C. 20005 |
| 555 Fourth St., N.W. | Telephone:  (202) 616-8257 |
| Room E4224 | Facsimile: (202) 307-0972 |
| Washington, D.C. 20530 | reginald.blades@usdoj.gov |
| (202) 307-0372. | |
| | |
| July 18, 2008 | Attorneys for Defendants |

<u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that on this 18th day of July, 2008, I caused to be placed

in the United States mail (first-class mail, postage prepaid) a copy of "DEFENDANTS'

STATEMENT OF GENUINE ISSUES" addressed as follows:

> Philip Baker-Shenk, Esquire
> Holland & Knight LLP
> 2099 Pennsylvania Avenue, NW
> Washington, D.C.   20006
> Telephone :  (202) 955-3000

  s/ Reginald T. Blades, Jr.