UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RED LAKE BAND OF CHIPPEWA    )
INDIANS,                     )
                             )
        Plaintiff,           )
                             )
    v.                       )   Civil Action No. 1:06CV01826 (CKK)
                             )
UNITED STATES OF AMERICA, et al., )
                             )
        Defendants           )
                             )

**REPLY BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Red Lake Band of Chippewa Indians ("Tribe") submits this Reply Brief in Support of its Motion for Summary Judgment and Opposition to Defendants' Cross-Motion for Summary Judgment.

## INTRODUCTION

The Government takes the position that the Department of the Interior ("Department") can disregard the contractual commitments it made to the Tribe in a Compact of Self-Governance and associated Multi-Year Funding Agreement pursuant to the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450, et seq. ("ISDEAA" or the "Act"). The Government claims the Department's promises are not binding and/or that this Court lacks power to enforce them. These claims ignore the plain meaning of the Government's contract with the Tribe and seek to evade the Supreme Court's recent and pointed ruling that promises made in contracts to Indian tribes under the ISDEAA are every bit as binding as other contractual

promises. See Cherokee Nation of Oklahoma v. Leavitt, 543 U.S. 631, 639 (2005). All of these claims are meritless.

## ARGUMENT

I. **The Tribe Is Entitled To Damages For the Department's Failure To Provide Funding For Calendar Year 2005 and Fiscal Year 2006**

    A.    **The Department Made Binding Funding Promises to the Tribe**

The Government's construction of the contract[1] between the parties is disingenuous and unpersuasive. Indeed, it contravenes all of the applicable case law and rules of construction.

First, the contract must be construed as a whole rather than focusing solely upon a single sentence in footnote 25. See Washington Metropolitan Area Transit Authority v. Mergentime Corp., 626 F.2d 959, 961 (D.C. Cir. 1980). Read as a whole, the contract provides, "Subject only to Congressional action and the terms of this Agreement, the Secretary [of the Interior] shall make available to the Tribe the total amount of funds negotiated as they are identified in the attached REPROGRAMMING REQUEST for Calendar Year 2005." (App. Ex. B § 5). The Reprogramming Request, in turn, specified that a total of $4,582,036 would be provided to the Tribe in Calendar Year 2005 for "Law Enforcement – NON TPA," including $1,218,482 for operating the Tribe's new juvenile correction facility. The footnote to this commitment added that "[t]he BIA agrees to assist the Tribe in obtaining $1,218,482 for operations funding for the Tribes [sic] juvenile correction facility in CY 2005, and to request this amount in the next Presidents [sic] budget." Thus, the Department committed to "make available" a total of $1,218,482 for operating the juvenile facility in CY 2005, with the footnote adding that it would

---

[1] The contract at issue in this case consists of the Multi-Year Funding Agreement ("Agreement") for 2005-2010 and the Annual Funding Agreement – Reprogramming Requests for 2005 and 2006, respectively. (Appendix of Exhibits ("App. Ex.") B, L).

2

"assist the Tribe in obtaining" this amount for CY 2005 and request this same amount in the next President's budget.[2]

It is futile to contend, as the Government does, that the language of the footnote is a mere "statement of intention" that is not binding on the Department. Def. Brf. at 8-9. This language (not to mention the other contractual language) expresses an agreement between the parties down to the last dollar, not a mere unilateral prediction or statement of intention.

The recitation in the footnote that the Department would "assist the Tribe in obtaining" $1,218,482 for operating the juvenile facility in CY 2005 does not qualify, explicitly or implicitly, the Department's obligation in the body of the contract to "make available" a total of $4,582,036 for law enforcement in CY 2005, including $1,218,482 for the juvenile facility. To treat the footnote as some sort of amorphous, undefined limitation on the Department's funding commitment would allow it to escape its obligations "by the mere addition of vague, exculpatory language in the [footnote]." H.B. Mac, Inc. v. United States, 36 Fed.Cl. 793, 825 (1996). Such a construction would also violate the congressional mandate that the contract must be liberally construed for the benefit of the Tribe. See 25 U.S.C. § 4501.[3]

Certainly, the language used in the footnote does not negate the Department's commitment to make the funds available. A footnote cannot be construed in a manner that would read text out of a contract. See Segar v. Mukasey, 508 F.3d 16, 24 (D.C. Cir. 2007). Moreover, a government contract must be construed so as to avoid rendering the Government's promise illusory. See Consumers Energy Co. v. United States, 65 Fed.Cl. 364, 372 (2005);

---

[2] Contrary to the Government's assertion, the footnote did not indicate that the Department would assist the Tribe in obtaining the CY 2005 funding "from alternative sources" rather than the Department, itself. No such "alternative sources" are mentioned anywhere in the contract, and the very purpose of the contract was to delineate the funds that the Department would make available to the Tribe.

[3] See also 25 C.F.R. § 900.3(a)(5) in which the Department recognizes that "Congress has ... declared that each provision of the Act and each provision of contracts entered into thereunder shall be liberally construed for the benefit of the tribes ...."

3

Envirocare of Utah, Inc. v. United States, 44 Fed.Cl. 474, 481 (1999). A contract will not be interpreted so as to place a contractor at the mere whim or mercy of a government agency. S.A. Healy Co. v. United States, 576 F.2d 299, 305 (Ct.Cl. 1978).

Even if the footnote is construed to qualify somewhat the Department's obligation to provide the agreed funding of $1,218,482, the Department was obliged at least to make its best efforts to obtain the specified funding for the Tribe. The United States is subject to an implied covenant of good faith and fair dealing when it enters into contracts. First Nationwide Bank v. United States, 431 F.3d 1342, 1349 (Fed.Cir. 2005). Good faith requires a party to make its best efforts to perform the contract. See Hughes Communications Galaxy, Inc. v. United States, 47 Fed.Cl. 236, 239 (2000).[4]

There is no evidence that the Department made any efforts – much less its best efforts -- to obtain the agreed funding for the Tribe. The Government attempts to excuse its inaction by arguing that the Department's only obligation was to "assist" the Tribe, and that the Tribe did not make any effort to obtain these funds which the Department could have assisted. But conditions precedent are disfavored by the courts. See Marsa v. Metrobank for Savings, F.S.B., 825 F.Supp. 658, 664 (D.N.J. 1993) (collecting cases). Courts do not construe contract provisions to create conditions precedent unless required to do so by plain, unambiguous language or by necessary implication. BJC Health System v. Columbia Cas. Co., 478 F.3d 908, 913 (8th Cir. 2007). In this case, there is nothing in the contract that indicates the Tribe was required to make any further efforts to obtain the funding in issue. To the contrary, the contractual language indicates that the Tribe had done all that it was supposed to do with respect to seeking the funding and that the Department would take it from there. (This is true regardless of whether the

---

[4] Indeed, one method of rehabilitating an otherwise illusory contract is to infer a requirement of good faith, due diligence, or reasonableness. Envirocare of Utah, Inc. v. United States, 44 Fed.Cl. at 481.

4

Department's commitment is construed as an unqualified promise to provide the funding or, instead, as a promise to make its best efforts to do so).

Accordingly, the Department made and breached an enforceable promise with respect to providing CY 2005 funding for the Tribe's juvenile facility. The Tribe is entitled to recover damages for this breach of contract.

Likewise, the Department made and breached its promise, made in the footnote, to request in the next President's budget an additional $1,218,482 for operating the Tribe's juvenile facility. This promise was not conditional or qualified in any way.

### B. The Department Had Authority to Promise That a Budget Request Would Be Made for the Tribe

Since the Department's unfulfilled promise to request funding for the Tribe in the next President's budget was unambiguous and unconditional, the Government retreats to the argument that the promise was not binding because the individuals who made this promise lacked authority to do so. This argument is also wrong.

The contract was executed on behalf of the United States by the Director of the Office of Self-Governance (the "OSG"), which is responsible for administering the tribal self-governance program for the Department. The Director is the officer in charge of all the Department's agreements under Title IV of ISDEAA. There is no question that he could have simply committed the Department to provide the Tribe $1,218,482 in Fiscal Year 2006 for operating its juvenile facility. Yet the Government contends nonsensically that he could not make the lesser commitment that the Department would request this amount for the Tribe in the next budget. Moreover, the Government's argument boils down to the contention that this officer either was

5

incompetent – because he didn't know the limits of his authority – or, worse still, that he was duplicitous and promised the Tribe something he knew he could not deliver.[5]

In fact, the Department had full authority to request the money for the Tribe in the next President's budget. As part of the budget process, each agency prepares and submits its budget request. 31 U.S.C. § 1108(b)(1). After the Office of Management and Budget ("OMB") conducts an initial review of agency budget submissions, it adjusts them and sends them back to the agencies in a process known as "passback." Agencies then may appeal budget decisions to OMB and the President. In most cases OMB and the agency head resolve such issues and, if not, work together to present them to the President for decision. See OMB Circular No. A-11, Section 10, p. 4. Thus, the Department certainly could request that the funding for the Tribe be included in the President's budget that is submitted to Congress, and it had strong ability to influence whether the funding would be included in the budget in one form or another.

The Government's "lack of authority" argument here has been made before and was succinctly dispatched by the Federal Circuit in the following terms:

> When the contracting officer administers a contract with which the officer is charged, the promises and representations made by the officer, when within the scope of the subject matter of the contract can not be avoided by simply disclaiming the contracting officer's authority when the contract reaches litigation.
>
> * * *
>
> When the actions of the contracting officer are within the authority that pertains to the subject matter of the contract, and no statute or regulations limits that authority ... the agency bears the burden of coming forward with evidence of lack of authority for the actions of the contracting officer. This burden is not met simply by attorney allegation in a litigation context.

---

[5] The Department's own regulations require that, when a contract under the ISDEAA is negotiated, the lead negotiators for the tribe and the Department must be authorized to negotiate on behalf of their governments and involve all necessary persons in the negotiation process. 25 C.F.R. § 1000.175.

6

LDG Timber Enterprises, Inc. v. Glickman, 114 F.3d 1140, 1143 (Fed. Cir. 1997). In this case, the Government has failed to adduce any evidence that the Director of the OSG lacked the authority to promise the Tribe that the Department would request specified funding for the Tribe in the President's budget. Accordingly, the Government's "lack of authority" argument fails.

### C. The Department Has Not Established That It Lacked Sufficient Appropriations to Fulfill Its Obligation to the Tribe

The Government next argues that the Department was not obligated to provide the funding in issue by virtue of 25 U.S.C. § 450j-1(b) because it lacked sufficient appropriations and was not required to reduce funding for other tribes.[6] Defs. Brf. at 12-14. This argument flies in the face of the Supreme Court's decision in Cherokee Nation of Oklahoma v. Leavitt, 543 U.S. 631 (2005), which rejected the Government's contention that this statutory language renders nonbinding the funding promises made in ISDEAA contracts.

So long as Congress has appropriated sufficient, legally unrestricted funds to pay the contract at issue, an agency cannot back out of its promise to pay, even if its total lump-sum appropriation is insufficient to pay *all* the contracts the agency has made. Cherokee Nation of Oklahoma v. Leavitt, 543 U.S. at 637. The burden is on the Government to prove that it lacked the necessary funds to meet its obligation to the Tribe. See Thompson v. Cherokee Nation of Oklahoma, 334 F.3d 1075, 1083-84, 1093-94 (Fed. Cir. 2003), aff'd, 543 U.S. 631 (2005); Shoshone-Bannock Tribes of Fort Hall Reservation v. Shalala, 999 F.Supp. 1395, 1396-97 (D. Or. 1998). In this case, the Government has not come close to satisfying this burden. The self-serving, conclusory letter of W. Patrick Ragsdale, then Director of the Bureau of Indian Affairs

---

[6] It should be noted that this argument applies only to the Department's breach of its promise to provide $1,218,482 for operating the Tribe's juvenile correction facility in CY 2005; it is inapplicable to the Department's breach of its promise to request the same amount in the next President's budget.

7

("BIA"), dated June 15, 2006 (App. Ex. N), is wholly inadequate to do so. See Thompson v. Cherokee Nation of Oklahoma, supra.

Indeed, the Government does not really attempt to satisfy this burden.[7] Instead, it argues that the Supreme Court's decision in Cherokee Nation of Oklahoma v. Leavitt is inapposite here because the Department never made a promise to pay in the first place. This attempted distinction is unpersuasive. As we have shown in our preceding analysis, the Department made and breached a binding promise to the Tribe. The Government cannot avoid the consequences of its breach of contract by the simple expedient of asserting that, in the Department's judgment, the available funding was inadequate because of its competing obligations to other tribes. "The Secretary d[oes] not have the discretion to breach his contracts with [a tribe]." Thompson v. Cherokee Nation of Oklahoma, 334 F.3d at 1088.

### D. The Tribe Is Entitled to Damages

Finally, the Government attempts to avoid the consequences of the Department's breaches of its funding commitments by arguing that the Tribe has not demonstrated any damage. The Government asserts, without benefit of any authority, that the Tribe could not have possessed a reasonable expectation of receiving any particular amount of money or any amount at all. This is, essentially, a reprise of its failed arguments that the Department did not make any binding commitments in the first place.

As the Tribe noted in its opening brief, "[c]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as

---

[7] There is no reason to believe that the Government could satisfy this burden. It is undisputed that Congress appropriated $180,063,000 for BIA's Public Safety and Justice law enforcement and detention programs for FY 2005, an increase of $7,568,000 over what was appropriated for the same purposes in FY 2004. Defs. Statement of Genuine Issues, Response to Plaintiff's Fact No. 33, at 16.

8

he would have been in had the contract been performed." Restatement (Second) of Contracts § 347, cmt. a (1981). If the Court concludes that footnote 25 to the contract does not qualify the Department's commitment to "make available" a total of $4,582,036 for law enforcement in CY 2005, including $1,218,482 for operating the Tribe's juvenile facility, then the appropriate quantum of damages plainly is $1,218,482.[8]

If the Court concludes instead that the footnote transforms the Department's promise into a "best efforts" commitment, the appropriate quantum of damages still is $1,218,482. When a defendant breaches a "best efforts" obligation, a damages award can be based on the quantity of revenue that plaintiff reasonably anticipated that the defendant's best efforts would have produced. See Lexington Products Ltd. v. B.D. Communications, Inc., 677 F.2d 251, 253 (2d Cir. 1982). Here, the Tribe reasonably anticipated that the Government's best efforts would result in obtaining the promised amount of funding. As noted above, Congress had significantly increased funding for these sorts of programs for FY 2005 and appropriated a lump sum total of $180,063,000 from which the Department could have funded the $1,218,482 promised to the Tribe. The Government has not offered any evidence that its best efforts to obtain this funding for the Tribe would have yielded a lesser amount than the promised $1,218,482. See Fleming Companies, Inc. v. Krist Oil Co., 324 F.Supp.2d 933, 948-49 (W.D. Wis. 2004) (defendant cannot avoid summary judgment on damages where it does not adduce evidence containing specific facts showing that there is a genuine issue with respect to the amount). Thus, for CY 2005, the Tribe is entitled to damages in the amount of $1,218,482, plus interest.

Likewise, the appropriate measure of damages for the Department's breach of its promise to make a budget request for an additional $1,218,482 for the Tribe is the amount of money that

---

[8] In addition, the Tribe is entitled to receive interest on its damages, calculated from February 17, 2006. 41 U.S.C. § 611.

9

would place the Tribe in as good a position as it would have been in had the promise been performed. The undisputed evidence plainly establishes that, had this funding been requested in the next President's budget, as promised, in all likelihood the money would have been appropriated by Congress. Not only did Congress appropriate all the lump sum funding for Indian law enforcement requested in the President's FY 2006 budget ($192,265,000) but it increased that amount by an additional $1.1 million. Defs. Statement of Genuine Issues, Responses to Plaintiff's Fact No. 34-35, at 16-17.

The Government has not offered any evidence that the promised request of $1,218,482 for the Tribe could not have been included as part of the $192,265,000 that was requested – it has not demonstrated, for example, that all of those funds were contractually obligated to other tribes. Nor has the Government adduced any evidence that the Department could not have increased its total request by $1,218,482. Nor has the Government offered any evidence that Congress would not have funded the $1,218,482 million request for the Tribe had it been made by the Department. To the contrary, as discussed above, the undisputed evidence indicates that Congress would have funded the Department's request if that request had included the promised funds for the Tribe. Therefore, for FY 2006, the Tribe is entitled to additional damages in the amount of $1,218,482, plus interest.

## II. The Tribe Is Entitled To Partial Summary Judgment Based On BIA's Failure To Notify the Tribe About 2006 End of Year Funds For Which It Was Eligible

It is undisputed that, in September 2006, the BIA Midwest Regional Office received and subsequently distributed thousands of dollars in end-of-fiscal-year funds to five other tribes and tribal organizations without advising the Tribe of their availability.[9] The Government concedes that (i) the Tribe was eligible for these funds, and (ii) the Department had promised the Tribe that

---

[9] The Government now asserts that a total of $85,000 was distributed, rather than approximately $200,000 as originally admitted by the Government in its Answer. Answer, ¶ 35 at 6.

10

the Midwest Regional Office would notify it immediately about the availability of any additional funding for which the Tribe was eligible so that the Tribe could access or apply for those funds. Yet, incredibly, the Government asserts that the Department did not breach its promise to notify the Tribe. The Tribe plainly is entitled to partial summary judgment on the issue of liability.

The Government argues that, in any event, the Tribe suffered no damages because the Department had not promised that the Tribe would receive any available funds and because the BIA central office had decreed that there was not time to include self-governance tribes (such as the Tribe) in the distribution before the funds expired. The Government cites the testimony of BIA Director Patrick Ragsdale that "the money had to be obligated within a very short period of time and the Bureau's mechanism through the Office of Self Governance could not mechanically do that." Defs. Brf. at 15. But this self-serving testimony asserting ultimate or conclusory facts is insufficient to support a motion for summary judgment. See Galindo v. Precision American Corp., 754 F.2d 1212, 1216 (5th Cir. 1985).

Contrary to the Government's suggestion, the BIA's supposed "determination" that there was insufficient time to include self-governance tribes in the distribution is not dispositive of the issue of damages. The BIA is not the arbiter of its ability to perform its contractual obligations. This Court, not the BIA, must decide whether the Tribe suffered damages as a result of being deprived of notice of the funds' availability. The Tribe need only prove that it probably suffered damages and provide a reasonable basis for computing them, even if it is approximate. If need be, a "jury verdict" method can be used to measure damages when no more reliable method is available. See Celeron Gathering Corp. v. United States, 34 Fed.Cl. 745, 753 (1996). "[S]ince [the Government] produced the damage, it must bear the uncertainty of proof." Perma Research and Development v. Singer Co., 542 F.2d 111, 116 (2d Cir. 1976).

11

### III. BIA's Breaches With Respect To The Pay Cost Report

#### A. The Pay Cost Report Is Inadequate On Its Face

As part of the Government's response to the Tribe's summary judgment motion, the Department finally provided, more than two years after its promised delivery date, a Pay Cost analysis for the years 2003-2006. The Department's analysis purports to show that the Tribe is owed a grand total of $2,696 (plus $413 in interest) for 2006. But this analysis is incomplete and fails to satisfy the Department's contractual obligation.

The Department promised to provide a Pay Cost analysis that would include the following information:

> The analysis will separately show the total amounts received each year for Self Governance tribes, contracting tribes, *and BIA programs, as well as the total amounts the BIA was eligible to receive for these programs based upon data it compiled.* The above information has been requested by the Tribe to verify whether Red Lake, other Self Governance tribes, contracting tribes, *and BIA programs* were treated the same way with regard to the distribution of Pay Costs for the years 2003-2006.

(SOF ¶ 49) (emphasis supplied). But the analysis the Department has tendered omits the total Pay Cost amounts that BIA received each year for its programs, and the amounts the BIA was eligible to receive, which data would permit the Tribe to verify whether it was treated the same way as BIA programs with respect to Pay Cost funding.

Moreover, rather than apologize for the Department's delay in producing any sort of Pay Cost analysis, the Government asserts – arrogantly and incorrectly -- that the Court can not require the Department to provide the Pay Cost report to the Tribe. The Government cites the decision in Ingersoll-Rand Co. v. United States, 780 F.2d 74, 80 (D.C. Cir. 1985) for the proposition that no court has jurisdiction to order the Government to specifically perform its contracts. But that decision was issued three years before Congress amended the ISDEAA in 1988 to authorize injunctive relief in actions such as this. See 25 U.S.C. § 450m-1(a). The

12

legislative history of that amendment states explicitly that the Act, as amended, "affords self-determination contractors the opportunity to secure injunctive relief ... for violations of the Self-Determination Act (*or the terms of contracts under the Act*)." S. Rep. No. 100-274 at 34 (1988), reprinted at 1988 U.S.C.C.A.N. 2620, 2653 (emphasis supplied).

Because the Pay Cost analysis tendered by the Department fails to satisfy its contractual obligation to the Tribe, the Court should order the Department to provide a proper Pay Cost analysis forthwith and establish a deadline for compliance.

**B.    The Tribe Is Entitled To Damages With Respect To Pay Costs**

Not only is the Pay Cost analysis inadequate on its face, but its calculations about the amount owed to the Tribe are flawed. The Tribe believes there are at least three flaws in the analysis. First, the Department's calculations for 2006 Pay Costs are based on 2% of "eligible" salary costs, but the percentage approved by law was 2.1% plus a locality adjustment that, as applied, would add another .73% for the Red Lake area, for a total of 2.83%. Second, the analysis treats Tribal salary costs for Contract Support, Welfare Assistance, Housing Improvement Program ("HIP"), and Roads Maintenance as ineligible for a Pay Cost adjustment. The Tribe disagrees. Third, the analysis incorrectly reports the cost data provided by the Tribe for 2006. The analysis asserts that the Tribe reported a total of $5,038,732 in costs, of which $38,815 was ineligible, leaving an eligible salary base of $4,999,917. In fact, the Tribe reported total costs of $7,490,752, including $1,440,636 for Contract Support, $38,815 for Welfare Assistance, $12,000 for HIP, and $267,249 for Roads Maintenance. Even if these four categories are excluded, this would leave the eligible amount as $5,732,052, not $4,999,917.

The Court need not resolve these issues at this juncture because Count IV of the Complaint, in which the Tribe seeks damages for its 2006 Pay Costs, is not yet ripe for decision.

Incredibly, the Government seeks summary judgment on this count notwithstanding that the Department's own analysis shows it owes the Tribe at least $3,109.[10] The Government argues that any Tribal claim for payment must be made pursuant to the Administrative Procedure Act, under which money damages are not available. In other words, the Tribe has no effective remedy if the Department refuses to pay what it owes. This callous argument is plainly wrong. The Department's promises with respect to Pay Costs were made in footnote 15 to the 2006 Reprogramming Request, which is part of the contract between the parties. This Court plainly has jurisdiction to award either damages or specific performance pursuant to 25 U.S.C. § 450m-1(a). Thus, the Government's cross-motion for summary judgment on Count IV should be denied.

## CONCLUSION

The Tribe's motion for summary judgment on Counts I and III, and for partial summary judgment on Count II, should be granted and the Government's cross-motion for summary judgment should be denied.

August 5, 2008.

Respectfully submitted,
HOLLAND & KNIGHT LLP

By: /s/ Philip Baker-Shenk
PHILIP BAKER-SHENK (D.C. Bar #386662)
STEVEN D. GORDON (D.C. Bar #219287)
2099 Pennsylvania Avenue, N.W. Suite 100
Washington, D.C. 20006
Phone: 202-955-3000
Fax: 202-955-5564
Attorneys for Plaintiff
Red Lake Band of Chippewa Indians

---

[10] The Government had announced about a year ago during discovery that the BIA believed that an error had been made with respect to Pay Costs and that the Tribe would be owed additional money. (SOF ¶ 51).

## CERTIFICATE OF SERVICE

I hereby certify that on, August 5, 2008, I electronically transmitted the foregoing **Reply Brief In Support Of Plaintiff's Motion For Summary Judgment and Opposition To Defendants' Cross-Motion For Summary Judgment** to the Clerk of the Court, using the ECF systems filing, and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system for this case.

/s/ Philip Baker-Shenk
Philip Baker-Shenk

# 5503599_v4