# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RED LAKE BAND OF CHIPPEWA
INDIANS,

    Plaintiff,

     v.

U.S. DEPARTMENT OF THE INTERIOR,
*et al.,*

    Defendants.

Civil Action No. 06-1826 (CKK)

## MEMORANDUM OPINION
(March 19, 2009)

Plaintiff Red Lake Band of Chippewa Indians ("Plaintiff" or the "Tribe") filed the instant lawsuit against Defendants, the United States Department of Interior ("Department") and Ken Salazar in his official capacity as Secretary of the Department[1] ("Secretary," collectively with the Department, "Defendants"), alleging that Defendants breached provisions of the parties' Compact of Self-Governance and accompanying agreements entered into pursuant to the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450, *et seq.* ("ISDEAA" or the "Act"). Specifically, Plaintiff alleges that Defendants failed to obtain, assist Plaintiff in obtaining, and/or request funding for the Tribe's new juvenile correction facility in breach of the parties' agreement. In addition, Plaintiff claims that Defendants failed to notify the Tribe of the availability of year-end funding in breach of the parties' agreement. Finally, Plaintiff alleges that Defendants failed to timely provide Plaintiff with certain "pay cost" analyses and also failed to

---

[1]Secretary Salazar is automatically substituted for Dirk Kempthorne, pursuant to Federal Rule of Civil Procedure 25(d).

provide the Tribe with the full amount of pay cost increases as required under the terms of the parties' contract.

Currently pending before the Court are Plaintiff's [16] Motion for Summary Judgment on Counts I and III and for Partial Summary Judgment as to Count II and Defendants' [17] Cross-Motion for Summary Judgment as to Counts I - IV.  After thoroughly reviewing all of the parties' submissions, including the attachments thereto, applicable case law, statutory authority, and the record of the case as a whole, the Court shall GRANT-IN-PART and DENY-IN-PART Plaintiff's Motion for Summary Judgment and shall GRANT-IN-PART and DENY-IN-PART Defendants' Cross-Motion for Summary Judgment.  Specifically, the Court shall GRANT Plaintiff's Motion for Summary Judgment as to Count III, but shall DENY Plaintiff's Motion for Summary as to Counts I and II, and shall GRANT Defendants' Cross-Motion for Summary Judgment as to Count II, but shall DENY Defendants' Cross-Motion for Summary Judgment as to Counts I, III, and IV, for the reasons that follow.

## I.  BACKGROUND

*A.    The ISDEAA*

The purpose of the ISDEAA, 25 U.S.C. § 450 *et seq.*, is to "assure maximum participation by Indian tribes in the planning and administration of federal services, programs and activities for Indian communities."  S. Rep. No. 100-274 at 1 (1988), reprinted at 1988 U.S.C.C.A.N 2620, 2620.  Accordingly, the ISDEAA authorizes federal agencies, such as the Department, to enter into contracts with Indian tribes in which the tribes promise to supply federally funded services, for example tribal law enforcement services, that a federal agency would otherwise provide.  *Cherokee Nation of Oklahoma v. Leavitt*, 543 U.S. 631, 634 (2005).

2

"More specifically, under the [IDSEAA], the [Secretary] continue[s] to provide direct services to a tribe until such time as the tribe chooses to enter into a 'self-determination contract' to operate those services.  At that point, the [Secretary] [is] required to transfer resources and control of those programs to the tribe."  *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455, 1456 (10th Cir. 1997).  The Act is thus intended, in part, to also "remov[e] the financial burden incurred by tribes and tribal organizations when implementing federal programs under self-determination contracts."  *Id.* at 1367.

B.       *The Parties and their Contract*

Plaintiff is a federally recognized Indian tribe.  Pl.'s Stmt. ¶ 1.[2]  Secretary Salazar has

---

[2]As a preliminary matter, the Court notes that it strictly adheres to the text of Local Civil Rule 7(h)(1) (formerly 56.1 when resolving motions for summary judgment).  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (district courts need to invoke Local Civil Rule 56.1 before applying it to the case).  The Court has repeatedly advised the parties that it strictly adheres to Rule 7(h) and has stated that "[a]t all points, parties must furnish precise citations to the portions of the record on which they rely."  *See* 4/25/07 Order, Docket No. [10], at 4-5; 5/19/08 Order, Docket No. [15], at 2.  In addition, the Court advised the parties that it "assumes that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *See* 4/25/07 Order, Docket No. [10], at 4-5; 5/19/08 Order, Docket No. [15], at 2.  The Court notes, however, that the parties did not fully comply with the local rules, as required.  First, although both Plaintiff and Defendants filed a statement of material facts, Defendants' Statement contains several factual assertions for which Defendants did not provide any citation to the record, as required.  The Court does not credit any such statements made in violation of the local rules.  Second, Plaintiff failed to file a response to Defendants' Statement of Material Facts, as required.  Accordingly, to the extent Defendants' Statement is supported by the record, the Court shall treat Defendants' factual assertions as admitted.  Nonetheless, where the parties have in fact complied with the local rules, the Court shall cite directly to Plaintiff's Statement of Material Facts ("Pl.'s Stmt.") or Defendant's Statement of Material Facts ("Defs.' Stmt.") unless a statement is contradicted by the opposing party.  Where a party (here, Defendants, as Plaintiff filed no response) objects to relevant aspects of Plaintiff's proffered material fact, the Court shall also cite to Defendants' Response to Pl.'s Stmt. ("Defs.' Resp. Stmt."), as necessary.  Finally, the Court shall cite directly to evidence in the record, where appropriate.

overall responsibility for administering the Department as well as overseeing its constituent

agencies, including the Bureau of Indian Affairs ("BIA") and managing certain Indian affairs and

appropriations.  *Id.* ¶ 2.  The Office of Self-Governance ("OSG") is the office within the

Department responsible for administering the Secretary's tribal self-governance program,

including BIA programs.  *Id.* ¶ 3.

On or about January 14, 1997, Plaintiff and the Department entered into a Compact of

Self-Governance ("Compact") pursuant to the ISDEAA.  *Id.* ¶ 5; Defs.' Stmt. ¶ 1.  The Compact

enabled the Tribe to "plan, conduct, and administer programs and services to the extent as

provided in the annual funding agreement."  Defs.' Stmt. ¶ 1.  This goal is reflected in the text of

the Compact itself, which provides that the Compact is intended to:

> [C]arry out Self-Governance as authorized by [the ISDEAA], which . . . transfers
> control to tribal governments, upon tribal request, over funding and decision making
> of Federal programs, services, functions and activities as an effective way to
> implement the federal policy of government-to-government relations with Indian
> tribes.

Pl.'s Mot., Ex. A (Compact), Art. I § 2(a).

In addition, as is relevant here, the Compact includes a provision, entitled "funding

amount," which provides that:

> Subject only to the appropriation of funds by the Congress of the United States . .
> ., the Secretary or an authorized representative shall provide to the Tribe the total
> amount specified in the Annual Agreement incorporated by reference. . . .

*Id*.

On or about November 15, 2004, pursuant to the Compact, Plaintiff and Defendants

entered into a Multi-Year Funding Agreement ("Agreement") for 2005-2010.  Pl.'s Stmt. ¶ 10;

Defs.' Resp. ¶ 10.  The Agreement is amended annually by the parties pursuant to a

"reprogramming request," and provides that "[t]he Tribe assumes all operational responsibility for all programs, functions, services, and activities as reflected in the REPROGRAMMING REQUEST . . . ."  Pl.'s Stmt. ¶¶ 10-11; Defs.' Resp. ¶ 10-11; Pl.'s Mot., Ex. B (Agreement and 2005 Reprogramming Request).  At issue are the parties' 2005 and 2006 reprogramming requests, which are discussed below.

1.    <u>2005 Reprogramming Request</u>

Count I of Plaintiff's Complaint involves the reprogramming request for the year 2005, entitled the 2005 Annual Funding Agreement - Reprogramming Request ("2005 Reprogramming Request"), which is attached to the Agreement.  Pl.'s Stmt. ¶ 10; Defs.' Resp. ¶ 10; Pl.'s Mot. Ex. B (Agreement and 2005 Reprogramming Request); *see also* Compl. ¶¶ 48-52.  Subject to the terms of the Compact and Agreement, the 2005 Reprogramming Request generally sets forth the funds to be provided in 2005 by the United States to the Tribe for the provision of the agreed upon services.  Pl.'s Stmt. ¶ 10; Defs.' Resp. ¶ 10; Pl.'s Mot., Ex. B (Agreement and 2005 Reprogramming Request).  Specifically, the 2005 Reprogramming Request sets forth by line item and program title the parties' agreement as to the funds to be provided.  *See* Pl.'s Stmt. ¶ 14; Defs.' Resp. ¶ 14; *see also* Pl.'s Mot., Ex. B (Agreement and 2005 Reprogramming Request).

The heart of Plaintiff's claims as to the 2005 Reprogramming Request is line item no. 177 of the 2005 Reprogramming Request, *see* Compl. ¶¶ 48-52, which provides as follows:

| Line # | Program Title | Cost Code | Info (Tribal Share) | OSG Cum. Base | OSG Shortfall Base | OSG Shortfall Request | BIA Reprogram Request | Total AFA | FN |
|---|---|---|---|---|---|---|---|---|---|
| 177 | Law Enforcement - NON TPA | 37700 | 0 | 0 | 5,283 | 0 | 4,576,753 | 4,582,036 | 25 |

5

Pl.'s Mot., Ex. B (Agreement and 2005 Reprogramming Request), at 10.  As indicated in the last

column, line item no. 177 also contains a footnote, specifically footnote no. 25, which in turn

provides, *inter alia*, that:

> The BIA agrees to assist the Tribe in obtaining $1,218,482 for operations funding for
> the Tribes [*sic*] juvenile correction facility[3] in CY 2005, and to request this amount
> in the next Presidents [*sic*] budget.

Pl.'s Stmt. ¶ 16; Pl.'s Mot., Ex. B (Agreement and 2005 Reprogramming Request), at 14.

According to Plaintiff, line item no. 177, together with footnote 25, obligated Defendants to do

two things: (1) to obtain $1,218,482 in funding for the Tribe's juvenile correction center in

calendar year ("CY") 2005, or, in the alternative, to assist the Tribe in obtaining such funding;

and (2) to request this same amount of funding in the next President's budget.  Pl.'s Compl. ¶¶

48-52.

As to Plaintiff's first allegation, it is undisputed that the Tribe did not receive $1,218,482

in CY 2005 operations funding for the juvenile correction center.  Pl.'s Stmt. ¶ 17.  Moreover,

BIA officials testified that BIA did not provide any assistance to the Tribe in obtaining the

---

[3]Regarding the reference to a "juvenile correction facility"in footnote 25, Plaintiff
explains that the Tribe had previously used Department of Justice and BIA grant funds to design
and construct two correction facilities comprising parts of the Red Lake Law Enforcement
Complex: a Phase I facility housing medium and minimum security adults and juveniles, and a
Phase III facility housing minimum security juveniles in a rehabilitative setting.  Pl.'s Stmt. ¶¶ 8-
9.  The reference in footnote 25 is to the Phase III facility.  Although the parties dispute whether
the facility is appropriately characterized as a "detention facility" or as a "work camp," *see* Pl.'s
Stmt. ¶ 8; Defs.' Resp. ¶ 8, the Court need not resolve this issue as neither party's arguments now
before the Court depend upon or otherwise implicate the proper characterization of the Phase III
facility.  Accordingly, because the proper characterization of the facility is not material to the
issues at hand, the Court shall, for ease of convenience, refer to the facility as it is described in
the 2005 Reprogramming Request, *i.e.*, as a "juvenile correction facility"—although the Court
expressly does not take a position on whether the description is factually accurate.

specified funding.  Specifically, the head of BIA's Office of Justice Services, Christopher Chaney, testified that BIA did not provide any assistance to the Tribe in obtaining staffing and program operations funding for the juvenile correction facility in CY 2005.  *Id.* ¶ 18.  In addition, Patrick Ragsdale, the Director of BIA, testified that he was not aware of any efforts by BIA to obtain staffing and program operations funding in CY 2005 for the facility in question.  *Id.* ¶ 19. Finally, Kenneth Feinfeld, the Acting Director of the OSG and the person who executed the 2005 Reprogramming Request on behalf of the United States, testified that he personally did not make any efforts to obtain staffing and program operations funding for the Tribe's juvenile correction facility in CY 2005.  *Id.* ¶ 20.  Defendants do not dispute this, *see* Defs.' Resp. ¶¶ 18-20, nor have Defendants offered any evidence to the contrary, *see generally* Defs.' Stmt.

As concerns the second allegation, there appears to be some dispute as to whether the language stating that BIA "request this amount in the next Presidents [*sic*] budget" refers to the President's budget for fiscal year ("FY") 2006 or FY 2007.  *See* Pl.'s Stmt. ¶ 21 (stating that, as the 2005 Reprogramming Request was negotiated and executed in the fall of 2004, the next President's budget was for FY 2006); Defs.' Stmt. ¶ 21 (denying Pl.'s Stmt. ¶ 21 and suggesting that the Agreement was not effective until after the budget had been finalized for FY 2006). Nonetheless, it is undisputed that Defendants did not include a request for $1,218,482 for the Tribe's juvenile correction facility in the President's budget for *either* FY 2006 or FY 2007. Pl.'s Stmt. ¶¶ 22-23.

In addition, Plaintiff has proffered undisputed evidence concerning the Department's budget for BIA Public Safety and Justice law enforcement programs—*i.e.*, the likely source of any potential funding for the juvenile correction facility— during the years in question.  As

Plaintiff emphasizes, Chaney, the head of BIA's Office of Justice Services, testified at deposition that the Department had experienced "significant funding increases for Indian country correction facilities for staffing and operation" in FY 2005 and FY 2006.  Pl.' Stmt. ¶ 32; Defs.' Resp. ¶ 32; Pl.'s Mot., Ex. E (Chaney Dep.) at 47:4-15, 48:12-17.  More specifically, the parties agree that:

- In FY 2005, Congress appropriated $180,063,000 for BIA's Public Safety and Justice law enforcement and correction facilities, which equaled an increase of $7,568,000 over what was appropriated for the same purposes in FY 2004.  Pl.'s Stmt. ¶ 33.

- In FY 2006, the President's budget requested $192,265,000 for BIA Public Safety and Justice law enforcement programs, including funding for the operation of correction services, programs, and facilities.  *Id.* ¶ 34.  Congress subsequently increased this funding request by an additional $1.1 million, appropriating a total of $193,377,000, an increase of $13,314,000 over what was appropriated for the same purposes in FY 2005.  *Id.* ¶ 35.

- In FY 2007, the Department requested a lump sum of $201,620,000 in the President's budget for BIA Public Safety and Justice law enforcement programs, including funding for operation of correction services, programs, and facilities.  *Id.* ¶ 36.  Congress again increased the funding over and above the requested amount, appropriating a total of $204,454,00, an increase of $11,077,00 over what was appropriated for the same purposes in FY 2006.  *Id.* ¶ 37.

    2.    <u>2006 Reprogramming Request</u>

In January of 2006, the Tribe and Defendants completed bilateral negotiations on a Fourth Amendment to the Multi-Year Funding Agreement for 2005-2010 ("Fourth Amendment") and an associated "Self Governance 2006 Annual Funding Agreement - Reprogramming Request" ("2006 Reprogramming Request").  Pl.'s Stmt. ¶ 24; *see also* Pl.'s Mot., Ex. l (Fourth Amendment and attached 2006 Reprogramming Request).  Counts II through IV of Plaintiff's Complaint focus on the Fourth Amendment and the 2006 Reprogramming Request.

i.    Year-end funding

Count II of Plaintiff's Complaint centers on section 17 of the Agreement and the Fourth

Amendment, which both contain the following identical language:

> Additional Funds - If the Midwest Region Office of the BIA receives notice of the
> availability of <u>any</u> additional funding in any fiscal year for any purpose, including any
> unspent funds, that the Tribe is eligible to apply for or receive, then it must notify the
> Tribe as soon as possible about such funds so that the Tribe may access or apply for
> those funds.  The Midwest Region Office <u>commits</u> to keeping the Tribe informed of
> the existence of funding immediately upon learning of its existence.

Pl.'s Stmt. ¶ 41; *see also* Pl.'s Mot, Ex. B (Agreement) at 4 (emphasis in original); *id.*, Ex. L

(Fourth Amendment) at 4 (emphasis in original).  Plaintiff also directs the Court to Article IV,

Section IV of the Compact, which states that "[t]he Tribe shall be eligible for new programs,

activities, services and functions on the same basis as other tribes and the Secretary or his

authorized representative shall advise the Tribe of the funding available for such programs."

Pl.'s Stmt. ¶ 42; *see also* Pl.'s Mot., Ex. A (Compact) at 12.

In September of 2006, the BIA Midwest Regional Office received and distributed FY

2006 year-end funds[4] to five of the thirty-five Indian tribes and tribal organizations within the

BIA Midwest Region.  Pl.'s Stmt. ¶ 43; Defs.' Resp. ¶ 43.  The Tribe, however, was not

informed about the availability of these funds until weeks after they were distributed, and did not

receive any of these year-end funds.  Pl.'s Stmt. ¶¶ 44-45.  Defendants later explained that the

---

[4]There is a dispute between the parties as to the exact amount of the funds distributed by
the BIA Midwest Regional Office.  According to Plaintiff, the office distributed approximately
$200,000 in FY 2006 year-end funds, Pl.'s Stmt. ¶ 43, while Defendants assert that the office in
fact distributed only $85,000, Defs.' Resp. ¶ 43.  For the reasons discussed below, the Court
finds that this dispute is not material to the resolution of the parties' motions for summary
judgment.  *See infra* at 34 n. 9.

BIA Central Office had made a decision to distribute the year-end funds only to tribes having

contracts under Title I of Public Law 93-638 (codified at 25 U.S.C. § 450f), and not to

tribes—like Plaintiff—having contracts under Title IV of Public Law 93-638 (codified at 25

U.S.C. § 458cc).  *Id.* ¶ 46.  BIA Director Ragsdale explained at his deposition that, although the

latter self-governance tribes, including Plaintiff, were technically eligible for the year-end funds,

those tribes were excluded from the year-end funds distribution because, as a practical matter, the

OSG did not have an adequate process in place to distribute the funds to those tribes:

> Self-governance tribes [such as Plaintiff] were eligible for funds, but my
> understanding is [] that the money had to be obligated within a very short period of
> time and the Bureau's mechanism through the Office of Self-Governance could not
> mechanically do that.  So the self-governance tribes were excluded from that—from
> that potential allocation.

*Id.* ¶ 48 (quoting Pl.'s Mot., Ex. K (Ragsdale Dep.) at 64:1-7)).  Count II of Plaintiff's Complaint

asserts that Defendants' failure to notify the Tribe of these funds in a timely matter was a breach

of the parties' agreement as quoted above.  Pl.'s Compl. ¶¶ 53-57.

## ii.   Pay-cost reports and adjustments

Counts III and IV of the Plaintiff's Complaint center on the 2006 Reprogramming

Request and more specifically, on language in footnote 15 to line item 103 addressing "pay

costs," which provides *inter alia*:

> The BIA will make every effort to treat Red Lake Tribal employees the same as all
> other Tribal and Federal employees for purposes of pay cost adjustments in FY 2006
> . . . . Further, the BIA and OSG agree to provide to the Tribe by April 1, 2006, a
> detailed Pay Cost analysis for the years 2003-2006, showing what the Tribe was
> eligible to receive each year based upon Pay Cost data the Tribe provided, the actual
> amount received, and the shortfall or unfunded amount.  This analysis will include
> Law Enforcement.  The analysis will separately show the total amounts received each
> year for Self-Governance tribes, contracting tribes, and BIA programs, as well as the
> total amounts the BIA was eligible to receive for these programs based upon data it

compiled.  The above information has been requested by the Tribe to verify whether Red Lake, other Self Governance tribes, contracting tribes, and BIA programs were treated the same way with regard to the distribution of Pay Costs for the years 2003-2006.

*Id.* ¶ 49 (quoting Pl.'s Mot., Ex. L (2006 Reprogramming Request) at 3 n. 15).

It is undisputed that BIA and OSG failed to provide a pay cost analysis to the Tribe by April 1, 2006.  *Id.* ¶ 50.  Indeed, Defendants did not provide the pay cost analysis until they filed their Cross-Motion and Opposition in this case, at which time Defendants attached a pay cost report to their pleading.  *See* Defs.' Cross-Mot./Opp'n, Ex. A (Pay Cost Report).  Plaintiffs nonetheless allege that Defendants have not provided an adequate pay cost analysis in violation of the parties' agreement.  Pl.'s Compl. ¶¶ 58-66.

C.    *Procedural History*

Pursuant to the ISDEAA and the Contract Disputes Act, Plaintiff filed its Complaint in the instant action in federal court alleging that Defendants had breached the parties' agreement, as set forth in the Compact, Agreement and the 2005 and 2006 Reprogramming Requests (collectively, the "Contract").   *See* Compl., Docket No. [1].   Specifically, Count I of Plaintiff's Complaint alleges that Defendants: (a) failed to obtain and/or make its best efforts to obtain $1,218,482 in operations funding for the juvenile correction facility in CY 2005 as agreed to in the parties' Contract; and (b) failed to request that same amount in the President's budget for FY 2006 as agreed to in the parties' Contract.  Compl. ¶¶ 48-52.  Plaintiff therefore seek $1,218,482 in damages for CY 2005 and an additional $1,218,482 in damages for FY 2006, plus interest.  *Id.* ¶ 51.

Count II of Plaintiff's Complaint alleges that Defendants failed to notify the Tribe that it

11

was eligible for FY 2006 year-end funds that were received and distributed by the BIA Midwest Regional Office in breach of the parties' agreement that the office would inform the Tribe as soon as possible of any additional funding in any fiscal year for any purpose that the Tribe was eligible to receive. *Id.* ¶¶ 53-57. Plaintiff seeks monetary damages, plus interest, for Defendant's alleged breach as to Count II. *Id.* ¶ 56.

Counts III of Plaintiff's Complaint asserts that Defendants failed to provide a pay cost analysis to the Tribe for the years 2003-2006 by April 1, 2006 as agreed to in the parties' Contract. *Id.* ¶¶ 58- 62. Plaintiff seeks an order directing the Secretary to provide the Tribe with a detailed pay cost analysis in compliance with the parties' Contract. *Id.* ¶ 61.

Finally, Count IV of Plaintiff's Complaint alleges that Defendants underpaid Plaintiff's pay costs in violation of Defendants' agreement to treat the Tribe's employees the same as all other Tribal and Federal employees, and seeks monetary damages equal to the difference between the amount the Tribe received and the amount the Tribe should have received for pay costs in FY 2006. *Id.* ¶¶ 63-66.

Plaintiff subsequently moved for summary judgment as to Counts I and III and for partial summary judgment as to Count II. *See* Pl.'s Mot., Docket No. [16]. Defendants thereafter filed their Cross-Motion for Summary Judgment as to all Counts (*i.e.*, Counts I - IV), and Opposition to Plaintiff's Motion. *See* Defs.' Cross-Mot./Opp'n, Docket No. [16]. Briefing on the parties' motions is now complete and the case is ripe for adjudication. The Court therefore turns to the merits of the parties' arguments.

## II.  LEGAL STANDARDS

In this case the Court is presented with cross motions for summary judgment. A party is

entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In response, the opposing party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials of the

13

adverse party's pleading are not enough to prevent the issuance of summary judgment."

*Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party "must do more

than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant

bears the initial responsibility of identifying those portions of the record that demonstrate the

absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward

with 'specific facts showing that there is a *genuine issue for trial*.'"  *Id.* at 587 (citing FED. R. CIV.

P. 56(e)) (emphasis in original).

### III.  DISCUSSION

As an initial matter, given that Plaintiff's Complaint raises questions of general contract

law and alleges various claims for breach of contract, the Court must first identify the law to be

applied and the precise elements that Plaintiff must show to succeed on a breach of contract

claim.  Accordingly, before turning to the merits of the parties' arguments, the Court briefly

pauses to delineate the controlling law applicable to Plaintiff's breach of contract claims—an

issue that, unfortunately, neither party has addressed.

First, as to the question of controlling law, the Supreme Court has held "that obligations

to and rights of the United States under its contracts are governed exclusively by federal law."

*Boyle v. United Tech. Corp.*, 487 U.S. 500, 504 (1988).  Courts must therefore apply the federal

common law of contracts to the interpretation of contracts with the federal government.  *Wright*

*v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 180 (D.D.C. 2007) (quoting *N. Side*

*Lumber v. Block*, 753 F.3d 1482, 1484 (9th Cir. 1985)); *see also United States v. Kearns*, 595

F.2d 729, 732 (D.C. Cir. 1978) ("it is by now accepted that federal common law provides

remedies in many situations" including "[g]overnment contracts") (citations omitted).[5]

Second, as to the elements of a breach of contract claim under federal law, "a party must allege and establish: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Pryor v. United States*, 85 Fed. Cl. 97, 104 (Fed. Cl. 2008) (quoting *San Carlos Irrigation and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)); *see also Mauras v. United States*, 82 Fed. Cl. 295, 299 (Fed. Cl. 2008) (same); *Spectrum Sciences v. United States*, 84 Fed. Cl. 716, 735 (Fed. Cl. 2008) (same). Thus, as is particularly relevant here, a plaintiff must establish that he or she suffered a loss or injury (often phrased as "damages") as part of a claim for a breach of contract. *See Malissa Co., Inc. v. United States*, 18 Cl. Ct. 672, 674 (Cl. Ct. 1989) ("This court has long held that in contract cases, where plaintiff has alleged a breach of contract, the plaintiff must shoulder the burden of establishing the fundamental facts of liability, causation, and resultant injury.") (internal quotation marks and citations omitted); *see also Roseburg Lumber Co. v. Madigan*, 978 F.2d 660, 667 (Fed. Cir. 1992) ("Absent tangible proof of damages, appellant may not recover for an alleged injury" under contract law.); *New Valley Corp. v. United States*, 67 Fed. Cl. 277, 284 (Fed. Cl. 2005) ("breach must be shown to be the proximate cause of the alleged injury") (quoting *Record Club of Am., Inc. v. United Artists Records, Inc.*, 890 F.2d 1264,

---

[5]In addition, the Court notes that Plaintiff's Complaint invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Compl. ¶ 3. "Although choice of law provisions may be relevant in a diversity action, we are required to apply federal common law when deciding federal questions." *Prudential Ins. Co. of America v. Doe*, 140 F.3d 785, 791 (8th Cir. 1998). The parties appear to agree that federal common law (as opposed to either state or Tribal law) controls the interpretation of the parties' Contract, as both parties cite exclusively to federal case law in their briefing.

1275 (2d Cir. 1989)).

Although the parties, in their respective pleadings, have confused the issue, the Court emphasizes that Plaintiff "bears the burden of proving the fact of loss with certainty" in proceeding with its breach of contract claim for money damages. *Willems Indust. Inc. v. United States*, 295 F.2d 822, 831 (Cl. Ct. 1962). Only once Plaintiff has proven that it in fact suffered a loss (*i.e.*, suffered damages), such that Defendants are liable for a breach of contract claim, does the Court move to the next stage—*i.e*, the damages determination stage. *See id.* "Stated another way, the measure of damages to be applied in the particular case is irrelevant until the claimant has established the fact of losses that were the natural and proximate result of the breach of contract." *Id.*; *see also Roseburg Lumber*, 978 F.2d at 667-68 (plaintiff must prove threshold issue of whether damages have actually been sustained). The Court notes that this burden is generally not a burdensome one, as a plaintiff need only show that "responsibility for damages is clear," not that "the amount thereof be ascertainable with absolute exactness or mathematical precision." *Roseburg Lumber*, 978 F.2d at 668; *see also Mauras*, 82 Fed. Cl. at 299 ("If [a plaintiff] eventually proves a 'fact of damage,' an appropriate monetary amount to remedy this harm need not be calculated with absolute certainty."); *Pryor*, 85 Fed. Cl. at 104-05 (granting summary judgment in favor of defendant on breach of contract claims where plaintiff did not show any injury or harm resulting from alleged breaches). Nonetheless, the case law makes clear that a plaintiff must show the fact of an injury or loss as part of a breach of contract claim for money damages. With that established, the Court shall now proceed to the merits of Plaintiff's claims.

    A.     *Count I of Plaintiff's Complaint Alleging that Defendants Failed to Assist and/or Request Funding for the Tribe's Juvenile Correction Center in CY 2005 and FY 2006*

As stated previously, both Plaintiff and Defendants have moved for summary judgment as to Count I of Plaintiff's Complaint, which focuses on funding for the Tribe's juvenile correction center in CY 2005 and FY 2006.  The Court shall examine each argument in turn.

    1.     Plaintiff's Allegations that Defendants Failed to Obtain, or Alternatively to Make their Best Efforts to Obtain, Funding in CY 2005

Plaintiff argues that Defendants breached the parties' Contract by failing to obtain, or alternatively, by failing to make their best efforts to obtain, funding in CY 2005 for the Tribe's juvenile correction center.  Plaintiff makes two alternative arguments.  First, Plaintiff argues that Defendants were obligated by the parties' Contract to obtain $1,218,482 in funding for the juvenile correction center in CY 2005.  Plaintiff directs the Court to Section 5 of the Agreement, which provides that "the Secretary shall make available to the Tribe the total amounts of funds negotiated as they are identified in the attached REPROGRAMMING REQUEST for Calendar Year 2005."  Pl.'s Mot. at 12 (quoting *id.*, Ex. B (Agreement) § 5).  The 2005 Reprogramming Request in turn specifies in line item no. 177 that Defendants shall provide the Tribe with a total of $4,582,086 for law enforcement in CY 2005, which Plaintiff contends includes the $1,218,482 in funding for the juvenile correction facility referred to in footnote 25.  Pl.' Mot. at 12-13; Pl.'s Opp'n/Reply at 2-3.  Plaintiff therefore claims that Defendants agreed to actually provide the Tribe with $1,218,482 in CY 2005 funding for the juvenile correction facility.  Pl.' Mot. at 12-13; Pl.'s Opp'n/Reply at 2-3.  Plaintiff further argues that the language in footnote 25 stating that "[t]he BIA agrees to assist the Tribe in obtaining $1,218,482 for operations funding for the

Tribes [*sic*] juvenile correction facility in CY 2005" should not be read to qualify or negate the Defendants' agreement in line item no. 177 to in fact provide the Tribe with $4,582,086 in funding, including the $1,218,482 in funding for the juvenile correction facility.  Pl.'s Mot. 12-13; Pl.'s Opp'n/Reply at 2-4.  In other words, Plaintiff urges that the 2005 Reprogramming Request should be read as an agreement that Defendants would actually *obtain* the CY 2005 funding, not just an agreement that Defendants would *assist* the Tribe in obtaining such funding.  Because it is undisputed that the Tribe did not receive the specified funding, Pl.'s Stmt. ¶ 17, Plaintiff argues that Defendants breached the parties' Contract and Plaintiff is entitled to recover $1,218,482 in damages.  Pl.'s Opp'n/Reply at 9.

Second, Plaintiff argues in the alternative that even if footnote 25 is construed to qualify Defendants' agreement in line item no. 177, Defendants were—at a minimum—required to make their best efforts to obtain the specified funding for the Tribe.  Pl.'s Mot. at 13- 14; Pl.'s Opp'n/Reply at 4-5.  Because Defendants concede that they made *no* efforts to obtain the funding, Pl.'s Stmt. ¶¶ 18-20, Plaintiff contends that Defendants clearly breached the parties' Contract.  Pl.'s Mot. at 13-14; Reply at 4-5.  Accordingly, Plaintiff asserts the Tribe is entitled to recover its "expectation damages"—defined as the amount Plaintiff "reasonably anticipated that defendant's [*sic*] best efforts would have produced."  Pl.'s Mot. at 14.  Plaintiff argues that the Tribe reasonably anticipated that Defendants' best efforts would result in obtaining the promised funding and thus, the proper amount of damages is $1,218,482.  *Id.*

Defendant counters that the plain language of footnote 25 demonstrates that Defendants did not promise to obtain funding for CY 2005, but rather agreed only to "assist" the Tribe in obtaining such funding.  Defs.' Cross-Mot./Opp'n at 8-9.  Accordingly, Defendants' failure to

actually pay the Tribe the specified funding is not a breach of the parties' Contract. *Id.* at 8.

Moreover, Defendants contend that footnote 25 should be read as a non-binding statement of

intention that Defendants would support or aid the Tribe's own efforts to obtain funding—*i.e.*,

that Defendants agreed only that, if the Tribe made its own efforts to obtain the funding for the

juvenile correction center, Defendants would assist the Tribe in doing so. *Id.* at 8-9. Defendants

argue that because Plaintiff has provided no evidence that it made any effort to obtain CY 2005

funding, Defendants therefore did not breach their agreement to assist the Tribe. *Id.* at 9.

Finally, Defendants argue that Plaintiff has not demonstrated that it incurred any injury or

damages as a result of Defendants' action (or inaction, as the case may be). Defs.' Cross-

Mot./Opp'n at 14-15; Defs.' Reply at 7-8. According to Defendants, because the Contract does

not contain an actual promise to pay the specified funds, Plaintiff could not have possessed any

reasonable expectation of receiving any particular amount, or indeed, any amount at all. Defs.'

Cross-Mot./Opp'n at 14-15; Defs.' Reply at 7-8.

The parties' arguments thus raise three issues: (1) what is the proper interpretation of the

parties' Contract—specifically line item no. 177 and the accompanying footnote no. 25; (2) did

Defendants breach the parties' Contract; and (3) has Plaintiff produced evidence sufficient to

show that it suffered a loss or injury as a result of any alleged breach.

### i.     Interpretation of the parties' Contract

"Contract interpretation is a question of law and thus presents an appropriate question for

resolution on summary judgment." *Hallwood Plaza, Inc. v. United States*, 84 Fed. Cl. 804, 811

(Fed. Cl. 2008). "Under general contract law, the plain and unambiguous meaning of an

instrument is controlling, and the Court determines the intention of the parties from the language

19

used by the parties to express their agreement." *Washington Metro. Area Transit Auth. v. Mergentime Corp.*, 626 F.2d 959, 960-61 (D.C. Cir. 1980) (internal citations omitted). "In performing this task, the Court should construe the contract as a whole so as to give meaning to all of the express terms." *Id.* Where the contract is unambiguous, as evidenced by the plain language of the contract, the court's inquiry is at an end, and the plain language of the contract controls. *Hallwood Plaza*, 84 Fed. Cl. at 811. "A contract is unambiguous when there is only one reasonable interpretation." *Id.*

Here, the language in footnote 25 explicitly states that "[t]he BIA agrees to assist the Tribe in obtaining $1,218,482 for operations funding for the Tribes [*sic*] juvenile correction facility in CY 2005. . . ." Pl.'s Mot., Ex. B (Agreement and 2005 Reprogramming Request), at 14. This is the only language in the 2005 Reprogramming Request that directly addresses CY 2005 funding for the juvenile correction facility. *See generally id.* The Court finds that this language is plain and unambiguous, and provides only that the Government shall "assist the Tribe in obtaining" the specified funds in CY 2005. Accordingly, the Court concludes that Defendants had a duty to assist under the plain language of the parties' Contract.

Plaintiff's argument that this language should be read to impose an actual duty to pay, rather than a duty to assist, is without merit. First, although Plaintiff is correct that the Contract must be liberally construed for the benefit of the tribe, *see* Pl.'s Mot. at 12 (citing 25 U.S.C. § 450l(c)), that does not mean that the Contract's plain language may be ignored. *See Mergentime Corp.*, 626 F.2d at 960-61 ("the plain and unambiguous meaning of an instrument is controlling").

Second, the Court does not agree with Plaintiff that the text of line item no. 177 should be

read as a promise by Defendants to *pay* the Tribe the specified funding at issue, regardless of the qualifying language in footnote 25.  *See* Pl.'s Mot. at 12-14; Pl.'s Opp'n/Reply at 2-5.  Upon review of the parties' Contract, it is evident that the 2005 Reprogramming Request is intended to generally set forth the funds the United States shall provide to the Tribe for the provision of the agreed services.  *See* Pl.'s Mot., Ex. A (Compact), Art. II § 3 ("Subject only to the appropriation of funds by the Congress of the United States . . . , the Secretary or an authorized representative shall provide to the Tribe the total amount specified in the Annual Agreement incorporated by reference. . . .").  It is, however, equally clear from the 2005 Reprogramming Request, taken as a whole, that the dollar figures set forth in the line items therein do not necessarily constitute the final agreed-upon amount that Defendants shall provide, as Plaintiff would urge.  Rather, a substantial number of the funding line items in the 2005 Reprogramming Request are accompanied by footnotes, which in many cases appear to qualify the total dollar amount noted in the line item.  *See* Pl.'s Mot., Ex. B (2005 Reprogramming Request).

For example, line item no. 102, entitled "TPA General Increase," provides in the text of the line item for a total of $227,030 in funding, but the accompanying footnote, no. 14, explains that "[t]his amount is to be determined by Congressional appropriation."  *See id.*  As an another example, line item no. 116 provides in the text of the line item for a total of $244,000 in funding for "Tribal Management and Development," but the accompanying footnote, no. 18, qualifies that statement with "[t]his line item includes an estimate of $70,000" and that the "actual amount . . . will be based on an existing, competitive process. . . ."  *See id.*  Similarly, line item no. 121 provides in the text of the line item for a total of $495,000 in funding for "Forestry" programs, but footnote no. 20 provides that "[t]his amount is an estimate" and that "[t]he actual amount will

be based on specific forestry development projects, forest acres, and need for the Forest

Development portion, and on the approved scheduled project amount for Forest Inventories/Plans

portion in CY 2005." *See id.* The examples go on, but the point is clear. Contrary to Plaintiff's

arguments, the text of the line items—specifically, the final dollar amount listed in each line

item—does not, in all cases, represent the final determinative amount of funding to be provided

to the Tribe. Rather, consideration of the 2005 Reprogramming Request as a whole demonstrates

that the line items and the dollar amounts provided therein may be qualified by the text of the

relevant footnote, as is the case with the language at issue here. Accordingly, the $4,582,036

figure amount in line item no. 177 cannot be read in isolation from footnote 25 as actually

obligating the Government to *pay* the Tribe the specified funding($1,218,482) for the juvenile

correction center, when the specific language in the footnote plainly provides that the

Government shall only "assist the Tribe in obtaining" the funds.[6]  The Court therefore finds that

the plain and unambiguous language of the Contract imposes upon Defendants a duty to assist

the Tribe in obtaining the specified funding.

In so finding, the Court also rejects Defendants' assertion that footnote 25 is "a mere

statement of intention" and is "not binding." Defs.' Cross-Mot./Opp'n at 9 (citing *Cutler-

Hammer, Inc. v. United States*, 194 Ct. Cl. 788, 794 (1971)). Defendants' reliance on *Cutler-

Hammer* is misplaced. At issue in that case was the question of whether a regulation

promulgated by the Department of Treasury was contractual in nature such that it constituted a

---

[6]Plaintiff's reliance on *Segar v. Mukasey*, 508 F.3d 16, 24 (D.C. Cir. 2007) is misplaced. Pl.'s Mot. at 13; Pl.'s Opp'n/Reply at 3. In *Segar*, the D.C. Circuit held that a footnote should not be read to effectively delete seven substantive pages of text. 508 F.3d at 24. Clearly, that is not the case at hand.

binding offer by the United States to sell silver at a stated price pay to anyone who complied with the terms of the regulation. *Cutler-Hammer*, 441 F.2d at 1180. The court answered in the negative, finding that the regulation did not bind the Government and observing that "the obligation of the Government, if it is to be held liable, must be stated in the form of an undertaking, not as a mere prediction or statement of opinion or intention." *Id.* at 1182. As the court could "find nothing in the language of the Regulation . . . which could be construed as contractual in nature," the court held that the government was not bound by the terms of the regulation. *Id.* By contrast, the instant case involves—not a regulation—but a binding valid contract entered into between the United States and the Tribe pursuant to the ISDEAA, a point that Defendants do not dispute. In addition, the language at issue here explicitly provides that BIA "agrees to assist the Tribe to obtain funding"—unlike the regulation at issue in *Cutler-Hammer*, the Court finds nothing in this language to indicate that either party viewed this commitment merely as a "prediction" or "statement of opinion." The Court therefore rejects Defendants' argument that the 2005 Reprogramming Request should be viewed only as "a mere statement of intention."

In addition, the Court cannot agree with Defendants that BIA's agreement "to assist" was not implicated unless and until the Tribe initiated its own independent effort to obtain funding. *See* Defs.' Cross-Mot./Opp'n at 9; Defs.' Reply at 4. Defendants argue that the Court should interpret the word "assist" to mean "to give support or aid, indicating a secondary role of assistance in cooperation with the primary actor." Defs.' Reply at 4. According to Defendants, because the Tribe does not claim to have made any independent effort to obtain the funding at issue, Defendants' obligation to assist was never triggered. *See id.* Such an argument is

disingenuous, given that self-determination contracts are intended to transfer control and

resources (*i.e.*, funding) for federally funded services and programs from the *federal government*

to the Tribe.   *See Ramah Navajo*, 112 F.3d at 1456; *see also Samish Indian Nation*, 419 F.3d at

1367 (ISDEAA is intended to "remov[e] the financial burden incurred by tribes and tribal

organizations when implementing federal programs under self-determination contracts.").   In

addition, as Plaintiff notes, "[c]onditions precedent are disfavored and will not be read into a

contract unless required by plain, unambiguous language."   *RT Computer Graphics v. United*

*States*, 44 Fed. Cl. 747, 756 (Fed. Cl. 1999) (quoting *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555,

559 n.7 (9th Cir. 1990)); *see also Marsa v. Metrobank Fin. Group*, 825 F. Supp 658, 664 (D.N.J.

1993) (collecting cases).   In this case, nothing in the Contract indicates that the Tribe was

required to make any further efforts to obtain the funding.   Rather, given the purpose of the

Contract—*i.e.,* to transfer the control of *federal* programs to the Tribe and to ensure that the

Tribe receives sufficient *federal* funding—the only reasonable interpretation of BIA's agreement

to "assist" the Tribe to obtain funding is that BIA would itself make efforts to obtain federal

funding on behalf of the Tribe for its juvenile correction center.

ii.      Breach

Having determined that Defendants had an affirmative duty to assist, the Court now turns

to the question of whether Defendants breached that duty.   The Court need not dwell long on this

question as BIA officials conceded at deposition that BIA did not provide *any* assistance to the

Tribe in obtaining program operations funding for the juvenile correction facility in CY 2005.

Specifically, the head of BIA's Office of Justice Services, Christopher Chaney, testified that BIA

did not provide any assistance to the Tribe in obtaining staffing and program operations funding

24

for the facility in CY 2005. *Id.* ¶ 18. In addition, Patrick Ragsdale, the Director of BIA, testified that he was not aware of any efforts by BIA to obtain staffing and program operations funding for the facility in CY 2005 *Id.* ¶ 19. Finally, Kenneth Feinfeld, the Acting Director of the OSG and the person who executed the 2005 Reprogramming Request on behalf of the United States, testified that he personally did not make any efforts to obtain staffing and program operations funding for the juvenile correction facility for CY 2005. *Id.* ¶ 20. Defendants do not dispute this, *see* Defs.' Resp. ¶¶ 18-20, nor have they offered any evidence to the contrary, *see generally* Defs.' Stmt. Accordingly, although the Court would normally need to first determine the specific contours of Defendants' duty to assist before determining whether the duty was breached, given Defendants' concession that BIA made *no* effort to assist, it is clear that Defendants breached the parties' Contract under any reasonable definition of Defendants' duty to assist.

### iii.  Injury or Loss

The Court next turns to whether Plaintiff has adequately demonstrated that it suffered a loss or injury (here, whether it suffered monetary damages) as a result of Defendants' breach. Defendants argue that Plaintiff cannot establish that it suffered any injury or loss as a result of Defendants' failure to assist the Tribe to obtain the CY 2005 funds. Defs.' Cross-Mot./Opp'n at 14-15. Plaintiff responds that the Tribe reasonably anticipated that it would have received $1,218,482 in CY 2005 funding for the juvenile correction center if Defendants had not breached the Contract, and that it is therefore entitled to recover damages based on its expectation interest. Pl.'s Mot. at 14.

As an initial matter, the Court notes that the parties have, to some extent, conflated the threshold question of whether Plaintiff has proven it suffered a injury or loss—*i.e.*, established

25

liability—with the subsequent question of the type and amount of damages Plaintiff should be awarded for any such loss.  Nonetheless, the Court understands that the parties' principal dispute at this stage is whether Plaintiff has shown it suffered a loss or injury as a result of the breach. As stated above, to recover for breach of contract, a party must establish, *inter alia*, that they suffered a loss caused by the breach.  *Willems Indust.*, 295 F.2d at 831 (plaintiff "bears the burden of proving the fact of loss with certainty" in proceeding with a breach of contract claim); *see also Roseburg Lumber*, 978 F.2d at 667-68 (plaintiff must prove threshold issue of whether damages have actually been sustained).  That is, "the complaining party must demonstrate that the breach caused him injury."  *New Valley Corp.,* 67 Fed. Cl. at 284.  Because the Court finds that there are material issues of disputed fact as to whether Plaintiff has shown that it suffered an injury as a result of Defendants' breach, the Court concludes that summary judgment is not appropriate.

Plaintiff argues that the Department had sufficient CY 2005 funding, such that the funding in question would have been available and provided to the Tribe if Defendants had made any effort to assist the Tribe as promised.  *See* Pl.'s Opp'n/Reply at 9.  Specifically, Plaintiff provides evidence that the Department had experienced "significant funding increases for Indian country correction facilities for staffing and operation" in FY 2005, Pl.'s Mot., Ex. E (Chaney Dep.) at 47:4-15, 48:12-17, and that Congress had appropriated $180,063,000 for BIA's Public Safety and Justice law enforcement and correction facilities, an increase of $7,568,000 over what was appropriated for the same purposes in FY 2004, *see* Pl.'s Stmt. ¶ 33.  Defendants counter that Plaintiff's alleged injury is too speculative and hypothetical, and that the Department in fact

did not have sufficient funding.[7]  *See* Defs.' Cross-Mot./Opp'n at 12-15; Defs.' Reply at 7-9.

The Court understands the key dispute to be one of causation—in other words, whether Plaintiff

would have received the specified amount of CY 2005 funding but for Defendants' breach.

Although the question is a close one, the Court finds that Plaintiff has presented sufficient

evidence to create a disputed issue of material fact as to whether Defendants' breach caused the

Tribe an injury, here, loss of CY 2005 funding.

> 2.    Plaintiff's Allegations that Defendants Failed to Request Funding in the
>        Next President's Budget

Plaintiff next argues that Defendants failed to request $1,218,482 for operations funding

for the Tribe's juvenile correction facility in FY 2006, as agreed to in the parties' contract.

Footnote 25 in the 2005 Reprogramming Request states that "[t]he BIA agrees to . . . request this

amount [$1,218,482] in the next Presidents [*sic*] budget."  Pl.'s Mot., Ex. B (Agreement and

2005 Reprogramming Request), at 14.  As mentioned above, although there is some debate as to

whether the "next President's budget" refers to FY 2006 or FY 2007, *see supra* 7, it is

undisputed that Defendants did not submit a request for $1,218,482 for the Tribe's juvenile

correction facility in the President's budget for *either* FY 2006 or FY 2007.  Pl.'s Stmt. ¶¶ 22-23.

 Accordingly, Plaintiff argues that Defendants breached the parties' Contract, and Plaintiff is

entitled to recover $1,218,482 in damages.  Pl.'s Mot. at 14-15.

---

[7]Although unclear from the briefing, the Court understands Defendants' argument that the
Department lacked sufficient funding, such that payment to the Tribe would have resulted in
decreasing monies directed to other tribes, as addressing the issue of causation.  *See* Defs.'
Cross-Mot./Opp'n at 12-14; Defs.' Reply at 6-7.  That is, that Plaintiff would not have received
funding even if the Department had made efforts to assist the Tribe because funding was
insufficient, such that providing Plaintiff with the specified CY 2005 funding would have
required the Department to decrease funding for other tribes.

Defendants respond with two principal arguments: (1) that the Department does not possess the authority to insert a request into the President's budget and the agreement is therefore unenforceable; and (2) the Tribe has not demonstrated any damages or injury.  *See* Defs.' Cross-Mot./Opp'n at 10-15.  The Court shall examine each argument in turn.

> i.    Defendants' authority to enter into an agreement to request funding in the President's budget

Defendants argue that the agreement at issue is unenforceable because "[n]o one at BIA or at the OSG possessed the authority to insert a budget request into the President's budget." Defs.' Mot. at 11.  According to Defendants, "only the President possesses the authority to insert a budget request into the President's budget," and therefore any promise by Defendants to insert a budget request into the next President's budget is unenforceable.  *Id.*  The Court, however, does not agree.

Defendants are correct that contracts entered into by government personnel who lack authority to bind the Government are unenforceable.  *See City of El Centro v. United States*, 922 F.2d 816, 820-21 (Fed. Cir. 1990) (finding that a border agent did not have authority to bind United States in contract for medical costs).  Defendants, however, appear to contend that a government employee must have *express* authority as to each term of a contract in order to contractually bind the Government, *see* Defs.' Cross-Mot./Opp'n at 10-11, thus ignoring that "[a]ctual authority can be either express or implied in fact."  *First Federal Lincoln Bank v. United States*, 54 Fed. Cl. 446, 452 (Ct. Cl. 2002).  As concerns the latter, actual authority is implied "when such authority is an integral part of the duties assigned to a [g]overnment employee." *Id.* (internal quotation marks omitted).

28

Turning to the agreement at issue, the Court first notes that Defendants have mischaracterized the nature of the agreement at issue.  As shown by the plain language of the parties' Contract, BIA did not agree to "insert" a budget request into the President's budget, but rather only to "request" this amount in the next President's budget.  *See* Pl.'s Mot., Ex. B (Agreement and 2005 Reprogramming Request), at 14 ("The BIA agrees . . . to request this amount in the next Presidents [*sic*] budget.").  Even Defendants acknowledge that the Secretary has authority to "prepare and submit to the President each appropriation request for the agency." *See* Defs.' Cross-Mot./Opp'n at 11 (citing 31 U.S.C. § 1108(a)).  Admittedly, the President and/or Congress may reject or otherwise modify the request, but it is not disputed that the Secretary is authorized, on behalf of the Department, to submit requests for consideration in the President's budget.

Second, the Court is persuaded that the Director of OSG, who executed the 2005 Reprogramming Request on behalf of the United States, had authority to promise that the Department would request the specified funding in the next President's budget.  The Director is head of the OSG, which is the office within the Department responsible for administering the Secretary's tribal self-governance program, including BIA programs.  *See* Pl.'s Mot., Ex. B (2005 Reprogramming Request); Pl.'s Stmt. ¶ 3.  The Court is hard pressed to find that the Director lacked the authority to enter into this agreement—*i.e.*, an agreement governing funding for programs transferred to the Tribe pursuant to a self-determination agreement—as doing so is quite clearly "an integral part of the duties assigned" to the Director of the OSG.  *See First Federal Lincoln Bank*, 54 Fed. Cl. at 452.  Indeed, as Plaintiff points out, there is no question that the Director could have simply committed the Department to pay the Tribe $1,218,482 for

operating the juvenile correction facility in FY 2006.  Defendants' argument that the Director

could not make the lesser commitment on behalf of the Department to merely request this

amount be submitted in the budget is thus without merit.

Finally, the Court is persuaded by the Federal Circuit's reasoning in *LDG Timber*

*Enterprises, Inc. v. Glickman*, 114 F.3d 1140 (Fed. Cir. 1997).  In that case, the Federal Circuit

rejected the government's argument that the contracting officer exceeded his authority in

agreeing to certain terms in a timber contract, stating that:

> When the contracting officer administers a contract with which the officer is charged,
> the promises and representations made by the officer, when within the scope of the
> subject matter of the contract can not [*sic*] be avoided by simply disclaiming the
> contracting officer's authority when the contract reaches litigation.

*Id.* at 1143.  Accordingly, when, as here, the actions of the government official at issue are

"within the authority that pertains to the subject matter of the contract, and no statute or

regulation limits that authority," the government should bear the burden of coming forward with

specific evidence that the contracting officer lacked authority for the actions at issue.  *Id.*

Having determined that Defendants have failed to do so, the Court concludes that BIA's

promise to request the specified funding in the next President's budget is enforceable.

Because Defendants concede that they did not, in fact, submit a request for $1,218,482

for the Tribe's juvenile facility in the President's budget for *either* FY 2006 or FY 2007, Pl.'s

Stmt. ¶¶ 22-23, it is clear that Defendants breached the parties' agreement to do so.  The Court

therefore turns directly to the issue of damages.

        ii.       Injury or Loss

Defendants' also argue that Plaintiff did not suffer any injury or loss as a result of

Defendants' breach.  Plaintiff responds that the Tribe reasonably anticipated that it would have received $1,218,482 in FY 2006 funding for the juvenile correction center if Defendants had not breached the Contract, and it is therefore entitled to recover damages based on its expectation interest.  Pl.'s Mot. at 14-15.  Defendants counter that because BIA agreed only to request—*i.e.*, not to pay—the specified amount, and because the President or Congress may have modified or rejected the request, Plaintiff could not have reasonably expected to receive the FY 2006 funding.  *See* Defs.' Cross-Mot./Opp'n at 11, 14-15.

Once again, the parties have conflated the threshold question of whether Plaintiff has proven it suffered a injury or loss—*i.e.*, established liability—with the question of the type and amount of damages Plaintiff should be awarded for any such loss.  The Court, however, understands that the parties' principal dispute to focus on the question of whether Plaintiff has shown it suffered a loss or injury as a result of the breach.  As previously explained, to recover for breach of contract, a party must establish, *inter alia*, that they suffered a loss caused by the breach.  *Willems Indust.*, 295 F.2d at 831; *see also Roseburg Lumber*.  Because the Court finds that there are material issues of disputed fact as to whether Plaintiff has shown that it suffered an injury as a result of Defendants' breach, the Court concludes that summary judgment is not appropriate.

Plaintiff contends that Congress would have appropriated the specified funding if requested because Congress not only appropriated all requested funds for BIA Public Safety and Justice law enforcement programs in FY 2006 and FY 2007, but in fact appropriated additional funds over and above the amounts requested.  For example, the President's budget for FY 2006 requested $192,265,000 for BIA Public Safety and Justice law enforcement programs, including

31

funding for the operation of correction services, programs, and facilities.  Pl.'s Stmt.¶ 34.

Congress subsequently increased this funding request by an additional $1.1 million,

appropriating a total of $193,377,000.  *Id.* ¶ 35.  Similarly, as to FY 2007, the Department

requested a lump sum of $201,620,000 in the President's budget for BIA Public Safety and

Justice law enforcement programs, including funding for operation of correction services,

programs, and facilities.  *Id.* ¶ 36.  Congress again increased the funding over and above the

requested amount, appropriating a total of $204,454,00 for FY 2007, an increase of $11,077,00

over what was appropriated for the same purposes in FY 2006.  *Id.* ¶ 37.  Defendants contend

that Plaintiff's alleged expectancy damages are too speculative and hypothetical.  *See* Defs.'

Cross-Mot./Opp'n at 14-15; Defs.' Reply at 7-9.  Accordingly, as presented by the parties, the

key issue, once again, is one of causation—*i.e.*, whether Plaintiff would have received the

specified amount of funding but for Defendants' breach.  Although the question remains a close

one, the Court finds that Plaintiff has presented sufficient evidence to create a disputed issue of

material fact as to whether the Defendants' breach caused the Tribe injury, that is, a loss of FY

2006 or FY 2007 funding.  Summary judgment on this issue is therefore not appropriate.

Accordingly, the Court shall deny both Plaintiff's Motion for Summary Judgment and

Defendants' Motion for Summary Judgment as to Count I of Plaintiff's Complaint.

B.     *Count II of Plaintiff's Complaint Alleging that Defendants Failed to Notify the*
       *Tribe of the Availability of End-of-Year Funds*

Plaintiff next alleges that Defendants failed to notify the Tribe of the availability of year-

end funds as promised in the parties' Contract.  Section 17 of the Agreement and the Fourth

Amendment both provide:

> Additional Funds - If the Midwest Region Office of the BIA receives notice of the availability of any additional funding in any fiscal year for any purpose, including any unspent funds, that the Tribe is eligible to apply for or receive, then it must notify the Tribe as soon as possible about such funds so that the Tribe may access or apply for those funds.  The Midwest Region Office commits to keeping the Tribe informed of the existence of funding immediately upon learning of its existence.

Pl.'s Mot, Ex. B (Agreement) at 4 (emphasis in original); *id.*, Ex. L (Fourth Amendment) at 4 (emphasis in original).  In September of 2006, the BIA Midwest Regional Office received and distributed FY 2006 year-end funds to five of the thirty-five Indian tribes and tribal organizations within the BIA Midwest Region, but did not inform the Tribe about the availability of these funds until weeks after they were distributed.  Pl.'s Stmt. ¶¶ 43-45.  Plaintiff therefore contends that Defendants breached the Contract and that Plaintiff is entitled to partial summary judgment as to liability with respect to the breach, reserving determination as to the amount of damages.  Pl.'s Mot. at 15.

As explained above, however, proof of injury or loss (here, monetary damages, as alleged by Plaintiff) is an element of Plaintiff's breach of contract claim, and, in order to survive summary judgment, Plaintiff must produce sufficient evidence from which a trier of fact could conclude that Plaintiff suffered a loss as a result of Defendants' breach.  *See Pryor*, 85 Fed. Cl. at 104 (damages are an element of a breach of contract claim); *New Valley Corp.*, 67 Fed. Cl. at 284 ("the complaining party must demonstrate that the breach caused him injury") (quoting *Record Club of Am.*, 890 F.2d at 1275).

In this instance, Plaintiff has not proffered any evidence that it suffered a loss as a result of Defendants' failure to notify it of the year-end funds.  To the contrary, the unrebutted evidence in the record shows that, although the Tribe was technically eligible to receive the

year-end funds, the Tribe would not have, as a practical matter, received any year-end funds

because it did not have a contract under Title I of Public Law 93-638.  As Defendants explained,

in light of time constraints attached to the funding, the BIA Central Office had decided to

distribute the year-end funds only to tribes having contracts under Title I of Public Law 93-638

(codified at 25 U.S.C. § 450f), and not to tribes—like Plaintiff—having contracts under Title IV

of Public Law 93-638 (codified at 25 U.S.C. § 458cc).  Pl.'s Stmt.¶ 46.  As BIA Director

Ragsdale explained at deposition:

> Self-governance tribes [such as Plaintiff] were eligible for funds, but my
> understanding is [] that the money had to be obligated within a very short period of
> time and the Bureau's mechanism through the Office of Self-Governance could not
> mechanically do that.  So the self-governance tribes were excluded from that—from
> that potential allocation.

*Id.* ¶ 48 (quoting Pl.'s Mot., Ex. K (Ragsdale Dep.) at 64:1-7)).  Plaintiff offers no evidence to

dispute this contention or to otherwise suggest that it would have received any portion of the

year-end funds even if Defendants had alerted the Tribe to the funding.  Nor does Plaintiff offer

any evidence as to what actions the Tribe would have taken, even if timely notified, to apply for

the funds—funds which the BIA Central Office had already decided Plaintiff would not receive.

In order to survive summary judgment on its breach of contract claim, the Tribe must

proffer some evidence that it suffered a loss caused by Defendants' breach.  *See Malissa*, 18 Cl.

Ct. at 674 ("This court has long held that in contract cases, where plaintiff has alleged a breach

of contract, the plaintiff must shoulder the burden of establishing the fundamental facts of

liability, causation, and resultant injury.") (internal quotation marks and citations omitted); *see*

*also Willems Indust.* 295 F.2d at 831 (plaintiff "bears the burden of proving the fact of loss with

certainty" in proceeding with its breach of contract claim for money damages).  Plaintiff,

however, has failed to do so.  Accordingly, as there are no material facts in dispute and as

Plaintiff has not proffered evidence from which a trier of fact could conclude that Plaintiff has

met all the elements of its breach of contract claim, the Court shall deny Plaintiff's motion for

partial summary judgment and shall grant Defendant's motion for summary judgment as to

Count II of Plaintiff's Complaint.[8]

      C.    *Count III of Plaintiff's Complaint Alleging that Defendants Failed to Timely Provide a Pay Cost Report as Contractually Required*

Plaintiff next alleges that Defendants failed to provide the Tribe with a complete and

adequate pay cost report as required by the parties' Contract.  As explained above, footnote 15

to line item no. 103 in the 2006 Reprogramming Request provides *inter alia*:

> [T]he BIA and OSG agree to provide to the Tribe by April 1, 2006, a detailed Pay Cost analysis for the years 2003-2006, showing what the Tribe was eligible to receive each year based upon Pay Cost data the Tribe provided, the actual amount received, and the shortfall or unfunded amount.  This analysis will include Law Enforcement.  The analysis will separately show the total amounts received each year for Self-Governance tribes, contracting tribes, and BIA programs, as well as the total amounts the BIA was eligible to receive for these programs based upon data it compiled.  The above information has been requested by the Tribe to verify whether Red Lake, other Self Governance tribes, contracting tribes, and BIA programs were treated the same way with regard to the distribution of Pay Costs for the years 2003-2006.

Pl.'s Stmt. ¶ 49 (quoting Pl.'s Mot., Ex. L (2006 Reprogramming Request) at 3 n. 15).

It is undisputed that BIA and OSG failed to provide a detailed pay cost analysis to the

Tribe by April 1, 2006.  *Id.* ¶ 50.  However, as discussed above, Defendants have now provided

---

[8]Because the Court determines that Plaintiff has not proffered evidence that it suffered a loss as a result of Defendants' failure to notify the Tribe of the year-end funds, the parties' dispute as to whether those funds totaled $200,000 or only $85,000 is immaterial.  *See* Pl.'s Stmt. ¶ 43; Defs.' Resp. ¶ 43.

Plaintiff with a pay cost report, attaching the Report to Defendants' Cross-Motion and Opposition in this case. *See* Defs.' Cross-Mot./Opp'n, Ex. A (Pay Cost Report). Plaintiff nonetheless responds that Defendants remain in breach because the pay cost report ultimately provided by Defendants is incomplete and fails to satisfy the Department's obligation under the parties' Contract. Pl.'s Opp'n/Reply at 12. Specifically, Plaintiff asserts that the analysis omits (1) the total pay cost amounts that BIA received each year for its programs and (2) the amounts BIA was eligible to receive. *Id.* Notably, Defendants do not dispute the inadequacy of the pay cost report provided to Plaintiff, but rather contend only that the Court does not have jurisdiction to award specific performance of a government contract. Defs.' Reply at 10. Ultimately, however, the Court finds that Defendants have not directed the Court's attention to any legal authority supporting their claim that the ISDEAA does not provide this Court with jurisdiction to order specific performance of a contract entered into pursuant to that statute, and, therefore, based on the arguments asserted in the parties' briefing, the Court concludes that it may compel Defendants to provide Plaintiff with an adequate pay cost report.[9]

As an initial matter, neither party has directed the Court's attention to any decision directly addressing whether the ISDEAA provides a district court with jurisdiction over a plaintiff's claim for specific performance of a self-governance contract nor is the Court aware of

---

[9]The Court emphasizes that it was largely unaided by Defendants' briefing in reaching this conclusion. Defendants provided a bare page of discussion addressing this novel question of statutory interpretation, citing only two cases for legal support. *See* Defs.' Cross-Mot./Opp'n at 16-17. Moreover, one of those citations is incorrect as, contrary to Defendants' representations, the opinion in *Designer Direct, Inc. v. DeForest Dev. Auth.*, 313 F.3d 1036 (7th Cir. 2002) does not mention the term "specific performance" nor contain the quotation referenced in Defendants' briefing. Rather, it appears that the quotation at issue is correctly attributed to the decision in *Lee v. Blumenthal*, 588 F.2d 1281, 1282 (9th Cir. 1979).

any such opinion.  The question now before the Court thus appears to be one of first impression.

"As in all statutory construction cases, we begin with the language of the statute."  *Barnhart v.*

*Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002).  "The first step 'is to determine whether the

language at issue has a plain and unambiguous meaning with regard to the particular dispute in

the case.'"  *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  "The inquiry

ceases 'if the statutory language is unambiguous and 'the statutory scheme is coherent and

consistent.'"  *Id.* (quoting *Robinson*, 519 U.S. at 340).  In addition, the statute's "legislative

history can assist the court in identifying legislative intent where the statute is unclear, and, on

rare occasions, it may suffice to overcome a result of the plain language of the statute that is

'demonstrably at odds with the intentions of its drafters.'"  *Bullcreek v. Nuclear Regulatory*

*Comm'n*, 359 F.3d 536, 541-42 (D.C. Cir. 2004) (citing *Blum v. Stenson*, 465 U.S. 886, 896

(1984) and quoting *United States v. Ron Pair Enterp., Inc.,* 489 U.S. 235, 242 (1989)).

The Court therefore turns first to the plain language of the relevant section of the

ISDEAA, which provides:

> The United States district courts shall have original jurisdiction over any civil action
> or claim against the appropriate Secretary arising under this [Act] and, subject to the
> provisions of subsection (d) of this section and concurrent with the United States
> Court of Claims, over any civil action or claim against the Secretary for money
> damages arising under contracts authorized by this [Act]. In an action brought under
> this paragraph, the district courts may order appropriate relief including money
> damages, *injunctive relief* against any action by an officer of the United States or
> any agency thereof contrary to this subchapter or regulations promulgated
> thereunder, or *mandamus to compel* an officer or employee of the United States, or
> any agency thereof, to perform a duty provided under this subchapter or regulations
> promulgated hereunder (including immediate injunctive relief to reverse a
> declination finding under section 450f(a)(2) of this title or to compel the Secretary
> to award and fund an approved self-determination contract).

25 U.S.C. § 450m-1(a) (emphasis added).  Thus, the plain statutory language provides that this

Court has "original jurisdiction over any civil action or claim against the appropriate Secretary arising under" the ISDEAA and this [Act] and "may order appropriate relief including . . . injunctive relief against any action by an officer of the United States or any agency thereof . . . ., or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this [Act] or regulations promulgated hereunder." *Id.* Moreover, as Plaintiff emphasizes, the legislative history of section 450m-1 states explicitly that the ISDEAA, as amended, "affords self-determination contractors the opportunity to secure injunctive relief . . . for violations of the Self-Determination Act (or the terms of contracts under the Act)." S. Rep. No. 100-274 at 34 (1988), *reprinted at* 1988 U.S.C.C.A.N. 2620, 2653.

Significantly, Defendants fail to make any specific argument, with citations to relevant case law or legal authority, that the plain language of the ISDEAA should be read to the contrary. Rather, Defendants make only a conclusory and unsupported assertion that "the express language of the statute . . . does not provide the Court with authority to grant the specific performance Red Lake requests." *See* Defs.' Reply at 11. Such a statement, made without further explanation, is puzzling to say the least, given the language quoted above. Defendants only other argument in support of their position is the assertion that, as a general matter, courts do not possess jurisdiction to award specific performance of a contract against the government, as such an action is an action against the sovereign and is not maintainable unless consented to. *See* Defs.' Cross-Mot./Opp'n at 16-17; Defs.' Reply at 10-11. It would appear, however, from the plain language of the Act, that the government has, in fact, consented to actions for specific performance for breach of self-governance contracts under the ISDEAA—and Defendants offer no reason why the general principle of sovereign immunity

should trump the specific, plain language of the statute at hand.  Moreover, even if the Court

were to give Defendants the benefit of the doubt and find that the statutory language is

ambiguous, Defendants do not reconcile their position with the well-established cannon of

statutory interpretation that "statutes are to be construed liberally in favor of the Indians, with

ambiguous provisions interpreted to their benefit." *Montana v. Blackfeet Tribe of Indians*, 471

U.S. 759, 766 (1985); *see also Oneida County v. Oneida Indian Nation*, 470 U.S. 226, 247

(1985).  Accordingly, as both the plain language of the ISDEAA and its legislative history favor

a finding that this Court has jurisdiction to order specific performance of the parties' Contract

entered into pursuant to the ISDEAA, and as Defendants have not provided any persuasive

argument to the contrary, the Court concludes that it has jurisdiction to award Plaintiff specific

performance of its government contract.

Finally, as Defendants do not contest that the pay cost report attached to their Cross-

Motion/Opposition is inadequate, the Court shall deny Defendants' motion for summary

judgment and shall grant Plaintiff's motion for summary judgment as to Count III of Plaintiff's

Complaint.  Defendants shall therefore be required, by no later than April 30, 2009, to provide

Plaintiff with a pay cost analysis for the years 2003-2006 that fully complies with the terms of

the parties' Contract and that shows: (1) "what the Tribe was eligible to receive each year based

upon Pay Cost data the Tribe provided, the actual amount received, and the shortfall or

unfunded amount;" and (2) "the total amounts received each year for Self-Governance tribes,

contracting tribes, and BIA programs, as well as the total amounts the BIA was eligible to

receive for these programs based upon data it compiled."  Pl.'s Stmt. ¶ 49 (quoting Pl.'s Mot.,

Ex. L (2006 Reprogramming Request) at 3 n. 15).

D.     *Count IV of Plaintiff's Complaint Alleging that Defendants Did Not Treat Tribe Employees the Same as Other Employees for Purposes of Pay Cost Adjustments in FY 2006*

Count IV of Plaintiff's Complaint asserts that, although all of BIA's fixed costs, including pay costs, were funded in FY 2006, BIA did not fully fund the Tribe's pay costs and therefore breached its promise in the parties' Contract that:

> The BIA will make every effort to treat Red Lake Tribal employees the same as all other Tribal and Federal employees for purposes of pay cost adjustments in FY 2006.

Pl.'s Mot., Ex. L (2006 Reprogramming Request) at 3 n. 15.

Although Plaintiff has not moved for summary judgment on Count IV, Defendants appear to claim that summary judgment in their favor is appropriate on this claim.  *See* Defs.' Cross-Mot./Opp'n at 17.  The Court notes only that it "appears" Defendants have so moved because, despite Defendants' assertion that summary judgment on Count IV is appropriate, Defendants have failed to include any factual or legal support for that conclusion.  Indeed, Defendants' entire discussion of this issue is relegated to a single sentence at the close of Defendants' briefing, providing—without citation to any legal authority or reference to the factual matter in this case—that: "any claim [Plaintiff] may raise concerning payment of pay costs is not contractual, but if anything, statutory, subject to review pursuant to the Administrative Procedures Act, under which money damages are not available."  *Id.*  Plaintiff counters that its claim is appropriately characterized as a breach of contract claim, as the Tribe alleges that Defendants breached the parties' agreement that BIA would make every effort to treat the Tribe's employees the same as Federal employees vis-a-vis pay cost adjustments.  The Court, however, need not resolve this issue at this juncture, in light of Defendants' failure to

proffer any factual or legal authority in support of its motion for summary judgment as to Count

IV, in violation of local rules.  *See* LCvR 7(a) ("Each motion shall include or be accompanied

by a statement of the specific points of law and authority that support the motion.").

Accordingly, the Court shall deny Defendants' motion for summary judgment as to Count IV.[10]

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT-IN-PART and DENY-IN-PART

Plaintiff's Motion for Summary Judgment and shall GRANT-IN-PART and DENY-IN-PART

Defendants' Cross-Motion for Summary Judgment.  Specifically, as to Count I (juvenile

correction facility funding), the Court finds that there are genuine issues of material fact in

dispute that preclude summary judgment, and therefore DENIES the parties' cross-motions with

respect to Count I.  As to Count II (FY 2006 year-end funds), the Court finds in favor of

Defendant, and therefore GRANTS Defendants' Cross-Motion for Summary Judgment and

DENIES Plaintiff's Motion for Summary Judgment with respect to Count II.  As to Count III

(specific performance for Pay Cost analysis), the Court finds in favor of Plaintiff, and therefore

GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Cross-Motion

for Summary Judgment with respect to Count III.  Specifically, the Court hereby requires that,

by no later than April 30, 2009, Defendants shall provide Plaintiff with a pay cost analysis for

---

[10]Although Defendants have not raised the issue, the Court notes that it is not clear from the record before it that Plaintiff has exhausted its administrative remedies as to Count IV of Plaintiff's Complaint.  It appears that exhaustion of administrative remedies under the Contract Disputes Act is a jurisdictional prerequisite to the Court's consideration of breach of contract claims pursuant to the ISDEAA.  *See Tunica-Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 407-08 (D.D.C. 2008).  However, given the disposition of Defendants' motion for summary judgment as to Count IV and that neither party has raised this issue, the Court need not resolve the issue *sua sponte* at this point.

the years 2003-2006 that fully complies with the terms of the parties' Contract, as discussed above.  Finally, the Court DENIES Defendants' Cross-Motion for Summary Judgment as to Count IV (underpaid pay costs).

Date:   March 19, 2009

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge